UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PATSY'S ITALIAN RESTAURANT, INC. and        :
PATSY'S BRAND, INC.,                         :
                                             :
                          Plaintiffs,        :
                                             :        **OPINION & ORDER**
             -against-                       :
                                             :        06-CV-00729 (DLI)(RER)
ANTHONY BANAS d/b/a PATSY'S, PATSY'S         :
PIZZERIA, and PATSY'S BAKERY & CAFÉ and      :
ANTHONY & PATSY'S INC.,                      :
                                             :
                          Defendants.        :
------------------------------------------------------------------------x
------------------------------------------------------------------------x
PATSY'S ITALIAN RESTAURANT, INC.,            :
                                             :
                          Plaintiff and      :
                          Counterclaim Defendant,  :
                                             :
             -against-                       :        06-CV-05857 (DLI)(RER)
                                             :
ANTHONY BANAS d/b/a PATSY'S and              :
PATSY'S PIZZERIA TRATTORIA IMPAZZIRE,        :
ALLAN ZYLLER d/b/a PATSY'S and PATSY'S       :
PIZZERIA TRATTORIA IMPAZZIRE, AL &           :
ANTHONY'S PATSY'S, INC., I.O.B. REALTY,      :
INC., PATSY'S, INC. and BSZ REALTY CORP.,    :
                                             :
                          Defendants and     :
                          Counterclaim Plaintiffs.  :
------------------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

        For over six decades, plaintiffs' and defendants' restaurants, both of which include "Patsy's"

in their names, have co-existed on the island of Manhattan.  The restaurants have successfully kept

the risk of confusion to a minimum by identifying plaintiffs' restaurant, known for its traditional

Italian fare, as "Patsy's Italian Restaurant," and defendants' restaurants, known for their coal oven

fired, thin crust pizzas, as "Patsy's Pizzeria." The only blip on the radar of the parties' peaceful co-existence was a suit filed by plaintiff Patsy's Brand, Inc. ("Patsy's Brand") in 1999, relating to the restaurants' individual efforts to sell pasta sauces in jars for retail distribution.

The instant litigation arose with defendants' decision to increase their number of franchise locations (totaling five at the time), by expanding Patsy's Pizzeria beyond the island of Manhattan. Towards that end, defendants Anthony Banas ("Banas") and Anthony & Pasty's, Inc. (collectively, the "Staten Island defendants") opened a Patsy's Pizzeria at 1949 Richmond Avenue, Staten Island, New York in July 2005. Soon thereafter, on February 17, 2006, plaintiffs Patsy's Italian Restaurant, Inc. ("Patsy's Italian Restaurant") and Patsy's Brand (collectively, the "plaintiffs") brought suit against Banas, asserting claims of (1) federal service mark and trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114, (2) injury to business reputation under § 360-l of the General Business Law of the State of New York, and (3) common law trademark infringement and unfair competition (06-CV-00729).[1]

After the Staten Island Patsy's Pizzeria closed in September 2006, the parties commenced settlement negotiations. During the course of those discussions, plaintiffs discovered that a restaurant bearing the name "Patsy's Pizzeria" was about to open at 407 Jericho Turnpike, Syosset, New York. Patsy's Italian Restaurant then brought suit against defendants Banas, Allan Zyller ("Zyller"), and Al & Anthony's Patsy's, Inc. on October 30, 2006, asserting claims of (1) federal service mark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114, (2) unfair competition and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (3) injury to

---

[1]On September 29, 2006, plaintiffs filed an amended complaint, which added Anthony & Patsy's Inc. as a defendant. (Electronic Case Filing ("ECF") Docket Entry 21.)

business reputation under § 360-1 of the General Business Law of the State of New York, and (4) common law trademark infringement and unfair competition (06-CV-05857).[2] In addition, Patsy's Italian Restaurant filed an application for an order pursuant to Fed. R. Civ. P. 65, enjoining defendants during the pendency of this action from opening the Syosset restaurant under the PATSY'S mark. The court granted the temporary restraining order on October 30, 2006, but amended it on November 9, 2006 to allow the Long Island defendants to open their restaurant, so long as the words "Trattoria Impazzire" did not appear on any of the advertising, signs or menus associated with the restaurant. On November 27, 2006, the Long Island defendants filed an answer and counter-claim seeking cancellation of Patsy's Italian Restaurant's Registration Nos. 3,009,836 and 3,009,866, and a declaration pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201(a) *et seq*. that they have not infringed upon plaintiffs' trademark rights. On November 30, 2006, the court consolidated the two civil actions for all purposes.

Presently before the court are defendants' (1) motion for partial summary judgment pursuant to Fed. R. Civ. P. 56, requesting correction of the United States Patent and Trademark Office's ("PTO") Principal Register, and dismissal of plaintiffs' service mark infringement claims (Count One in both civil actions); and (2) motion for summary judgment pursuant to Fed. R. Civ. P. 56 on all of plaintiffs' remaining claims in both civil actions. For the reasons set forth below, the court grants defendants' motion to correct the register with respect to the restoration of I.O.B.'s U.S. Trademark Registration No. 2,213,574 for PATSY'S PIZZERIA for restaurant services, but denies

_____

[2]The court granted Patsy's Inc.'s motion to intervene on November 7, 2006, adding both I.O.B. Realty, Inc. ("I.O.B.") and Patsy's Inc. to the case. (ECF Docket Entry 16.) On December 22, 2006, plaintiffs filed an amended complaint to add BSZ Realty Corp. ("BSZ Realty") as a defendant. (ECF Docket Entry 45.) Defendants Banas, Zyller, Al & Anthony's Patsy's, Inc., I.O.B., Patsy's Inc., and BSZ Realty are hereafter referred to as the "Long Island defendants."

defendants' motion with respect to the cancellation of Patsy's Italian Restaurant's U.S. Trademark Registration No. 3,009,836 for PATSY'S PR, and Registration No. 3,009,866 for PATSY'S, "not including pizza," both for restaurant services. Defendants' motions for partial summary judgment on the service mark infringement claims, and for summary judgment on plaintiffs' remaining causes of action are denied.[3]

## Background

1. <u>The Restaurants</u>

In 1933, Pasquale ("Patsy") Lancieri opened a pizzeria-style restaurant in East Harlem (1312 2nd Avenue) under the name "Patsy's Pizzeria," and often referred to as simply, "Patsy's." (Grandinetti Decl. Ex. 1, Arles Dep. 12, Jan. 20, 2007; Ex. 34, Joseph Scognamillo Decl. ¶ 10, July 29, 1998; Ex. 35, Joseph Scognamillo Dep. 54, Oct. 19, 1999; Ex. 16, Sal Scognamillo Dep. 22, Jan. 12, 2007.) *See also Patsy's Brand, Inc. v. I.O.B. Realty, Inc., et al.,* 317 F.3d 209, 212 (2d Cir. 2003). With the exception of limited periods during which the restaurant was under renovation, Patsy's Pizzeria has been in continuous operation, serving at least pizza, since 1933. (Grandinetti Decl. Ex. 1 at 14-16, 33-39, 41-42; Ex. 2.) On May 21, 1996, I.O.B. obtained a U.S. Trademark for

---

[3]Plaintiffs misinterpret the Federal Rules of Civil Procedure in objecting to the use of the deposition testimony of defendants' officers, namely the testimony of John Brecevich, an officer of I.O.B. and Patsy's, Inc., Banas, an officer of Anthony & Patsy's, Inc., and Zyller, an officer of Al & Anthony's Patsy's, Inc. and BSZ Realty in support of defendants' summary judgment motions, arguing that such testimony cannot be used at trial. (*See* Pls.' Mem. Opp. Partial Summ. J. 4-5.) To support their objection, plaintiffs curiously rely on Fed. R. Civ. P. 32(a)(2), a rule which allows a party to introduce the deposition of an adversary's officers, regardless of their availability at trial. *See Kolb v. Suffolk County,* 109 F.R.D. 125, 127 (E.D.N.Y. 1985) (citations omitted). Rule 32(a)(2) does not prohibit a party from submitting the deposition testimony of its own officers on a summary judgment motion, particularly when such testimony was taken by the adverse party, as was the case here. Plaintiffs' objection is therefore overruled.

a non-stylized rendition of PATSY'S in connection with restaurant services (Registration No. 1,975,110). I.O.B. obtained an additional U.S. Trademark on December 29, 1998 for a non-stylized rendition of PATSY'S PIZZERIA in connection with restaurant services (Registration No. 2,213,574). The PTO cancelled both marks on May 27, 2003. (Grandinetti Decl. Ex. 18 at TTAB 1-261; Ex. 20 at TTAB 2-104.)

Plaintiffs' "Patsy's Italian Restaurant" is a family-owned Italian restaurant located at West 56th Street. It offers a more complete Italian-style menu than that of a typical pizzeria, and has been in continuous operation since 1944. (Grandinetti Decl. Ex. 16 at 21-22.) In 1993, plaintiff formed an affiliated company known as Patsy's Brand for the purpose of selling pasta sauces in jars for retail distribution. *See Patsy's Brand, Inc.,* 317 F.3d at 213. Patsy's Brand then began manufacturing and distributing its pasta sauces in 1994. *Id.* Since that time, Patsy's Brand obtained U.S. Trademark Registration No. 1,874,789 for a stylized rendition of PATSY'S PR SINCE 1994 and U.S. Trademark Registration No. 2,777,068 for a non-stylized rendition of PATSY'S, both to be used in connection with their pasta sauces.[4] (Grandinetti Decl. Ex. 26; Ex. 27.) Patsy's Brand also obtained U.S. Trademark Registration No. 2,845,063 for a non-stylized rendition of PATSY'S to be used in connection with olive oil, extra virgin oil, cheese, roasted peppers, and processed eggplant in International Class 29, and cheese ravioli, manicotti, lasagna, pasta, vinegar, and pastries, namely, tiramisu, in International Class 30. (Grandinetti Decl. Ex. 28.)

Patsy's Italian Restaurant and Patsy's Pizzeria have received much praise in the print media and on television, and its principals appear regularly on national and regional television shows and

---

[4]In 1998, the PTO denied Patsy's Brand's application for the mark PATSY'S to be used in connection with pasta sauces on the grounds of likely confusion with the marks previously registered by I.O.B. for Patsy's Pizzeria. *See Patsy's Brand, Inc.,* 317 F.3d at 214.

radio programs. Moreover, each restaurant contends that celebrities, including particularly Frank

Sinatra, often frequented both restaurants. (Grandinetti Decl. Ex. 1 at 37-38; Salvatore Scognamillo

Decl. Ex. 1; Ex. 5.)

In 1991, I.O.B. purchased Patsy's Pizzeria. (Grandinetti Decl. Ex. 3; Ex. 4, Isa ("John") Brija

Dep. 12, Dec. 28, 2006.) *See also Patsy's Brand Inc. v. I.O.B. Realty, Inc., et al.,* No. 99 Civ. 10175,

2001 WL 170672, at *1 (E.D.N.Y. Feb. 21, 2001).[5] Soon thereafter, between 1994 and 1996, I.O.B.

licensed Nick Tsoulos to open five franchise locations in Manhattan under the names "Patsy's

Pizzeria" or "Patsy's." Patsy's Pizzeria's franchise operations now encircle plaintiffs' lone

restaurant on West 56th Street with locations in Greenwich Village at 67 University, Murray Hill at

509 3rd Avenue, the Upper West Side at 61 West 74th Street, Chelsea at 318 West 23rd Street, and

the East Side at 206 East 60th Street. (Grandinetti Decl. Ex. 2.) John Brija ("Brija"), an officer of

I.O.B., testified that he routinely conducts quality inspections of Tsoulos's franchises. (Grandinetti

Decl. Ex. 4 at 86-100.) Although the original East Harlem Patsy's Pizzeria and the franchise

locations are primarily known for their coal oven fired, thin crust pizzas, the menus also include

items such as appetizers, soups, salads, pasta dishes, calzones, and a few traditional Italian dishes.

(Grandinetti Decl. Ex. 2.)

In 1998, I.O.B. entered into a Cross-License Agreement with Patsy's Inc., which remains in

effect until March 10, 2018. (Grandinetti Decl. Ex. 7.) The Cross-License Agreement grants Patsy's

Inc. a license to use the "Patsy's System," a proprietary system for developing, opening and

operating Italian pizzerias, and I.O.B.'s proprietary marks. (*Id.*) The Agreement further grants

---

[5]Mr. Patsy Lancieri conveyed the Patsy's Pizzeria premises to Mrs. Lancieri on
November 29, 1946. (Grandinetti Decl. Ex. 39.)

Patsy's Inc. the right to sublicense these rights to third parties.  (*Id*.)

2.      Defendants' Expansion into the Outer Boroughs

In July 2005, the Staten Island defendants opened a restaurant named "Patsy's Pizzeria since 1933" and "Patsy's Pizzeria, Restaurant, Bakery, Café" ("Staten Island Patsy's Pizzeria") at 1949 Richmond Avenue, Staten Island, New York, with the permission of John Brecevich ("Brecevich"), an officer of I.O.B.  (Grandinetti Decl. Ex. 8, Anthony Banas Dep. 14, Jan. 16, 2007; Ex. 9, Giovanni ("John") Brecevich Dep. 8-13, Dec. 28, 2006; Sayour Decl. Ex. 15.)  Brecevich orally instructed Banas to operate the restaurant like a "regular Patsy's Pizzeria," serving Italian food, and in particular, coal oven fired, thin crust pizza, under the "Patsy's" name.  (Grandinetti Decl. Ex. 9 at 14, 16-17, 34.)  In addition, Brecevich gave Banas recipes for the pizza and a copy of a "Patsy's Pizzeria" menu from which to copy the logo, approved the menu Banas had created for the Staten Island Patsy's Pizzeria, and performed site visits both during the construction phase and after the restaurant had opened.  (Grandinetti Decl. Ex. 8 at 41-42, 58.)  In October 2005, the Staten Island defendants opened a bakery and café in connection with the Staten Island Patsy's Pizzeria, despite the fact that I.O.B. had not granted the Staten Island defendants permission to do so under their trademarks.  (Grandinetti Decl. Ex. 8 at 15, 49; Ex. 9 at 14-15.)  The bakery closed soon thereafter, in January 2006, while the Staten Island Patsy's Pizzeria remained open until September 2006. (Grandinetti Decl. Ex. 8 at 15.)

In late 2005 or early 2006, the Long Island defendants began discussions with I.O.B. regarding the possibility of a Patsy's Pizzeria on Long Island (the "Long Island Patsy's Pizzeria"). (*Id*. at 85-86; Ex. 10, Allan Zyller Dep. 19-24, Jan. 18, 2007.)  I.O.B. granted the Long Island defendants permission to open a Patsy's Pizzeria at 407 Jericho Turnpike, Syosset, New York, and

BSZ Realty signed a twenty-year lease for that location. (Grandinetti Decl. Ex. 9 at 29-31; Ex. 10 at 20-21.) After the court amended the temporary restraining order, the Long Island Patsy's Pizzeria opened for business in November 2006, serving an assortment of appetizers, salads, heroes, calzones, pasta dishes, and traditional Italian dishes such as Eggplant Parmigiana and Chicken Marsala, in addition to coal oven fired, thin crust pizzas. (Grandinetti Decl. Ex. 10 at 27-28; Sayour Decl. Ex. 14.) Brecevich and Brija performed regular site visits, and, on at least one occasion, Brija taste-tested the pizza. (Grandinetti Decl. Ex. 10 at 20, 25, 28-32.) Defendants assert that, in an effort to establish a joint venture, Patsy's Inc. and the Long Island defendants engaged in discussions regarding Patsy's Inc.'s role in the Long Island Pizzeria. Defendants submitted a one-page document that allegedly constitutes a "memorialization" of their initial agreement. (Grandinetti Decl. Ex. 9 at 29-31; Ex. 10 at 19, 49-50; Ex. 11.) However, the document is undated and is signed only by Zyller as the President of Al & Anthony's Patsy's Inc. (Grandinetti Decl. Ex. 11.)

There is some dispute with respect to whether I.O.B. or Patsy's Inc. entered into a franchise agreement with either the Staten Island defendants or the Long Island defendants. Defendants contend that I.O.B. did not enter into a franchise agreement with the Staten Island defendants at the time I.O.B. orally gave them permission to open the Staten Island Patsy's Pizzeria because Patsy's Inc.'s Franchise Offering Circular had expired. (Grandinetti Decl. Ex. 8 at 28-29, 71-72; Ex. 9 at 8-14, 30; Ex. 10 at 23.) However, I.O.B. and the Staten Island defendants allegedly reached an oral agreement that the Staten Island Patsy's Pizzeria would be franchised upon reinstatement of Patsy's Inc.'s franchise license. (*Id*.) Defendants further contend that the February 16, 2006 letter from defense counsel to plaintiffs' counsel, stating that the Staten Island Patsy's Pizzeria is a franchise of I.O.B., was based on a misunderstanding of the agreement to franchise the restaurant in the future.

(Sayour Decl. Ex. 6.) With respect to the Long Island Patsy's Pizzeria, Patsy's Inc. and the Long Island defendants allegedly engaged in a joint venture while Patsy's Inc. was in the process of securing a new Franchise Offering Circular. (Grandinetti Decl. Ex. 9 at 13-14, 29-31; Ex. 10 at 23; Ex. 12; Ex. 13.) On December 20, 2006, Patsy's Inc. received its approved Franchise Offering Circular from the New York State franchising authority. (Grandinetti Decl. Ex. 14.) Sometime thereafter, Brecevich, as Vice President of Patsy's Inc., Zyller, as President of Al & Anthony's Patsy's Inc., and Banas, as Vice President of Al & Anthony's Patsy's Inc., appear to have signed the Offering Circular, thereby forming a franchise for the Long Island Patsy's Pizzeria. (Grandinetti Decl. Ex. 15.)[6] However, it is unclear when the parties signed the Offering Circular because the document is undated. (*Id*.)

3.    Proceedings before the Patent and Trademark Office & the "Tomato Sauce Litigation"

The parties' protracted and convoluted dealings with the PTO lie at the heart of the instant litigation. A detailed rendition of these proceedings is provided below in chronological order: In October 1998, I.O.B. filed a petition with the Trademark Trial and Appeal Board ("TTAB") of the PTO seeking to have Patsy's Brand's 1995 registration for the mark PATSY'S PR SINCE 1994 (stylized) for sauces cancelled (Registration No. 1,874,789). The petition received Cancellation Proceeding No. 92/028,142. (Grandinetti Decl. Ex. 18 at TTAB 1-002-006.) On September 30,

_____

[6] Plaintiffs object to defendants' Exhibits 12 and 13, and the pages marked IOB 1365 to IOB 1368 of defendants' Exhibit 15, because they were not produced until after the discovery period had closed on January 26, 2007. The court notes, however, that plaintiffs were on notice of defendants' efforts to secure a new Franchise Offering Circular for the purpose of franchising the Staten Island Patsy's Pizzeria and the Long Island Patsy's Pizzeria. (*See* Grandinetti Decl. Ex. 9 at 29-30; Ex. 10 at 23.) Zyller's testimony also revealed that he had signed for the new Offering Circular when it was delivered to him. (Grandinetti Decl. Ex. 10 at 50.) Plaintiffs' objection is therefore overruled because plaintiffs have failed to make a sufficient showing of prejudice.

1999, Patsy's Brand responded by bringing suit against Patsy's Inc., I.O.B., its controlling officers, Brija and Brecevich, and its franchise operator, Tsoulos, in the United States District Court for the Southern District of New York (the "tomato sauce litigation"). The complaint alleged service mark infringement, trade dress infringement, unfair competition and false advertising. *See Patsy's Brand, Inc.,* 2001 WL 170672, at *2. Also on September 30, 1999, Patsy's Italian Restaurant filed a trademark application for the mark PATSY'S PR for restaurant services. (Grandinetti Decl. Ex. 19 at USPTO 3-067.) One month later, in October 1999, Patsy's Brand further responded by filing a petition seeking to have I.O.B.'s Registration Nos. 1,975,110 and 2,213,574 for the PATSY'S and PATSY'S PIZZERIA marks, both to be used in connection with restaurant services, cancelled. The petition received Cancellation Proceeding No. 92/029,614. (Grandinetti Decl. Ex. 20 at TTAB 2-003-009.) In June 2000, the TTAB consolidated Cancellation Proceedings 92/028,142 and 92/029,614 (collectively, the "Cancellation Proceedings"), and stayed the Cancellation Proceedings pending disposition of the "tomato sauce litigation." (Grandinetti Decl. Ex. 18 at TTAB 1-113-117; Ex. 20 at TTAB 2-022-026.)

On February 15, 2000, the PTO issued an Office Action refusing Patsy's Italian Restaurant's application for PATSY'S PR for restaurant services based on U.S. Trademark Registration Nos. 1,874,789, 1,975,110 and 2,213,574. (Grandinetti Decl. Ex. 19 at USPTO 3-009-012.) The first registration is owned by plaintiffs, while the second two registrations were then owned by I.O.B. In the Office Action, the PTO provided plaintiff with the opportunity to "respond to the refusal to register by submitting evidence and arguments in support of registration." (*Id*. at USPTO 3-012.) On April 13, 2001, Patsy's Italian Restaurant filed an additional trademark application for the mark PATSY'S for restaurant services, "not including pizza." (Grandinetti Decl. Ex. 21 at USPTO 4-

055.)  The PTO responded with an additional Office Action on August 13, 2001, refusing Patsy Italian Restaurant's application for PATSY'S, "not including pizza," based on U.S. Trademark Registration Nos. 1,874,789, 1,975,110 and 2,213,574.  (*Id*. at 4-010.)  Again, plaintiff was provided the opportunity to "respond to the refusal to register by submitting evidence and arguments in support of registration," as provided by statute.  (*Id*. at 4-013.)

On April 18, 2001, the United States District Court for the Southern District of New York entered judgment for Patsy's Brand in the tomato sauce litigation, granting permanent injunctive relief.  The injunction not only prohibited use of the defendants' tomato sauce label, but also cancelled I.O.B.'s Registration No. 1,975,110 for the mark PATSY'S to be used in connection with restaurant services, and permanently enjoined the defendants from listing or identifying their businesses as "Patsy's" alone, or as "Patsy's Restaurant," in any telephone directory, sign or advertisement."  (Grandinetti Decl. Ex. 22.)

Following the District Court's judgment, and Amended Final Judgment dated October 4, 2001, Patsy's Brand filed a request to reinstate the Cancellation Proceedings on October 15, 2001.  (Grandinetti Decl. Ex. 18 at TTAB 1-169-176; Ex. 20 at TTAB 2-064-071.)  I.O.B. did not file a response to Patsy's Brand's motion.  However, on October 26, 2001, I.O.B. filed a timely Notice of Appeal to the United States Court of Appeals for the Second Circuit from the District Court's April 18, 2001 judgment and October 4, 2001 amended judgment.

On September 4, 2002, the TTAB granted Patsy's Brand's request to reinstate the Cancellation Proceedings "as conceded," and issued an entry of judgment, granting Patsy's Brand's petition for Cancellation No. 92/029,614.  The judgment further stated that I.O.B.'s "Registration No. 1,975,110 [for the mark PATSY'S in connection with restaurant services] will be cancelled in

due course." (Grandinetti Decl. Ex. 18 at TTAB 1-177-178; Ex. 20 at TTAB 2-072-073.) On September 6, 2002, Patsy's Italian Restaurant received a Notice of Suspension from the PTO for its applications for the marks PATSY'S PR and PATSY'S, "not including pizza," both to be used in connection with restaurant services. Each notice informed Patsy's Italian Restaurant that the refusal of its applications based upon I.O.B.'s registrations was "withdrawn as these marks were cancelled on September 4, 2002." (Grandinetti Decl. Ex. 19 at USPTO 3-062; Ex. 21 at USPTO 4-053.)

On January 16, 2003, the Second Circuit entered judgment modifying the injunction, but otherwise affirming the District Court's judgment. *See Patsy's Brand, Inc.,* 317 F.3d, at 212. In that decision, the Second Circuit found that the injunction exceeded its scope, requiring three modifications: (1) the suit pertained to labels for sauces, not restaurant services, and therefore struck down the provision of the order enjoining the defendants from listing or advertising their restaurant in a telephone directory, sign or advertisement as "Pastsy's" or "Patsy's Restaurant;" and for the same reasoning (2) deleted the provision cancelling the defendant's registration for the service mark PATSY'S for restaurant services (Registration No. 1,975,110).[7] *Id.* at 221. The Second Circuit left open the question of whether I.O.B. could continue its use of the PATSY'S PIZZERIA mark (Registration No. 2,213,574). However, the Second Circuit stated in *dicta*:

> The restaurants [Patsy's Italian Restaurant and Patsy's Pizzeria] have coexisted with similar names for decades. Indeed, that circumstance has inured to the benefit of [Patsy's Brand] by affording it the opportunity to use the dominant feature of [the Patsy's Italian Restaurant] name, "Patsy's," in its sauce labeling, despite the prior use of that same feature in the name of [I.O.B.'s] restaurant. Having secured that benefit in a suit concerned with its recent decision to market pasta sauce, [Patsy's Brand]

---

[7]It appears from the Second Circuit's decision that the court was never fully apprised of the parties' proceedings before the TTAB because the decision fails to mention either the TTAB's September 4, 2002 entry of judgment or the PTO's September 6, 2002 Notices of Suspension.

> cannot use this litigation to restrict the way the Defendants have been identifying their restaurant business for several decades. Whether or not such relief might be warranted in a suit concerned with restaurant services is beyond the scope of this litigation. Although we conclude that the injunction should be confined to the marketing of pasta sauce and food products and should not reach Defendants' restaurant business, we suggest to both sides that henceforth they would be well advised to minimize the risk of confusion by identifying their restaurants by their complete names: "Patsy's Italian Restaurant" and "Patsy's Pizzeria."

*Id*. at 221. I.O.B. thereafter filed a petition for rehearing, which was decided on March 27, 2003.

The order further modified the District Court's injunction by adding the following provision:

> This injunction does not prohibit the Defendants from using the name PATSY'S PIZZERIA on take-out boxes into which hot pizza, cooked in the Defendants' own pizzerias and sold in such pizzerias (not in grocery stores, supermarkets, or other retail stores), is placed so that a customer can take the pizza away from the pizzerias.

(Sayour Decl. Ex. 24.)

The next day, March 28, 2003, the TTAB issued to I.O.B. an order to show cause why judgment should not be entered. (Grandinetti Decl. Ex. 18 at TTAB 1-211-212.) Patsy's Brand filed a Communication on April 18, 2003 notifying the TTAB of the Second Circuit's decision. (Grandinetti Decl. Ex. 20 at TTAB 2-076-080.) I.O.B. responded to the TTAB's order to show cause of April 25, 2003, stating that I.O.B. had only "recently received" from its former attorneys a copy of the order, and on May 12, 2003, the TTAB found: "[I]t is apparent from its response that I.O.B. has not lost interest in this proceeding. Accordingly, the show cause order is discharged, and judgment will not be entered against I.O.B. on the basis of its loss of interest." (Grandinetti Decl. Ex. 18 at TTAB 1-213-217.) The TTAB invited the parties to submit briefs within thirty days of the mailing date on the substantive effect of the judgment in the civil proceeding (as modified by the Second Circuit), and suspended the proceedings. (*Id*. at TTAB 1-217.) However, prior to the expiration of the thirty-day period to file briefs, on May 27, 2003, the PTO cancelled I.O.B.'s

Registration Nos. 1,975,110 and 2,213,574. (*Id*. at TTAB 1-261; Ex. 20 at TTAB 2-104.) On June 9, 2003, I.O.B. submitted its brief on the substantive effect of the judgment in the civil proceedings, pursuant to the TTAB's May 12, 2003 order. (Grandinetti Decl. Ex. 18 at TTAB 1-219-22.) Patsy's Brand submitted its response brief on June 11, 2003, and I.O.B. filed its reply brief on June 24, 2003. (*Id*. at TTAB 1-255-260, 1-262-266.) I.O.B.'s reply brief refers to the PTO's May 27, 2003 order and specifically requests that I.O.B.'s registrations "be restored to the register immediately." (*Id*. at 1-263-264.) However, at no time did I.O.B. appeal the PTO's May 27, 2003 order cancelling its registrations, nor did I.O.B. file a Section 8 affidavit to preserve its marks.

On November 1, 2005, Patsy's Italian Restaurant's applications for a stylized rendition of PATSY'S PR in connection with restaurant services, and a non-stylized rendition of PATSY'S in connection with restaurant services "not including pizza," were granted, receiving Registration Nos. 3,009,836 and 3,009,866, respectively. (Grandinetti Decl. Ex. 19 at USPTO 3-067; Ex. 21 at USPTO 4-055.) On January 9, 2007, I.O.B. filed petitions with the TTAB seeking to have Patsy's Italian Restaurant's Registration Nos. 3,009,836 and 3,009,866 cancelled. The petitions received Cancellation Proceeding Nos. 92/046,912 and 92/046,867, respectively. By letter dated February 12, 2007, the court notified the TTAB that the two instant civil actions may be dispositve of, or have a bearing on, Cancellation Proceeding Nos. 92/046,912 and 92/046,867. The parties filed a joint motion to suspend the proceedings three days later, on February 15, 2007. On March 15, 2007, the TTAB granted the parties' joint motion and suspended the cancellation proceedings for both Cancellation Proceeding Nos. 92/046,912 and 92/046,867.

As of January 22, 2007, the TTAB had not responded to the parties' briefs submitted in June 2003. Consequently, on January 22, 2007, I.O.B. filed a motion for final orders in both Cancellation

Proceeding Nos. 92/028,142 and 92/029,614. (Grandinetti Decl. Ex. 18 at TTAB 1-268-279; Ex. 20 at TTAB 2-106-117.) Patsy's Brand filed an opposition to that motion and a cross-motion for clarification of the register on February 12, 2007. (Sayour Decl. Ex. 19.) On June 28, 2007, the TTAB issued an order in Cancellation Proceeding Nos. 92/028,142 and 92/029,614, which (1) dismisses Cancellation No. 92/028,142 with prejudice, (2) vacates the TTAB's September 4, 2002 order, (3) concedes that the Commissioner's May 27, 2003 order cancelling I.O.B.'s former Registration Nos. 1,975,110 and 2,213,574 was a clerical error, but then directs the Office of the Commissioner for Trademarks to issue a new order, correcting the previous cancellation order, and indicating that I.O.B.'s Registration Nos. 1,975,110 and 2,213,574 are cancelled pursuant to Section 8 of the Trademark Act, 15 U.S.C. § 1058, and (4) suspends the proceedings pending final resolution of the instant civil actions. On July 27, 2007, defendants filed a request for reconsideration of the TTAB's June 28, 2007 order, which was denied on August 16, 2007. On July 13, 2007, the Commissioner for Trademarks issued an order vacating its May 27, 2003 cancellation order, and cancelling I.O.B.'s former Registration Nos. 1,975,110 and 2,213,574 for failure to file affidavits of continuing use pursuant to Section 8.

## Discussion

I.    **Defendants' Motion to Correct the Register[8]**

   A.    **Legal Standards**

   Under Section 37 of the Lanham Act, 15 U.S.C. § 1119, the federal courts have concurrent

---

[8]Defendants concede that Registration No. 1,975,110 for the PATSY'S mark to be used in connection with restaurant services was properly cancelled due to I.O.B.'s failure to file an affidavit pursuant to Section 8 of the Lanham Act,15 U.S.C. § 1058, prior to the PTO's cancellation of the registration on May 27, 2003. Defendants therefore do not seek restoration of that mark.

power with the PTO to restore a cancelled registration and to cancel a trademark registration.  *See*

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:109 (4th ed. 2007).

Specifically, Section 37 provides, in relevant part:

> In any action involving a registered mark the court may . . . order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.  Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

15 U.S.C. § 1119.  Although Section 37 authorizes the federal courts to issue orders directing the

PTO to rectify the Register by conforming it to a court judgment, district courts within the Second

Circuit have recognized the great deference owed to decisions by the PTO.  *See Cullman Ventures,*

*Inc. v. Columbian Art Works, Inc.,* 717 F. Supp. 96, 120 (S.D.N.Y. 1989), *disagreed with on other*

*grounds, Car-Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 269 n. 1 (2d Cir. 1995)

(stating that "decision by the PTO is entitled to great weight."); *Gucci v. Gucci Shops, Inc.,* 688 F.

Supp. 916, 927 (S.D.N.Y. 1988) (stating that the PTO's refusal is entitled to substantial weight)

(citing *Syntex Labs, Inc. v. Norwich Pharmacal Co.,* 437 F.2d 566, 569 (2d Cir. 1971)).  However,

the PTO's decisions are not binding on courts within this Circuit.  *See  ITC Ltd. v. Punchgini, Inc.,*

482 F.3d 135, 159 (2d Cir. 2007); *Buti v. Impresa Persosa S.R.L.,* 139 F.3d 98, 105 (2d Cir. 1998);

*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.,* 874 F.2d 95, 101 (2d Cir. 1989); *see also In re Dr*

*Pepper Co.,* 836 F.2d 508, 510 (Fed. Cir. 1987).

### B.    Restoration of I.O.B.'s former Registration No. 2,213,574

Defendants first request that the court correct the PTO's Principal Register by restoring

I.O.B.'s former Registration No. 2,213,574 for the non-stylized rendition of PATSY'S PIZZERIA

to be used in connection with restaurant services.[9]

Congress has made clear that a federal court hearing a case involving a registered trademark has the power not only to determine registrability, but to order the cancellation or restoration of registrations, or to otherwise "rectify the register." 15 U.S.C. § 1119. It is unsurprising then that a federal court's decision regarding registration is binding upon the Commissioner of Patents and Trademarks and the administrative tribunals of the PTO. *See* Trademark Trial and Appeal Board Manual of Procedure, Chapter 510.02(a) (March 12, 2004), *available at* http://www.uspto.gov/web/offices/dcom/ttab/tbmp/. *See also Buti v. Persoa, S.R.L.,* 139 F.3d 98, 105 (2d Cir. 1998). Given this well-settled principle, the actions of the PTO, culminating in the cancellation of I.O.B.'s Registration No. 2,213,574, are not only confusing to say the least, but

---

[9]Plaintiffs rely on an unpublished decision by the United States District Court for the Southern District of New York in arguing that the court does not have authority pursuant to Section 37 to order restoration of I.O.B.'s cancelled registration because that registration is not the subject of "any claim or counterclaim" in the instant action. *See Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc.,* No. 01 Civ. 0849, 2002 WL 1560789, at *10 (S.D.N.Y. July 15, 2002). First, an unpublished decision has no precedential effect nor is the decision of a court of concurrent jurisdiction binding on this court. Nevertheless, plaintiffs misstate the court's holding in *Manganaro*. In that case, the plaintiff sought an order pursuant to Section 37 directing the PTO to register the name "Manganaro" in the plaintiff's name for all purposes, excluding six-foot hero sandwiches. *Id*. at * 9. The court held that it did not have the authority under Section 37 to order the registration of the trademark because "there were no other claims in the case that involve, or would have any effect upon, the relevant issue of registrability." *Id*. at *10 (citations omitted). Specifically, since the plaintiff had not effectively challenged the defendant's registrations, it was "not a case in which the plaintiff could attempt to leverage a challenge to the defendant's registered marks into a basis for obtaining registration of the proposed mark." *Id*. Here, by contrast, the defendants filed a counter-claim directly challenging the validity of plaintiffs' trademark registrations claiming that the TTAB improperly cancelled I.O.B.'s former Registration No. 2,213,574. Accordingly, the court has the authority pursuant to Section 37 to determine the registrability of Registration No. 2,213,574 and to order rectification of the Registry. *See also Abercrombie & Fitch, Co. v. Hunting World, Inc.* 537 F.2d 4, 13 (2d Cir. 1976) (finding that Section 37 permits cancellation on a counterclaim by a defendant who does not own a registered mark).

contradict the findings, recommendations and spirit of the Second Circuit's decision in the tomato sauce litigation.

A determination of whether the court should order the PTO to restore Registration No. 2,213,574 necessarily involves an examination of the prior tomato sauce litigation and the parties' related proceedings before the PTO. The scope of that litigation was limited to the marketing of pasta sauce and food products; therefore, it did not directly involve I.O.B.'s former mark for PATSY'S PIZZERIA to be used in connection with restaurant services. Indeed, the only reference to Registration No. 2,213,574 in the Second Circuit's decision is included by way of background information. *See Patsy's Brand, Inc.,* 317 F.3d at 213. As such, defendants mischaracterize the Second Circuit's holding in arguing that "the Second Circuit reversed the Southern District of New York's judgment that I.O.B. Realty's Registration No. 2,213,574 should be cancelled." (Defs.' Mem. Supp. Partial Summ. J. 4.) Rather, as plaintiffs note, the only registration that the Southern District ordered the PTO to cancel was I.O.B.'s former Registration No. 1,975,110 for the mark PATSY'S for restaurant services, and that provision of the injunction was later deleted by the Second Circuit. (Grandinetti Decl. Ex. 22.) S*ee also Patsy's Brand, Inc.,* 317 F.3d at 221.

The Second Circuit did not specifically address in the tomato sauce litigation whether I.O.B. could continue its use of the PATSY'S PIZZERIA mark for restaurant services, finding that any such determination exceeded the scope of that litigation. However, the court finds the modifications made by the Second Circuit to the District Court's injunction, along with the reasoning it provided for doing so, to be highly relevant to the instant litigation. First, in recognition of defendants' long-standing use of the "Patsy's Pizzeria" name to identify its restaurants, the Second Circuit made clear that defendants would be entitled to include in their labeling of pasta sauce and other packaged food

18

products that they produce a "modestly sized identification that the product comes from the establishment that operates 'Patsy's Pizzeria,'" and provided detailed specifications of how to do so. *Patsy's Brand, Inc.,* 317 F.3d at 220 (citation omitted).[10]  On March 27, 2003, in response to I.O.B.'s petition for a rehearing, the Second Circuit further modified the District Court's injunction by adding the following provision: "This injunction does not prohibit the Defendants from using the name PATSY'S PIZZERIA on take-out boxes into which hot pizza, cooked in the Defendants' own pizzerias and sold in such pizzerias (not grocery stores, supermarkets, or other retail stores), is placed so that a customer can take the pizza away from the pizzerias." (Sayour Decl. Ex. 24.)  Second, the Second Circuit struck down the provision enjoining defendants from listing or advertising their restaurant in a telephone directory, sign or advertisement as "Patsy's" or "Patsy's Restaurant," and the provision cancelling the defendants' registration for the mark PATSY'S for restaurant services (Registration No. 1,975,110), again because that suit pertained to labels for sauces, not restaurant services.  *See Patsy's Brand, Inc.,* 317 F.3d at 221.

In reaching its decision, the Second Circuit reasoned that Patsy's Pizzeria and Patsy's Italian Restaurant had co-existed with similar names for decades, a circumstance which had "inured to the benefit of [Patsy's Brand] by affording it the opportunity to use the dominant feature of [the Patsy's Italian Restaurant] name, 'Patsy's,' in its sauce labeling, despite the prior use of that same feature in the name of [I.O.B.'s] restaurant." *Id.*  Therefore, the Second Circuit precluded Patsy's Brand from using the tomato sauce litigation "to restrict the way the Defendants ha[d] been identifying their

---

[10]The Second Circuit directed defendants that: "Such identification must not exceed 10-point type, must be a minor component of the labeling, must use the name 'Patsy's Pizzeria' in full with the lettering of both words in the same size and font, must not use a font that is similar to that used by the Plaintiff, and must use the name only to identify the maker or distributor of the product." *Patsy's Brand, Inc.,* 317 F.3d at 220-21.

restaurant business for several decades." *Id*. Significantly, the Second Circuit stated, albeit in *dictum*, that "henceforth [the parties] would be well advised to minimize the risk of confusion by identifying their restaurants by their complete names: 'Patsy's Italian Restaurant' and 'Patsy's Pizzeria.'" *Id*.

Taken together as a whole, it is clear that the Second Circuit's decision modifying the scope of the injunction, but otherwise affirming the District Court's judgment, did not order the cancellation of I.O.B.'s former Registration No. 2,213,574 for a non-stylized rendition of PATSY'S PIZZERIA to be used in connection with restaurant services. Furthermore, even if the Second Circuit's suggestion to the parties to identify their restaurants by their complete names, "Patsy's Italian Restaurant" and "Patsy's Pizzeria" was by way of *dicta*, the court is extremely reluctant to depart from an obviously carefully considered recommendation of the Second Circuit, and one resting on good common sense. Indeed, as a general principle, a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of *dictum*. *See Max M. v. Thompson,* 585 F. Supp. 317, 324 (N.D.Ill. 1984) ("While not excused from making an independent examination of the precise issue presented, we cannot assume that our Court of Appeals writes merely for intellectual exercises") (quoting *Highland Supply Corp. v. Reynolds Metals Co.,* 245 F. Supp. 510, 512 (E.D.Mo. 1965)); s*ee also Lee v. Coughlin,* 643 F. Supp. 546, 549 (W.D.N.Y. 1986) (circuit *dictum* is "worthy of great weight and respect from the lower courts of this Circuit.").[11] The court finds the Second Circuit's suggestion to the parties to be

---

[11]The Second Circuit, as well as other circuit courts of appeals, accord similar respect to the Supreme Court *dictum*. *See U.S. v. Bell,* 524 F.2d 202, 206 (2d Cir. 1975) ("[A] distinction should be drawn between 'obiter *dictum*,' which constitutes an aside or an unnecessary extension of comments, and considered or 'judicial *dictum*' where the Court . . . is providing a construction of a statute to guide the future conduct of inferior courts. While such *dictum* is not binding upon

particularly persuasive here given that the decision is barely four years old, and the suit involved parties nearly identical to those in the instant proceeding.

An even more compelling reason to restore I.O.B.'s registration for the PATSY'S PIZZERIA mark is the premature and careless manner in which the PTO cancelled the registration, relying solely on the District Court's judgment in a suit which did not even involve Registration No. 2,213,574. A consideration of the parties' dealings with the PTO, set out in chronological order, is helpful here. Following the District Court's judgment in the tomato sauce litigation, which granted permanent injunctive relief to Patsy's Brand and ordered the cancellation of I.O.B.'s Registration No. 1,975,110 for the PATSY'S mark in connection with restaurant services, Patsy's Brand filed a request to reinstate the Cancellation proceedings on October 15, 2001. (Grandinetti Decl. Ex. 18 at TTAB 1-169-176; Ex. 20 at TTAB 2-064-071.) Patsy's Brand filed its request before the thirty-day period to file a Notice of Appeal had passed, however, and neglected to notify the PTO of I.O.B.'s timely Notice of Appeal filed on October 26, 2001. *See* Fed. R. App. P. 4.[12] Apparently without knowledge of I.O.B.'s appeal to the Second Circuit, and admittedly relying "<u>solely</u> on . . . the district court's order," (ECF Docket Entry 105 at 24-25) (emphasis in original), on September 4, 2002, the TTAB granted Patsy's Brand's request to reinstate the Cancellation Proceedings "as conceded," and

---

us, it must be given considerable weight and cannot be ignored in the resolution of a close question we have to decide."); *Wright v. Morris,* 111 F.3d 414, 419 (6th Cir. 1997) ("We believe that this [*dicta*] is instructive of the Supreme Court's views and cannot be dismissed out of hand . . . Where there is no clear precedent to the contrary, we will not simply ignore the Court's *dicta*."); *Gaylor v. U.S.,* 74 F.3d 214, 217 (10th Cir. 1996) ("While these statements are *dicta*, this court considers itself bound by Supreme Court *dicta* almost as firmly as by the Court's outright holdings, particularly when the *dicta* is recent and not enfeebled by later statements.").

[12]"In a civil case . . . the notice of appeal required by Rule 3 must be filed with the district court within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A).

issued an entry of judgment, stating that I.O.B.'s "Registration No. 1,975,110 [for the mark PATSY'S in connection with restaurant services] will be cancelled in due course." (Grandinetti Decl. Ex. 18 at TTAB 1-177-178; Ex. 20 at TTAB 2-072-073.)[13]

On April 18, 2003, Patsy's Brand filed a Communication to notify the TTAB of the Second Circuit's January 16, 2003 decision modifying the injunction, but otherwise affirming the District Court's judgment. One week later, on April 25, 2003, I.O.B. responded to a March 28, 2003 TTAB order to show cause why judgment should not be entered, stating that I.O.B. had only "recently received" from its former attorneys a copy of the order. (Grandinetti Decl. Ex. 18 at TTAB 1-213-214.) In response, on May 12, 2003, the TTAB discharged the show cause order and gave the parties thirty days to submit briefs on the substantive effect of the Second Circuit's decision on the Cancellation Proceedings. (*Id*. at TTAB 1-215-217.)

Prior to the expiration of the thirty-day period to file briefs, however, and in direct contravention with the TTAB's May 12, 2003 order that "judgment will not be entered against I.O.B. on the basis of its loss of interest," on May 27, 2003, the PTO cancelled I.O.B.'s Registration Nos. 1,975,110 and 2,213,574. (*Id*. at TTAB 1-261; Ex. 20 at TTAB 2-104.) The PTO's May 27, 2003 order is particularly baffling to the court because, not only was it issued before the parties had submitted their briefs, it went beyond the District Court's decision in cancelling both registrations, rather than merely Registration No. 1,975,110, as directed by the District Court. Even more incredulous is the fact that the Second Circuit had specifically deleted the provision in the District

---

[13]The TTAB makes clear in its recent order dated June 28, 2007 that the September 4, 2002 order "was and is vacated to the extent that it granted judgment in for Patsy's [Brand] based on the district court decision and indicated that I.O.B.'s Registration No. 1,975,110 would be cancelled." (ECF Docket Entry 105 at 25.)

Court's injunction ordering the cancellation of Registration No. 1,975,110. The TTAB recently

conceded in its order dated June 28, 2007 that it "should not have cancelled both of I.O.B.'s

registrations by order issued May 27, 2003, before the parties had an opportunity to brief the matter."

(ECF Docket Entry 105 at 25.) With respect to Registration No. 2,213,574 in particular, the TTAB

further conceded that the "Commissioner's order canceling I.O.B.'s Registration No. 2,213,574

appears to have been a clerical error . . . Neither the Board, the district court, nor the Second Circuit

has issued an order directing cancellation of this registration, and the cancellation order was issued

without any apparent legal basis." (*Id*. at 27.) Accordingly, in light of the Second Circuit's

recommendation to identify the restaurants by their complete names, "Patsy's Italian Restaurant" and

"Patsy's Pizzeria," as well as the manner in which the PTO cancelled I.O.B.'s registration for the

PATSY'S PIZZERIA mark, it appears that restoration of that mark is necessary to "rectify the

register." 15 U.S.C. § 1119.

     1.    <u>Abandonment</u>

     In opposition to defendants' request that the court restore Registration No. 2,213,574,

plaintiffs first claim that I.O.B. abandoned any trademark rights to the PATSY'S PIZZERIA mark

by failing to file either a timely appeal of the PTO's May 27, 2003 order cancelling I.O.B.'s two

registrations, or a Section 8 affidavit to preserve Registration No. 2,213,574.

     It is undisputed that I.O.B. failed to file a timely appeal of the PTO's May 27, 2003 order.

The time period to either appeal a decision of the Commissioner or the TTAB to the United States

Court of Appeals for the Federal Circuit, or to commence a civil action, is two months from the date

of the decision. S*ee* 15 U.S.C. § 1071; 37 C.F.R. § 2.145(d). Therefore, as a party to a cancellation

proceeding, I.O.B. had sixty days from the May 27, 2003 order, or until July 28, 2003, to either file

(1) a petition with the PTO seeking reconsideration of the order, (2) a notice of appeal with the Federal Circuit, or (3) a civil action in a United States District Court. *Id.*; *see also* 37 C.F.R. § 2.146. Rather than appealing the PTO's May 27, 2003 order, I.O.B. chose to comply with the TTAB's May 12, 2003 order directing the parties to submit briefs on the substantive effect of the Second Circuit's decision within thirty days. I.O.B. submitted its brief on June 9, 2003, Patsy's Brand submitted its response brief on June 11, 2003, and I.O.B. filed its reply brief on June 24, 2003. (Grandinetti Decl. Ex. 18 at TTAB 1-219-22, 1-255-60, 1-262-66.) Notably, in its reply brief, I.O.B.'s specifically requests that their registrations "be restored to the register immediately." (*Id*. at TTAB 1-263-264.)

It is similarly undisputed that I.O.B. failed to file a Section 8 affidavit to preserve Registration No. 2,213,574 by the statutory deadline. One of the purposes of the Lanham Act was to rid the PTO of trademarks that were not being used. To effect that result, Congress incorporated Section 8 which requires an affidavit of use to be filed within the fifth and sixth year following registration of a federal trademark. S*ee* 15 U.S.C. § 1058. "If the affidavit or declaration is not filed within the time periods set forth in section 8 of the Act . . . the registration will be cancelled. These deficiencies cannot be cured." 37 C.F.R. § 2.164(b). Pursuant to Section 8, I.O.B. was required to file an affidavit of continued use between December 29, 2003 and December 29, 2004, and the six-month statutory grace period expired on June 29, 2005. *See* 15 U.S.C. § 1058(c). Although the TTAB's recent June 28, 2007 order acknowledges that the PTO's May 27, 2003 order cancelling Registration No. 2,213,574 was clerical error, it nevertheless directs the Office of the Commissioner for Trademarks to issue a new order indicating that I.O.B.'s former Registration No. 2,213,574 was cancelled pursuant to Section 8.

With the benefit of twenty-twenty hindsight, it appears that I.O.B. erred in failing to appeal

the PTO's May 27, 2003 decision and to file a Section 8 affidavit prior to June 29, 2005.  However, the facts and circumstances of the parties' proceedings before the PTO would have confused even the most experienced intellectual property attorneys.  Given the unprecedented sequence of events here, in which I.O.B. was faced with the PTO's May 27, 2003 order cancelling its two registrations before the thirty-day period to file briefs had expired, it was far from clear what the proper next step for I.O.B. should have been.  The court therefore finds that I.O.B. acted reasonably in complying with the TTAB's May 12, 2003 order by submitting briefs on the substantive effect of the Second Circuit's decision on the Cancellation Proceedings within the time period allotted, and arguing in its reply brief that the cancelled registrations should "be restored to the register immediately." (Grandinetti Decl. Ex. 18 at TTAB 1-263-264.)  The court further finds that I.O.B. acted reasonably in not filing a Section 8 affidavit because the Registration No. 2,213,574 had been cancelled. Indeed, as the TTAB concedes, "[h]ad IOB timely submitted the required §[ ] 8 [ ] filing[ ], [it] would not have been <u>approved</u> while its registration[ ] w[as] in cancelled status."  (ECF Docket Entry 105 at 29) (emphasis in original).  As such, I.O.B. has not abandoned its trademark rights to the PATSY'S PIZZERIA mark by failing to file either a timely appeal of the May 27, 2003 order or a Section 8 affidavit to preserve Registration No. 2,213,574.

     2.   <u>Naked Licensing</u>

Plaintiffs next claim that I.O.B. abandoned its trademark to the name PATSY'S PIZZERIA by engaging in "naked licensing."  "The owner of a trademark has not only the right to license the use of its trademark to others, but also a concurrent duty to exercise control and supervision over the licensee's use of the mark."  *Warner-Lambert Co. v. Schick U.S.A., Inc.,* 935 F. Supp. 130, 143-44 (D. Conn. 1996) (citing *Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.,* 486 F.2d 114, 123-24 (5th

Cir. 1973)).  Where a licensor retains no control over the nature or quality of goods or services provided in connection with the mark, however, such "naked licensing" will result in abandonment. *See Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358, 367(2d Cir. 1959).  The central question is whether "the licensees' operations are policed adequately to guarantee the quality of products sold [or the services promised] under the mark."  *GM v. Gibson Chem. & Oil Corp.,* 786 F.2d 105, 110 (2d Cir. 1986).  However, to succeed on such an abandonment claim, plaintiffs must meet a "high burden of proof."  *Warner Bros., Inc. v. Gay Toys, Inc.,* 724 F.2d 327, 334 (2d Cir. 1983).

Even according plaintiffs the most favorable inference, they have not met the "high burden of proof" required to show abandonment through failure to police.  I.O.B.'s franchise operator, Tsoulos, testified that, "to the best of his knowledge," neither of I.O.B.'s controlling officers had ever visited his pizzerias.  (Sayour Decl. Ex. 9, Nick Tsoulos Dep. 43, Dec. 22, 2006.)  However, Brija and Brecevich testified that they routinely and regularly perform unannounced quality inspections of their franchise locations.  (Grandinetti Decl. Ex. 4 at 86-100; Ex. 9 at 14, 16-20, 34, 39.)  In addition, Brecevich orally instructed Banas to operate the Staten Island Patsy's Pizzeria like a "regular Patsy's Pizzeria," serving Italian food, and in particular, coal oven fired, thin crust pizza, under the name "Patsy's" name.  (Grandinetti Decl. Ex. 9 at 14, 16-17, 34.)  Brecevich also gave Banas recipes for the pizza, a copy of a "Patsy's Pizzeria" menu from which to copy the logo, approved the menu Banas had created for the Staten Island Patsy's Pizzeria, and performed site visits both during the construction phase and after the restaurant had opened.  (Grandinetti Decl. Ex. 8 at 41-42, 58.)  Finally, both Brecevich and Brija visited the Long Island Patsy's Pizzeria to approve the Syosset location and to perform an inspection after the restaurant had opened for business.

26

(Grandinetti Decl. Ex. 10 at 20, 25, 28-32.)  On at least one occasion, Brija taste-tested the pizza. (*Id*. at 25.)[14]

For all of the foregoing reasons, the court grants defendants' request to restore I.O.B.'s U.S. Trademark Registration No. 2,213,574 for a non-stylized rendition of PATSY'S PIZZERIA for restaurant services, pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119.

### C.    Cancellation of Plaintiffs' Registrations

Defendants next request that the court correct the Register by cancelling two U.S. Trademark registrations owned by Patsy's Italian Restaurant:  Registration No. 3,009,836 for a stylized rendition of PATSY'S PR to be used in connection with restaurant services, and Registration No. 3,009,866 for a non-stylized rendition of PATSY'S to be used in connection with restaurant services, "not including pizza."

A certificate of registration constitutes prima facie evidence of (1) the validity of the registered mark, (2) the registrant's ownership thereof, and (3) the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate.  *See* 15 U.S.C. §§ 1057(b), 1115(a).  Given the fact that plaintiffs' marks have been federally registered since 2005, the court presumes they are valid.  However, inasmuch as the

---

[14]Plaintiffs final argument is that, in deciding whether to restore Registration No. 2,213,574, the court must resolve the other grounds raised in Patsy's Brand's petition for cancellation, namely that I.O.B. obtained its former registrations, specifically former Registration No. 2,213,574, by submitting false and/or fraudulent declarations to the PTO.  (Pls.' Mem. Opp. Partial Summ. J. 8-9.)  Notwithstanding plaintiffs' argument, the court is unaware of, and plaintiffs have not provided, any case in which a federal court has declined to restore a cancelled registration on this basis.  Moreover, although the parties have not taken discovery on this issue, plaintiffs' bald allegation of fraud is insufficient to defeat defendants' request to restore Registration No. 2,213,574, particularly in light of the court's power pursuant to Section 37 to "rectify the register."  15 U.S.C. § 1119.

27

registration was granted less than five years ago, the mark is not uncontestable, s*ee* 15 U.S.C. § 1065, and the presumption created by Section 7(b) of the Lanham Act is therefore rebuttable. *See Aini v. Sun Taiyang Co., Ltd.,* 964 F. Supp. 762, 774 (S.D.N.Y. 1997). Defendants may overcome the presumption that plaintiffs validly own the PATSY'S PR mark, and the PATSY'S mark, not including pizza, upon proof by a preponderance of the evidence that they do not. *See id.* (citing 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:138 (4th ed. 2007)).

Under the Lanham Act, registrations less than five years old may be cancelled "for any reason which would have been sufficient to deny registration in the first instance." *Mech. Plastics Corp. v. Titan Techs., Inc.,* 823 F. Supp. 1137, 1150 (S.D.N.Y. 1993), *aff'd* 33 F.3d 50 (2d Cir. 1994); *see also* 15 U.S.C. §§ 1064, 1071(b)(1); *Int'l Order of Job's Daughters v. Lindeburg & Co.,* 727 F.2d 1087, 1091 (Fed. Cir. 1984); 3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 20:52 (4th ed. 2007). Section 2(d) of the Lanham Act, for instance, provides that registration will be refused if the mark sought to be registered "so resembles a mark registered in the Patent and Trademark Office, or a mark . . . previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). Moreover, the fact that a second user has obtained a registration from the PTO "for a trademark held by a prior user does not incontrovertibly establish its rights to the mark. If the second user's use of the mark creates a likelihood of confusion, a prior user can obtain a cancellation of the second user's registration." *Sterling Drug, Inc. v. Bayer AG,* 14 F.3d 733, 743 (2d Cir. 1994) (citing *Ford Motor Co. v. Ford,* 462 F.2d 1405 (C.C.P.A. 1972), *cert. denied,* 409 U.S. 1109, 93 S. Ct. 910, 34 L. Ed. 2d 690 (1973) (cancelling "Ford Records" registration because of likelihood of confusion with Ford Motor

Company's trademark "Ford"); *Southern Enters, Inc. v. Burger King of Fla., Inc.,* 419 F.2d 460 (C.C.P.A. 1970) (cancelling "Whoppaburger" registration because of likelihood of confusion with Burger King's "Whopper" trademark)).

As a threshold matter, the court notes that defendants are not, as plaintiffs assert, permanently enjoined from seeking cancellation of Patsy's Italian Restaurant's registrations because the District Court's judgment in the tomato sauce litigation, as affirmed by the Second Circuit, only enjoins defendants from "petitioning to cancel any registration of *Plaintiff* for trademark PATSY'S for sauces or other packaged food products or restaurant services." (Grandinetti Decl. Ex. 22 at ¶4(e)) (emphasis added). Although Patsy's Brand and Patsy's Italian Restaurant are affiliated, the sole plaintiff in the tomato sauce litigation was Patsy's Brand. The instant request, therefore, does not violate the permanent injunction because defendants are not seeking to cancel any of Patsy's Brand's registrations for sauces; the registrations at issue are owned by Patsy's Italian Restaurant.

Defendants first claim that Patsy's Italian Restaurant's registrations should be cancelled because they allegedly "would not have issued without the erroneous cancellation of I.O.B. Realty's Registrations." (Defs.' Mem. Supp. Partial Summ. J. 8.) In support, defendants rely on the February 15, 2000 and the August 13, 2001 Office Actions, in which the PTO refused Patsy's Italian Restaurant's application for the PATSY'S PR and PATSY'S marks because they "so resemble[d] the marks in U.S. Registration Nos. 1,874,789, 1,975,110 and 2,213,574 as to be likely to cause confusion, or to cause mistake, or to deceive," pursuant to Section 2(d) of the Lanham Act. (Grandinetti Decl. Ex. 19 at USPTO 3-009-012; Ex. 21 at 4-010.) The first registration is owned by plaintiffs, while the second two registrations were then owned by I.O.B. Defendants further rely on the September 6, 2002 Notices of Suspension, in which the PTO informed Patsy's Italian Restaurant

that "[t]he Section 2(d) refusal as to the US registrations owned by IOB Realty have . . . been withdrawn as these marks were cancelled on September 4, 2002." (Grandinetti Decl. Ex. 19 at USPTO 3-062; Ex. 21 at USPTO 4-053.)

Defendants' argument that the PTO would have continued to refuse plaintiffs' applications if I.O.B.'s registrations had remained in effect fails, because it is based on pure speculation. First, defendants' reliance on the Office Actions and the Notices of Suspension is misplaced because they do not constitute final decisions of the PTO. It is customary for an examining attorney at the PTO to issue a non-final office action setting forth the legal status of a trademark application. The grounds for refusal in a non-final office action, however, do not constitute a final rejection of the application, and the applicant will typically be provided with an opportunity to explain why its application should be accepted. *See http://www.uspto.gov/web/trademarks/workflow/oa.htm*. Likewise, both the February 15, 2000 and the August 13, 2001 Office Actions provided plaintiff with the opportunity to "respond to the refusal to register by submitting evidence and arguments in support of registration" because they were non-final in nature. (Grandinetti Decl. Ex. 19 at USPTO 3-012; Ex. 21 at USPTO 4-013.) Second, the facts have changed since the Examining Attorney issued the non-final Office Actions because, as defendants concede, I.O.B.'s former Registration No. 1,975,110 for the PATSY'S mark in connection with restaurant services was properly cancelled. As such, there is no basis for the court to conclude that Patsy's Italian Restaurant would not have received its registrations but for the cancellation of I.O.B.'s registrations.

Defendants next claim that the court should cancel Patsy's Italian Restaurant's registrations because I.O.B. is a "prior user of the mark PATSY'S and PATSY'S PIZZERIA." (Defs.' Mem. Supp. Partial Summ. J. 8.) It is beyond dispute that I.O.B.'s predecessor was the first to use the

name "Patsy's" for its restaurant business. Indeed, the Second Circuit stated:

> For more than half a century, two restaurants that include "Patsy's" in their names have co-existed in New York City. The first, opened in 1933, is a pizzeria-style restaurant in East Harlem generally called "Patsy's Pizzeria" and sometimes called just "Patsy's." . . . The second restaurant opened in 1944. It is generally called "Patsy's Italian Restaurant" and sometimes just "Patsy's."

*Patsy's Brand, Inc.,* 317 F.3d at 212; *see also Patsy's Brand, Inc.,* 2001 WL 170672, at *5 (finding it to be a "conceded fact that I.O.B.'s predecessor was the first to use the name Patsy's for its restaurant services."). (*See also* Grandinetti Decl. Ex. 1 at 12; Ex. 34 ¶ 10; Ex. 35 at 54; Ex. 38 at 22.) However, for I.O.B., as the prior user, to obtain cancellation of Patsy's Italian Restaurant's registrations, I.O.B. must demonstrate a likelihood of confusion. *See* 15 U.S.C. § 1052(d); *Sterling Drug,* 14 F.3d at 743. In determining likelihood of confusion, courts are guided by the now-familiar *Polaroid* factors: (1) strength of the prior owner's mark; (2) similarity between the two marks; (3) competitive proximity of the products; (4) likelihood that the prior user will bridge the gap; (5) actual confusion; (6) defendant's good faith; (7) quality of defendant's product; and (8) sophistication of the buyers. *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961), *cert. denied,* 368 U.S. 820, 82 S. Ct. 36, 7 L. Ed. 2d 25 (1961). Defendants' moving papers are devoid of any discussion relating to a likelihood of confusion between defendants' marks and the trademark registrations owned by Patsy's Italian Restaurant, as the second user. Accordingly, defendants' argument is rejected.

Although the court possesses concurrent power with the PTO to cancel a trademark registration, defendants have failed to overcome the presumption pursuant to Section 7(b) of the Lanham Act that Patsy's Italian Restaurant validly owns the PATSY'S PR mark, and the PATSY'S mark, "not including pizza." *See* 15 U.S.C. § 1057(b). In addition, even if the PTO had not canceled

I.O.B.'s former Registration No. 2,213,574, it is unclear from the record whether the PTO would have denied registration of plaintiffs' marks because neither the stylized rendition of the PATSY'S PR mark, nor the non-stylized rendition of the PATSY'S mark, "not including pizza," "so resemble a mark registered in the Patent and Trademark Office, or a mark . . . previously used in the United States by another and not abandoned as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). First, the PATSY'S PR mark is unlikely to cause confusion with I.O.B.'s former registration for the PATSY'S PIZZERIA mark given that PATSY'S PR is stylized, while PATSY'S PIZZERIA is not. (Grandinetti Decl. Ex. 6 at USPTO 1-054; Ex. 19 at USPTO 3-067.) Second, although both former Registration No. 2,213,574 and current Registration No. 3,009,866 are for restaurant services, the two registrations are unlikely to be confused because Registration No. 3,009,866 specifically precludes Patsy's Italian Restaurant from using the PATSY'S mark in connection with pizza, and defendants' restaurant is primarily known as a pizzeria. (Grandinetti Decl. Ex. 6 at USPTO 1-054; Ex. 21 at USPTO 4-055.)

In view of plaintiffs' long-standing use of the name "Patsy's" to identify not only their restaurant on West 56th Street, but their pasta sauces and packaged food products, the court finds it unnecessary at this juncture to cancel Patsy's Italian Restaurant's Registration Nos. 3,009,836 and 3,009,866. Moreover, it is significant that plaintiffs' and defendants' restaurants, both of which include "Patsy's" in their names, have co-existed for nearly six decades on the island of Manhattan with only minimal confusion. Accordingly, the court declines defendants' request to cancel Patsy's Italian Restaurant's Registration No. 3,009,836 for the mark PATSY'S PR, and Registration No. 3,009,866 for the mark PATSY'S not including pizza, both for restaurant services.

## II.     Defendants' Motion for Summary Judgment on All of Plaintiffs' Claims

Defendants contend that plaintiffs' causes of action for federal service mark infringement (Count One in both civil actions) must be dismissed because restored Registration No. 2,213,574 for a non-stylized rendition of PATSY'S PIZZERIA for restaurant services is "prima facie evidence . . . of [I.O.B.'s] exclusive right to use the registered mark in commerce or in connection with the . . . services specified in the certificate." 15 U.S.C. § 1057(b). Defendants further contend that they are entitled to summary judgment on plaintiffs' remaining causes of action, which include federal and common law trademark infringement, unfair competition and injury to business reputation, for the following reasons: (1) as the senior users of the PATSY'S name in commerce, defendants have superior rights in that mark; (2) the predecessors to the instant parties allegedly entered into a "consent agreement" in or about 1946 that their respective restaurants would co-exist, and (3) the plaintiffs' claims are barred under the doctrine of laches.

### A.     Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). The moving party bears the burden of proving that no genuine issue as to any material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). However, the

nonmoving party "must not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks and citations omitted). Summary judgment should be granted only when no reasonable trier of fact could find in favor of the nonmoving party. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir. 1994).

### B.    Prior Use Defense

To set forth a prima facie case of service mark infringement, trademark infringement, and unfair competition under either New York state or federal law, the moving party must establish that it has a valid mark entitled to protection under the Lanham Act, and that the non-moving party's actions are likely to cause confusion in the marketplace as to the source of the goods or services. *See* 15 U.S.C. §§ 1114, 1125; N.Y. Gen. Bus. Law § 360-1; *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 776, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992) (Stevens, J., concurring); *Virgin Enters. v. Nawab,* 335 F.3d 141, 146 (2d Cir. 2003). With respect to the validity of the mark, ownership of a federally registered trademark is prima facie evidence of the mark's validity and of the owner's exclusive right to its use. *See* 15 U.S.C. §§ 1057(b), 1115(a). However, "[i]t is a fundamental principal of trademark law that the right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace. The user who first appropriates the mark obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploring the mark commercially." *Hawaii-Pacific Apparel Group, Inc. v. Cleveland Browns Football Co. LLC,* 418 F. Supp. 2d 501, 505-06 (S.D.N.Y. 2006) (citations and quotations omitted). The prior user of an unregistered mark is therefore entitled to common law protection for its continued use of the mark in the areas of use that predate

registration. *Architemps, Inc. v. Architemps, Ltd.,* 704 F. Supp. 39, 40 (S.D.N.Y. 1988) (citing *Ace Hardware Co., Inc. v. Ace Hardware Corp.,* 532 F. Supp. 770, 773 (S.D.N.Y. 1982)). In order to prevail on this defense, the claimed senior user must demonstrate (1) present rights in the mark, (2) acquired prior to the date of registration, (3) continual use of the mark since that date, and (4) use prior to the registrant on the goods or services that are in issue. *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.,* 841 F. Supp. 1339, 1353-54 (E.D.N.Y. 1994) (citations omitted).

As set forth above, it is not only clear that I.O.B.'s predecessor was the first to use the "Patsy's" name for its restaurant business, but that restoration of I.O.B.'s former Registration No. 2,213,574 for the PATSY'S PIZZERIA mark is necessary to "rectify the register." 15 U.S.C. § 1119. As a threshold matter, however, before the Staten Island and Long Island defendants may benefit from I.O.B.'s prior use of the PATSY'S PIZZERIA mark and restored Registration No. 2,213,574, it is necessary to determine what rights, if any, the Staten Island and Long Island defendants have to use the PATSY'S PIZZERIA mark in connection with their restaurants.

Privity may be established with or without a formal written agreement. *See Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.,* No. 01 Civ. 2950, 2005 WL 2148925, at *10 (S.D.N.Y. Sept. 6, 2005). Indeed, in cases where one party is relying on the superior trademark rights of another party to establish their own priority of use in the mark, the only requirement is that the party with superior trademark rights "permit[ ] a defendant to use a trademark as part of a *contractual agreement*." *Id.* (citing *Lapinee Trade, Inc. v. Paleewong Trading Co., Inc.,* 687 F. Supp. 1262, 1264 (N.D.Ill. 1988) (emphasis in original). "Thus, privity may even be established through an implied-in-fact contract." *Id.* (citing *Maher v. U.S.,* 314 F.3d 600, 603 n. 1 (Fed. Cir. 2002), *cert. denied,* 540 U.S. 821, 124 S. Ct. 133, 157 L. Ed. 2d 40 (2003)).

"A contract implied in fact may result as an inference from the facts and circumstances of the case although not formally stated in words . . . and is derived from the 'presumed' intention of the parties as indicated by their conduct." *TMS Entertainment LTD v. Madison Green Entertainment Sales, Inc.,* No. 03 Civ. 517, 2005 WL 476663, at *5 (S.D.N.Y. Feb. 28, 2005). An implied-in-fact contract is equally binding as an express contract; therefore, an implied in fact contract requires proof of the same elements to establish an express contract – mutuality of intent, offer and acceptance, lack of ambiguity, and consideration. *Id*. at *5. However, these elements can be inferred from the "specific conduct of the parties, industry custom, and course of dealing." *Diarama Trading Co., Inc.,* 2005 WL 2148925, at *10 (quoting *Nadel v. Play-by-Play Toys & Novelties, Inc.,* 208 F.3d 368, 377 n. 5 (2d Cir. 2000)). The court in *Diarama Trading Co., Inc.*, for instance, found that an implied-in-fact contract existed between the defendants and a third party with superior trademark rights to the mark at issue therein because the third party (1) had issued news articles and press releases, and had given company presentations, outlining how the defendants would receive additional resources and services, including use of the disputed mark in their advertising, (2) asked the defendants to return old marketing materials in exchange for new materials comprising the disputed mark, and (3) provided guidelines to defendants on how to market the disputed trademark. *Id*. at *11.

The court finds the record here to be replete with genuine issues of material fact regarding whether any contract - express or implied-in-fact - exists between either I.O.B. or Patsy's Inc. and the Staten Island and Long Island defendants. Despite plaintiffs' assertions to the contrary, it is beyond dispute that I.O.B. purchased Patsy's Pizzeria in 1991. (Grandinetti Decl. Ex. 3; Ex. 4 at 12.) *See also Patsy's Brand, Inc.,* 2001 WL 170672, at *1. In addition, I.O.B. entered into a Cross-

License Agreement with Patsy's Inc. seven years later, in 1998, which by its terms, grants Patsy's Inc. a license to use the "Patsy's System" and I.O.B.'s proprietary marks, as well as the right to sublicense these rights to third parties. (Grandinetti Decl. Ex. 7.) The Agreement remains in effect until March 10, 2018. (*Id*.)

Defendants contend that I.O.B. is in privity with the Staten Island defendants because the parties' conduct evidenced their mutual intent to enter into an implied-in-fact contract. The "conduct" defendants are referring to is simply Brecevich's oral authorization, as an officer of I.O.B. and Patsy's Inc., to open the restaurant under the "Patsy's" name, and the parties' oral agreement that the Staten Island Patsy's Pizzeria would be franchised upon reinstatement of Pasty's Inc.'s franchise license. (Grandinetti Decl. Ex. 8 at 14, 28-29, 71-72; Ex. 9 at 8-14; Ex. 10 at 23.) A reasonable juror could find that such evidence, without more, fails to prove the required elements of an implied-in-fact contract. Although Brecevich and Banas, as officers of Patsy's Inc. and Anthony & Patsy's Inc. respectively, testified to the parties' mutual intent to not only open the restaurant, but to franchise it at an unspecified time in the future, the terms of the alleged agreement are fraught with ambiguity and the consideration appears to be wholly lacking. Moreover, I.O.B.'s prior course of dealing would not lead a reasonable juror to infer that an implied-in-fact contract exists because, between 1994 and 1996, I.O.B. followed formal licensing procedures, including the execution of written documents, in allowing Tsoulos to open five franchise locations in Manhattan under the names "Patsy's Pizzeria" or "Patsys." (Grandinetti Decl. Ex. 2.) Finally, although not raised by plaintiffs in response to defendants' assertions regarding privity, the Statute of Frauds is an available defense because, as defendants concede, the Staten Island Patsy's Pizzeria was never franchised, nor was any other written agreement reached, despite the fact that the restaurant remained open for more

than a year, from July 2005 to September 2006.  (Grandinetti Decl. Ex. 8 at 14-15.)  *See American Fed. Group, Ltd. v. Rothenberg,* 136 F.3d 897, 910 (2d Cir. 1998); *see also Valentino v. Davis,* 270 A.D.2d. 635, 638, 703 N.Y.S.2d 609, 612 (3d Dep't 2000) (finding that "the Statute of Frauds is an available defense to plaintiff's claim that an implied-in-fact contract existed between the parties.").[15]

Defendants further contend that I.O.B. is in privity with the Long Island defendants because Brecevich orally authorized the Long Island defendants to open their restaurant under the "Patsy's" name, the parties "memorialized" a brief understanding of their forming agreement on November 1, 2006, and Brecevich, Zyller and Banas signed Patsy's Inc.'s approved Franchise Offering Circular. Defendants' argument fails because genuine issues of material fact exist with respect to whether the so-called "memorialization" or the Offering Circular constitute binding agreements under New York law, and, for the same reasons set forth above, with respect to whether an implied-in-fact contract exists between I.O.B. and the Long Island defendants.  The alleged "memorialization" consists of a one-page undated document and only contains Zyller's signature, as the President of Al & Anthony's Patsy's Inc.; it is not signed by an officer of either I.O.B. or Patsy's Inc., the alleged licensors.  (Grandinetti Decl. Ex. 11.)  Moreover, although the document references a payment of royalties to Patsy's Inc. for the "Patsy's method of operation, recipes and general pizza making knowledge and construction" and provides Patsy's Inc. with a "5% share interest in the [Long Island Patsy's Pizzeria] along with a 50% share in the management decision making process," it fails to establish certain essential terms (e.g. the purported consideration, the parties' share of profits and

---

[15]New York's Statute of Frauds requires an agreement to be in writing if "[b]y its terms [it] is not to be performed within one year from the making thereof." N.Y. Gen. Oblig. Law § 5-701(a) (McKinney 2001); *Ebker v. Tan Jay Int'l, Ltd.,* 739 F.2d 812, 815 n. 3 (2d Cir. 1984); *Halloran v. Ohlmeyer Commc'ns. Co.,* 618 F. Supp. 1214, 1220 (S.D.N.Y. 1985).

losses, the parties' contributions). (*Id.*) Most significantly, the document makes no reference to the licensee's rights to use proprietary marks. (*Id.*) Although the Offering Circular contains the signature of an officer of Patsy's Inc., namely Brecevich, it is unclear when the parties signed the document because it is undated. (Grandinetti Decl. Ex. 15.)

Accordingly, defendants do not prevail on their prior user defense because genuine issues of material fact remain with respect to whether privity exists among either I.O.B. or Patsy's Inc. and the Staten Island and Long Island defendants.

### B. Consent Agreement

In assessing the likelihood of confusion, courts have considered whether the parties whose marks are in question have agreed, in some form, to memorialize methods of avoiding confusion. *See In re E.I. DuPont Denemours & Co.,* 476 F.2d 1357, 1361 (C.C.P.A. 1973); *In re Four Seasons Hotels Ltd.,* 987 F.2d 1565, 1566-69 (Fed. Cir. 1993). As the Federal Circuit has explained, a consent agreement is evidence that the "competitors clearly thought out their commercial interests with care," and recognized that it is "highly unlikely that they would have deliberately created a situation in which the sources of their respective products would be confused by their consumers." *In re N.A.D. Inc.,* 754 F.2d 996, 998 (Fed. Cir. 1985). However, given that consent agreements come in different forms and under circumstances of infinite variety, the existence of a consent agreement may or may not tip the scales in favor of a finding of no likelihood of confusion. *See In re Mastic Inc.,* 829 F.2d 1114, 1117 (Fed. Cir. 1987). For instance, a "naked 'consent' may carry little weight," while "[t]he weight to be given more detailed agreements . . . should be substantial." *Four Seasons,* 987 F.2d at 1568 (quoting *DuPont,* 476 F.2d at 1362).

Even assuming privity exists among either I.O.B. or Patsy's Inc. and the Staten Island and

Long Island defendants such that defendants could establish their rights to a valid mark, genuine issues of material fact remain with respect to whether the predecessors to the instant parties entered into an oral "consent agreement" because the portions of the record which relate to the existence of the alleged agreement are riddled with contradictions. In a deposition that took place on January 24, 2007 and a declaration dated March 23, 2007, Salvatore Scognamillo ("Sal"), son of the original owner of Patsy's Italian Restaurant, testified that counsel for Mr. Lancieri wrote a letter to plaintiffs' predecessors in or about 1946, informing them that the Italian Restaurant was infringing the PATSY'S mark. In response, Sal testified that he called Mr. Lancieri, and the two men were able to reach an oral agreement over the telephone to co-exist, given the distance between the two restaurants and their slightly different names. (Sal Scognamillo Decl. ¶¶ 6-9; Grandinetti Decl. Ex. 25, Salvatore Scognamillo Dep. 7-10, Jan. 24, 2007.) However, in a deposition that took place on January 12, 2007, Sal Scognamillo ("Salvatore"), Sal's nephew and current owner of plaintiffs' corporations, testified that neither he, nor any other member of his family, ever engaged in discussions with anyone from Patsy's Pizzeria regarding the "Patsy's" name. (Grandinetti Decl. Ex. 16 at 24-25.) Furthermore, even assuming the existence of an agreement, the consent here is no more than a "naked" consent, which carries little weight in a likelihood of confusion assessment, and in any event, is unenforceable because it violates the Statute of Frauds. *See* N.Y. Gen. Oblig. Law § 5-701(a).

C.     **Doctrine of Laches**

Finally, defendants move for summary judgment on their affirmative defense of laches. "Laches is an equitable defense which bars injunctive relief where a plaintiff unreasonably delays in commencing an action." *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.,* 17 F.3d 38, 44 (2d

Cir. 1994). "While laches is an equitable defense, it can bar both injunctive relief and monetary relief in a trademark infringement action." *Toyota Jidosha Kabushiki Kaisha v. Aliments Lexus Inc.,* No. 02 Civ. 0013, 2004 WL 1304054, at * 4 (E.D.N.Y. June 14, 2004) (citation omitted). To prevail on an affirmative defense of laches, a defendant must prove that (1) the plaintiff knew of the defendant's misconduct, (2) the plaintiff inexcusably delayed in taking action, and (3) the defendant was prejudiced by the delay. *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 192 (2d Cir. 1996).

Contrary to defendants' assertion, the record does not clearly show that plaintiffs' claims should be foreclosed by laches as a matter of law. Plaintiffs became aware of defendants' use of the PATSY'S mark in connection with the East Harlem pizzeria and the five franchise locations during the tomato sauce litigation of the mid-1990's, if not before that time. However, in the instant action, plaintiffs are only contesting the expansion of Patsy's Pizzeria into the outer boroughs of New York, namely Staten Island and Long Island; plaintiffs are not claiming that their service marks have been infringed by I.O.B. and Patsy's Inc.'s use of the PATSY'S name in connection with either the original East Harlem pizzeria or the five franchise operations located throughout Manhattan. Moreover, it cannot be said that plaintiffs inexcusably delayed in taking action because upon discovering defendants' efforts to open both the Staten Island Patsy's Pizzeria and the Long Island Patsy's Pizzeria, plaintiffs promptly filed suit. As such, defendants' affirmative defense of laches is denied.

## Conclusion

For the reasons set forth above, defendants' motion to correct the register is granted to the extent it requests restoration of I.O.B. Realty, Inc.'s U.S. Trademark Registration No. 2,213,574 for non-stylized rendition of PATSY'S PIZZERIA for restaurant services, and denied to the extent it

requests cancellation of Patsy's Italian Restaurant Inc.'s U.S. Trademark Registration No. 3,009,836 for a stylized rendition of PATSY'S PR, and Registration No. 3,009,866 for a non-stylized rendition of PATSY'S, "not including pizza," both for restaurant services. The portion of the TTAB's recent June 28, 2007 order directing the Office of the Commissioner for Trademarks to issue a new order indicating that I.O.B.'s former Registration No. 2,213,574 was cancelled pursuant to Section 8 is overruled. Defendants' motions for partial summary judgment on Count One in both civil actions, and for summary judgment on plaintiffs' remaining causes of action are denied.

The Commissioner of Patents and Trademarks and the Assistant Commissioner for Trademarks are hereby ordered to restore I.O.B. Realty, Inc.'s U.S. Trademark Registration No. 2,213,574, pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119. The Clerk of Court is further directed to certify a copy of this Opinion and Order to the Commissioner of the Patent and Trademark Office.

SO ORDERED.

DATED:      Brooklyn, New York
               August 28, 2007

                         _____/s/_____
                               DORA L. IRIZARRY
                         United States District Judge