**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
PATSY'S ITALIAN RESTAURANT, INC.,
PATSY'S BRAND, INC.,

                 Plaintiffs,                                  <u>**OPINION & ORDER**</u>

           - against -                                06-CV-0729 (RER)

ANTHONY BANAS d/b/a PATSY'S,
PATSY'S PIZZERIA,

                 Defendants.
------------------------------------------------------------------X
------------------------------------------------------------------X
PATSY'S ITALIAN RESTAURANT, INC.,

                 Plaintiff and
                 Counterclaim Defendant,

           - against -                                06-CV-5857 (RER)

ANTHONY BANAS d/b/a PATSY'S and
PATSY'S PIZZERIA TRATTORIA IMPAZZIRE,
ALLAN ZYLLER d/b/a PATSY'S and PATSY'S
PIZZERIA TRATTORIA IMPAZZIRE, AL &
ANTHONY'S PATSY'S, INC., I.O.B. REALTY,
INC., and PATSY'S, INC.,

                 Defendants and
                 Counterclaim Plaintiffs.
------------------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

     More than five years ago, the Court of Appeals for the Second Circuit admonished the

major parties in this litigation "that henceforth they would be well advised to minimize the risk

of confusion by identifying their restaurants by the complete names: 'Patsy's Italian Restaurant'

and 'Patsy's Pizzeria.'" *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir.

2003). This lengthy Opinion and Order is written because the parties have largely ignored that

admonition.  During the intervening years, the parties have instead continued on an oftentimes

labyrinthine course of litigation.  As noted by the Court of Appeals, one source of this litigation's

"unavoidable confusion" has been the fact that, for over sixty years, the major parties and their

predecessors have shared the mark PATSY'S for nearly identical restaurant-related services, both

within the same New York City market.  *See Patsy's Brand, Inc.*, 317 F.3d at 217.  Additional

confusion occurred during proceedings before the Patent and Trademark Office (the "PTO") and

the Trademark Trial and Appeal Board (the "TTAB").  These proceedings have been alternately

described as "protracted and convoluted," *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d

194, 203 (E.D.N.Y. 2007), and "a procedural morass," "tortured" and "resulting in confusion and

mistake."  *I.O.B. Realty, Inc. v. Patsy's Brand*, *Inc.*, TTAB Cancellation Nos. 92028142 &

92029614, at 10, 15 (June 28, 2007) (unpublished decision submitted as Defs.' Ex. III, herein

"TTAB Decision").  Such was the muddled state of affairs that formed the starting point for this

case.

As this case made its way toward a jury trial, its "convoluted" and "tortured" procedural

history presented considerable practical challenges in resolving the thorny legal and factual issues

raised by the parties' simultaneous and long-standing use of the mark PATSY'S.  In coping with

these challenges, the Court was reminded that trademark law's fundamental purpose is to not

only "encourage investments in strong trademarks, but also '*to protect the ability of consumers* to

distinguish among competing producers.'"  *Malletier v. Burlington Coat Factory Warehouse

Corp.*, 426 F.3d 532, 539 (2d Cir. 2005) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,

469 U.S. 189, 198 (1985)) (emphasis added).  As described in greater detail below, the jury's

findings in this case make clear that consumers are having grave difficulties distinguishing

between the parties' marks. It is with this in mind, and for the foregoing reasons, that the Court makes the following rulings on the parties' post-verdict motions for injunctive relief: (1) the PTO is ordered to cancel Plaintiffs' registration number 3,009,836 for the stylized mark PATSY'S PR for restaurant services; (2) the PTO is ordered to cancel Plaintiffs' registration number 3,009,866 for the unstylized mark PATSY'S for restaurant services not including pizza; (3) the PTO is ordered not to restore I.O.B. Realty, Inc's registration number 2,213,574 for the mark PATSY'S PIZZERIA for restaurant services; (4) Plaintiffs are enjoined from using the mark PATSY'S alone in any advertising, signs, menus or anything similarly associated with their restaurant services; and (5) Defendants are enjoined from using the mark PATSY'S alone in any advertising, signs, menus or anything similarly associated with their pizzeria services. Additional injunctive relief is granted to Plaintiffs as described below. *See infra* Section III.D. The parties remaining motions are denied.

## BACKGROUND

I assume familiarity with the facts of this case, including the procedural history and facts described in previous decisions in this case and in the "Sauce Litigation."[1] I do acknowledge that a full understanding of this Opinion and Order requires extensive prior knowledge of this case. It is simply an impossible and unwieldy task to include a complete set of facts and procedural

---

[1] The "Sauce Litigation" was an action brought by Patsy's Brand, Inc. in the District Court for the Southern District of New York involving trademark infringement of pasta sauce labels. Moving from oldest to most recent, a time line of the pertinent decisions is as follows: *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175(JSM), 2001 WL 170672, 58 U.S.P.Q.2d 1048 (S.D.N.Y. Feb. 21, 2001) (granting summary judgment for Patsy's Brand, Inc.); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175(JSM), 2001 WL 1154669 (S.D.N.Y. Oct. 1, 2001) (entering judgment, including attorneys' fees and costs, for Patsy's Brand, Inc.); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209 (2d Cir. 2003) (affirming judgment upon modifications of injunctive relief).

history in a single document. The blame for this unfortunate situation lies with the convoluted and protracted manner in which the parties allowed this litigation to progress.

Instead, I will describe only so much of the background as is necessary to understand my rulings. Further, the reader is directed to the previous decisions in this case. Moving from oldest to most recent, a time line of the pertinent decisions in this action is as follows: *Patsy's Italian Rest., Inc. v. Banas*, 2006 WL 3478988 (E.D.N.Y. Nov. 30, 2006) (Docket Entry 32)[2] (Irizarry, J.) (affirming my order that this action be consolidated); *Patsy's Italian Rest., Inc. v. Banas*, 2007 WL 174131 (E.D.N.Y. Jan. 19, 2007) (Docket Entry 67) (Irizarry, J.) (granting in part plaintiffs' motion to quash subpoena of plaintiffs' counsel); *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194 (E.D.N.Y. 2007) (Docket Entry 110) (Irizarry, J.) (granting in part defendants' motion to correct the PTO register and denying defendants' remaining motions for summary judgment); *Patsy's Italian Rest., Inc. v. Banas*, 2007 WL 3232232 (E.D.N.Y. Oct. 31, 2007) (Docket Entry 117) (Irizarry, J.) (denying plaintiffs' motion for reconsideration of the Court's order to correct the PTO register); *Patsy's Italian Rest., Inc. v. Banas*, 531 F. Supp. 2d 483 (E.D.N.Y. 2008) (Docket Entry 124) (Reyes, J.) (granting defendants' motion in limine to exclude expert's proffered testimony); *Patsy's Italian Rest., Inc. v. Banas*, 2008 WL 495568 (E.D.N.Y. Feb. 20, 2008) (Docket Entry 130) (Reyes, J.) (denying plaintiffs' motion to amend action number 06-CV-5957 to add Patsy's Brand, Inc. as a plaintiff); *Patsy's Italian Rest., Inc. v. Banas*, 2008 WL 795341 (E.D.N.Y. Mar. 24, 2008) (Docket Entry 175) (Reyes, J.) (rulings on the parties' motions in limine); *Patsy's Italian Rest., Inc. v. Banas*, 2008 WL 850151 (E.D.N.Y.

---

[2] Except where otherwise noted, all references to docket entries in this opinion correspond with case number 06-CV-5857. For the most part, identical papers were filed in case number 06-CV-0729.

Mar. 26, 2008) (Docket Entry 177) (Reyes, J.) (reversing prior ruling and ordering that witness's videotaped deposition is admissible); *Patsy's Italian Rest., Inc. v. Banas*, 2008 WL 926401 (E.D.N.Y. Apr. 3, 2008) (Docket Entry 188) (Reyes, J.) (denying plaintiffs' motion to reconsider plaintiffs' motion to dismiss defendants' counterclaim).

## I.    The Parties

This case involves two long-standing and well-known eateries, each located in New York, New York, and each bearing the name "Patsy's."[3]  Plaintiff Patsy's Italian Restaurant, Inc. ("Patsy's Italian Restaurant") is a famous establishment located at 236 West 56th Street in New York, New York.  Patsy's Italian Restaurant was founded by Patsy Scognamillo, and after his death has been continuously owned and operated by Mr. Scognamillo's son, grandson and other family members.  (*See* 3/31/08 Tr. at 41:18-43:22; 4/1/08 Tr. at 186:21-189:10.)[4]  Patsy's Italian Restaurant is well-known for its "red-sauce" style Neopolitan, fine-dining cuisine.  (*See* 3/31/08 Tr. at 42:15-43:5, 46:20-25; 4/1/08 Tr. at 190:21-191:3; Pls.' Exs. 19, 26-29.)  As stipulated by the parties prior to trial, Patsy's Italian Restaurant has been in continuous operation since 1944.  (*See* Docket Entry 132 at 13 ¶ 3.)  Affiliated with Patsy's Italian Restaurant is plaintiff Patsy's

---

[3] "Patsy" was once a popular baby name in the United States.  According to the U.S. Social Security Administration's statistics, Patsy was consistently in the top 400th percentile for boy's baby names throughout the 1910s, 1920s and 1930s.  The name's popularity diminished in the 1940s, however, and fell out of the top 1,000th percentile of boy's names in 1950.  *See* Popular Baby Names, Social Security Administration, http://www.ssa.gov/OACT/babynames (statistics retrieved from "Popularity of a Name" by searching the name "Patsy" under "Male" names over the last 120 years).

[4] "3/31/08 Tr." and "4/1/08 Tr." refer to the transcripts of the jury trial held on March 31 and April 1, 2008, respectively.  Similar citations refer to the given transcripts to the civil cause for conferences and jury trial.

Brand, Inc. (collectively, "Plaintiffs"), which was formed in 1993 to market and sell pasta sauces and other packaged food products bearing the PATSY'S mark. (*See id.* ¶ 4.)

Just across town, Defendant I.O.B. Realty, Inc. ("I.O.B. Realty") owns and operates an establishment called Patsy's Pizzeria at 118th Street and First Avenue in East Harlem, New York (the "East Harlem Location"). Patsy's Pizzeria was founded by Patsy Lancieri and his wife Carmela Lancieri, who owned and operated the establishment after Mr. Lancieri's death. (*See* 4/1 Tr. at 207:4-208:22, 217:11-23.) Defendants claim that the East Harlem Location was established in 1933, although Plaintiffs hotly contested this fact at trial. Patsy's Pizzeria is no longer in the hands of the Lancieri family. Instead, in 1991 a principal of I.O.B. Realty purchased Patsy's Pizzeria, including any goodwill in the mark PATSY'S PIZZERIA from Carmela Lancieri. (*See* Defs.' Exs. G, H.) Starting in the 1990s, I.O.B. Realty began entering into licensing agreements that allowed others to open establishments bearing the mark PATSY'S PIZZERIA. Two such licensed locations spurred the foregoing case.

In July 2005, defendants Anthony Banas ("Banas") and Anthony & Patsy's, Inc. (collectively, the "Staten Island Defendants") opened a restaurant at 1949 Richmond Avenue, Staten Island, New York (the "Staten Island Location"). (*See* Docket Entry 132 ¶ 6.) The Staten Island Location bore a sign that read "PATSY'S" in scripted font along with the words "Since 1933" in smaller type, below which were the words "PIZZERIA • RESTAURANT • BAKERY • CAFÉ." (*See* Pls.' Ex. 4.) The Staten Island Location closed in September 2006. (Docket Entry 132 ¶ 7.) Thereafter, in November 2006, defendants Banas, Allan Zyller ("Zyller") and Al & Anthony's Patsy's Inc. (collectively, the "Syosset Defendants") opened another restaurant at 407 Jericho Turnpike, Syosset, Long Island, New York (the "Syosset Location"). (*Id.* ¶ 8-9.) The

Syosset Location bore signs that read "PATSY'S PIZZERIA," below which were the words "SINCE 1933" and "TRATTORIA IMPAZZIRE" and "COAL FIRED OVEN." (Pls' Ex. 3.) The Syosset Location is still in operation.

## II.    The Parties' Trademark Registrations

The parties' respective trademark[5] registrations for restaurant services are very much at the heart of this case. On November 1, 2005, the PTO issued to Patsy's Italian Restaurant registration number 3,009,836 for the stylized mark PATSY'S PR for restaurant services (the "'836 Registration"), and registration number 3,009,866 for the unstylized mark PATSY'S for restaurant services not including pizza (the "'866 Registration"). (*See* Pls.' Exs. 1 & 2.) Plaintiffs also own trademark registration number 2,845,063 for the mark PATSY'S for various food products including "pastries, namely, tiramisu." (the "'063 Registration"). (*See* Pls.' Ex. 105.) Not at issue in this case are Plaintiffs' trademark registrations for pasta sauces, which formed the basis of the Sauce Litigation.[6] (*See* Pls.' Exs. 103, 104.)

---

[5] This opinion uses the word "trademark" to broadly mean both trademarks and service marks. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 192 n.1 (1985) (noting that the Lanham Act "generally applies the same principles concerning registration and protection to both trade and service marks") (citing Lanham Act §§ 3, 45, 15 U.S.C. §§ 1053, 1127).

[6] Plaintiffs originally brought a claim that the Staten Island Location infringed upon their pasta sauce registrations as well as the '063 Registration. (*See* Action No. 06-cv-729, Docket Entry 21 ¶¶ 14, 32-35.) However, after hearing Plaintiffs' evidence and prior to charging the jury, I limited the pertinent cause of action to only the sale of packaged baked goods at the Staten Island Location in violation of the '063 Registration. (*See* 4/7/08 Tr. at 780:3-17, 809:11-812:19.)

Further, as the Court of Appeals held, the Sauce Litigation was limited to pasta sauce and packaged food products, with the question of restricting the way the parties identify their restaurant services left for another day. *See Patsy's Brand*, 317 F.3d at 221 ("Whether or not [injunctive relief for restaurant services] might be warranted in a suit concerned with restaurant services is beyond the scope of this litigation."). For all intents and purposes, that day is now.

As for Defendants' marks, on December 29, 1998, the PTO issued to I.O.B. Realty registration number 2,213,574 for the mark PATSY'S PIZZERIA for restaurant services (the "'574 Registration"). (*See* Defs.' Ex. A.) The '574 Registration was cancelled by the TTAB on May 27, 2003, but was subsequently ordered to be restored by the Honorable Dora L. Irizarry. *See Banas*, 508 F. Supp. 2d at 205, 207-13. The parties report that the TTAB has not yet restored the '574 Registration pending final resolution of the foregoing case. At one time, I.O.B. Realty also owned registration number 1,975,110 for the mark PATSY'S for restaurant services (the "'110 Registration"). (*See* Pls.' Ex. B.) However, this registration was cancelled due to I.O.B. Realty's failure to submit an affidavit of continued use pursuant to Section 8 of the Lanham Act, 15 U.S.C. § 1058. *See Banas*, 508 F. Supp. 2d at 204-05. I.O.B. Realty has not sought restoration of the '110 Registration. *See id.* at 206 n.8.

A detailed and complete procedural history of "[t]he parties' protracted and convoluted dealings" with the PTO and TTAB can be found in *Banas*, 508 F. Supp. 2d at 203-06. (*See also* Pls.' Ex. 151 (time line of TTAB proceedings).)

## III.    The Parties' Claims and Counterclaims

In 2006, Plaintiffs filed two separate actions against the Staten Island Defendants and the Syosset Defendants, respectively. In case number 06-CV-729, Plaintiffs brought suit against the Staten Island Defendants alleging trademark infringement, unfair competition and injury to business reputation in relation to the Staten Island Location. (*See* Case No. 06-CV-729, Docket Entry 1.) In case number 06-CV-5857, plaintiff Patsy's Italian Restaurant brought suit against

---

Nonetheless, nothing in this Opinion and Order should be read to contradict the final resolution of the Sauce Litigation.

the Syosset Defendants alleging trademark infringement, unfair competition and injury to business reputation in relation to the Syosset Location. (*See* Docket Entry 1.) The Court subsequently granted a motion by Patsy's, Inc.[7] and I.O.B. Realty (collectively, "I.O.B. Realty") to intervene as defendants.[8] (Docket Entry 16.) Thereafter, I.O.B. Realty, the Staten Island Defendants and the Syosset Defendants (collectively, "Defendants") brought a counterclaim seeking cancellation of Plaintiffs' trademark registrations. (*See* Docket Entry 29 at 10-12.) On November 9, 2006, the Court granted Plaintiffs' motion for a preliminary injunction removing the words "Trattoria Impazzire" from "all advertising, signs, menus, or anything associated" with the Syosset Location. (*See* Docket Entry 23; *see also* Defs.' Ex. MM.)

On November 30, 2006, Judge Irizarry consolidated the two separate actions against the Staten Island and Syosset Defendants. (Docket Entry 32.) On January 11, 2007, this case was bifurcated, with liability to be addressed first and then, if necessary, damages. (*See* Minute Entry dated 1/1/2007.) On August 28, 2007, Judge Irizarry denied Defendants' motions for summary judgment on Plaintiffs' claims and also, as noted, ordered that Defendants' '574 Registration be restored. *See Banas*, 508 F. Supp. 2d at 207-13, 216-21. On December 6, 2007, the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636. (Docket Entry 118.) Thereafter, a trial was set for March 10, 2008. (*See* Docket Entry dated 12/13/2007.)

---

[7] Patsy's Inc. is affiliated with I.O.B. Realty and is in the business of franchising and licensing I.O.B. Realty's trademarks. (*See* 4/1/08 Tr. at 251:23-252:1.)

[8] In their amended complaint, Plaintiffs named BSZ Realty Corp., which is the leaseholder of the Syosset Location, as an additional defendant. (*See* Docket Entry 45.) However, during a conference that took place during the trial but outside of the jury's presence, I granted Defendants' motion to dismiss all claims against BSZ Realty Corp. (*See* 4/7/08 Tr. at 763:11-765:15; Docket Entry 197.)

## IV.    Pre-Trial Proceedings

Prior to trial,[9] and after reviewing the parties' pre-trial papers, it became clear to the Court that it would be difficult for a jury to simultaneously decide Plaintiffs' infringement claim and Defendants' counterclaim to cancel Plaintiffs' '836 and '866 Registrations.  As the Court explained to the parties during a telephone conference held on March 5, 2008, the relief sought in Defendants' counterclaim -- namely, invalidating Plaintiffs' '836 and '866 Registrations -- was a threshold issue that must be decided before the jury could reach Plaintiffs' infringement claims under the Lanham Act.  (*See* 3/5/08 Tr. at 2:10-4:3, 7:2-18.)  Thus, the Court warned the parties that putting the entirety of the case to the jury simultaneously would be extremely confusing and would require a very long, detailed special verdict form to deal with all the permutations of validity of the '836 and '866 Registrations.  (*See id*. at 3:19-4:3.)  In particular, the Court was concerned that the jury would be asked, in light of the "*Polaroid* factors," *see Polaroid Corp. v. Polarad Elects. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), to determine first the validity of the '836 and '866 Registrations, and then, if the jury found that the registrations are valid, to conduct a similar *Polaroid* analysis to determine infringement.  In the Court's view, this invited confusion and mistake because each analysis was slightly, yet crucially, different.

_____

[9] Prior to trial, the Court also made rulings on an extensive number of motions in limine filed by both parties.  *See Banas*, 531 F. Supp. 2d 483 (Docket Entry 124) (granting defendants' motion in limine to exclude expert's proffered testimony); *Banas*, 2008 WL 495568 (Docket Entry 130) (denying plaintiffs' motion to amend action number 06-CV-5957 to add Patsy's Brand, Inc. as a plaintiff); *Banas*, 2008 WL 795341 (Docket Entry 175) (rulings on the parties' motions in limine); *Banas*, 2008 WL 850151 (Docket Entry 177) (reversing prior ruling and ordering that witness's videotaped deposition is admissible); *Banas*, 2008 WL 926401 (Docket Entry 188) (denying plaintiffs' motion to reconsider plaintiffs' motion to dismiss defendants' counterclaim).  The Court also made rulings on a plethora of evidentiary objections made on the record during a pretrial conference, (*see generally* 3/25/08 Tr.), as well as, of course, during the trial itself.

The Court thus proposed three potential approaches: First, to nonetheless present the entirety of the case to the jury through the use of a very detailed special verdict form; Second, to hold a bench trial on the threshold issue of validity of Plaintiffs' registrations, followed by a jury trial on the issue of infringement; or Third, to hold a bench trial on the entirety of the case. (*See* 3/5/08 Tr. at 4:4-25.) The Court initially ruled that it would employ option number two and hold a bench trial on the legal issue of whether Plaintiffs' '836 and '866 Registrations are valid. (*See* 3/6/08 Tr. at 4:3-16; Minute Entry dated 3/6/2008.) Defendants indicated that they favored this bifurcated approach as well. (*See* 3/6/2008 Tr. at 4:1-2.)

Plaintiffs, however, pressed for a trial on all issues and filed a motion to reconsider, arguing that the issue of validity shares common issues of fact with Plaintiffs' infringement claims. (Docket Entry 165.) In pertinent part, Plaintiffs argued that holding a bench trial on the issue of validity of the '836 and '866 Registrations would impermissibly deny Plaintiffs their right to have a jury decide the overlapping issues of fact relating to their infringement claim. (*See id*. at 2-3 (citing *Curtis v. Loether*, 415 U.S. 189, 192 (1974); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962); *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959); *Le-Blanc-Sternberg v. Fletcher*, 67 F.3d 412, 426 (2d Cir. 1995), *cert. denied*, 518 U.S. 1017 (1996); *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 873-74 (2d Cir. 1992); *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 954 (2d Cir. 1998).) The Court was ultimately persuaded by Plaintiffs' argument and scheduled a jury trial on all issues for March 31, 2008. (*See* 3/7/08 Tr. at 5:12-8:14, 10:19-11:14; Minute Entry dated 3/7/08.) Again, however, the Court warned the parties that this would require a very detailed special verdict form to take the jury through all permutations of how this complicated case could be decided. (3/7/08 Tr. at 11:4-7.) Thereafter,

the parties each submitted a set of proposed jury instructions and special verdict forms. (*See* Docket Entries 166-69, 171-73.) In the end, the special verdict form submitted to the jury spanned twenty-three pages and included forty-eight separate questions, many of which contained multiple subparts. (*See* Docket Entry 203.) The final jury instructions, which were similarly detailed, spanned fifty-four pages. (*See* Docket Entry 202.)

**V.      The Trial and the Jury's Findings**

A trial was held beginning on March 31, 2008. By the Court's count, Plaintiffs called sixteen witnesses, a number of whom appeared by video conference. Defendants called six witnesses, including one by videotaped deposition. The parties collectively submitted several hundred exhibits into evidence. (*See* Docket Entry 201 (stipulated joint exhibit list).) Throughout the trial, the jury remained extremely attentive and engaged, with several of the jurors taking copious notes. The parties rested on April 4, 2008.

A charge conference was held outside of the jury's presence on the following Monday, April 7, 2008. Defendants made two motions for judgment as a matter of law ("JMOL"): that there was no evidence that the Staten Island Defendants sold packaged food products in violation of Plaintiffs' '063 Registration (*see* 4/7/08 Tr. at 757:11-759:9); and that BSZ Realty Corp., which is the leaseholder of the Syosset Location, should be dismissed as a defendant (*id*. at 763:11-24). Plaintiffs, in turn, made two motions for JMOL: that Defendants had failed to present sufficient evidence on their equitable defense of laches (*id*. at 765:19-767:3); and that Defendants had failed to present adequate evidence on their counterclaim of fraud on the TTAB (*id*. 767:18-769:24).

In response to the parties' motions, the Court made the following rulings: (1) Defendants' motion for JMOL on Plaintiffs' packaged food products claim was denied with leave to renew after the jury reached a verdict (*id*. at 762:23-24); (2) Defendants' motion for JMOL to dismiss all claims against BSZ Realty Corp. was granted (*see id*. at 763:11-765:15; *see also* Docket Entry 197); (3) Defendants' equitable defenses of laches, unclean hands and bad faith are issues of law and would thus be decided post-verdict by the Court; and (4) there was sufficient evidence to put Defendants' fraud counterclaim to the jury. (*See* 4/7/08 Tr. at 767:4-15, 771:20-25).  Regarding Plaintiffs' motion for JMOL on Defendants' fraud counterclaim, the Court was  concerned that presenting this matter to the jury would be overly confusing.  In particular, each party had asserted that the other had obtained their trademark registrations through fraud.  To resolve these claims would require the jury to assess the "procedural morass" at the TTAB.  The Court thus proposed two practical alternatives: that both parties agree to voluntarily dismiss their fraud claims, or that the both parties allow the Court to decide these claims.  Plaintiffs preferred the former option, while Defendants preferred the latter.[10]  Thus, the Court put these claims to the jury, but instructed both parties that they were required to submit more definite statements of their fraud claims to be included in the instructions to the jury.  (*Id*. at 777:6-12.)

Finally, the Court *sua sponte* issued JMOL on two issues.  First, that privity between I.O.B. Realty and its predecessors, as well as between I.O.B. Realty and the Staten Island and Syosset Defendants, had been established as a matter of law.  (*Id*. at 772:13-774:2.)  Second, that the

---

[10] The parties ultimately informed the Court of their inability to reach a stipulation via a telephone call to chambers on the afternoon of April 7, 2008.

competitive proximity and bridging-the-gap factors under the *Polaroid* test had been established

as a matter of law on Defendants' counterclaim.  (*Id*. at 774:3-775:12.)

On April 8, 2008, the parties gave their closing statements and the Court instructed the

jury on the law.  With one juror having been dismissed due to illness (*see* 4/8/2008 Tr. at 835:23-

836:2), the seven jurors then took copies of the charge, special verdict form and a complete set of

exhibits into the jury room to deliberate.[11]  After two and a half days of deliberation, on April 10,

the jury rendered a verdict via the special verdict form.  The jury's findings of fact were as

follows.[12]

First, the jury considered Defendants' counterclaim and made the following findings of

fact relating to the scope of Defendants' rights in the marks.[13]  I.O.B. Realty and its predecessors

---

[11] During the jury's deliberations, Plaintiffs brought a matter to the Court's attention, namely two photographs they had retrieved from New York City's municipal archives showing the exterior of Patsy's Pizzeria in and around 1940.  (*See* 4/9/2008 Tr. at 1003:8-1004:2.) Plaintiffs claim that the photographs reveal that the exterior of Patsy's Pizzeria did not bear the mark PATSY'S.  Although Plaintiffs did not seek specific relief, the Court nonetheless denied Plaintiffs' application for several reasons.  (*See id*. at 1008:16-20, 1009:13-22.)  First, Plaintiffs' request was untimely because they had an opportunity to retrieve the photographs prior to the start of the jury's deliberations.  (*Id*. at 1007:9-15.)  Second, the evidence did not contradict testimony by I.O.B. Realty's representative concerning the type of business Patsy's Pizzeria was operating in 1940.  (*Id*. at 1007:19-24; *see also* 4/2/08 Tr. at 356:10-17, 377:7-17.)  Instead, the witness merely claimed that the photographs existed, not that they showed a sign bearing the name PATSY'S on the building's exterior.  Third, there was other evidence submitted from which the jury could conclude that the establishment used the marks PATSY'S and PATSY'S PIZZERIA prior to Plaintiffs' first use in 1944.  (4/9/2008 Tr. at 1008:2-7; *see also, e.g.*, 4/1/2008 at 207:4-215:8.)

[12] Unless otherwise noted, each finding of fact was based upon the relevant party having met is burden by a preponderance of the evidence.

[13] As noted above, the Court found that Defendants' counterclaim was a threshold issue before the issue of infringement could be reached.  The special verdict form therefore required the jury to make their findings on Defendants' counterclaim before addressing Plaintiffs' claims. *See Boyce v. Soundview Tech. Group, Inc.*, 464 F.3d 376, 390 (2d Cir. 2006) (holding that "a

14

are the prior users of the mark PATSY'S, alone or with other words. (Docket Entry 203 at 1, Question 1.) Pursuant to my instruction, as a matter of law, I.O.B. Realty is in privity with the prior users of the marks PATSY'S and PATSY'S PIZZERIA. (*Id*. at 2, Questions 2 & 3.) I.O.B. Realty and its predecessors continuously used both the marks PATSY'S and PATSY'S PIZZERIA in connection with the establishment Patsy's Pizzeria. (*Id*., Questions 4.A & 5.A.) However, I.O.B. Realty and its predecessors' continuous use of the service marks PATSY'S and PATSY'S PIZZERIA was not for restaurant services. (*Id*. at 2-3, Questions 4.B & 5.B.) Pursuant to my instruction, as a matter of law, the Staten Island Defendants and the Syosset Defendants entered into a valid license agreement with I.O.B. Realty that allowed them to use the marks PATSY'S and PATSY'S PIZZERIA in connection with operating a pizzeria. (*Id*. at 3, Question 6.)

The jury then made the following factual determinations regarding Defendants' counterclaim. Plaintiffs did not fraudulently obtain either the '836 or '866 Registrations. (*Id*., Questions 7.A & 7.B.) However, Plaintiffs' '836 and '866 Registrations are likely to cause confusion with I.O.B. Realty's prior rights in the marks PATSY'S and PATSY'S PIZZERIA. (*Id*. at 7, Questions 8.I.i & 8.I.ii.)[14] The earliest date that Plaintiffs' '836 Registration was likely

_____

trial court has discretion in the style and wording of jury instructions so long as the instructions, taken as a whole, do not mislead the jury as to the proper legal standard, or adequately inform the jury of the law") (quoting *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 106-07 (2d Cir. 2001)) (internal quotation marks omitted). In that regard, the Court instructed the jury that the order the issues was presented in the charge did not mean that Defendants' counterclaim was more important or had a lower burden of proof, only that the order provided a logical structure for the jury to consider its findings of fact. (*See* Docket Entry 202 at 17.)

[14] This determination was based upon the following findings of fact under the *Polaroid* factors: I.O.B. Realty's marks PATSY'S and PATSY'S PIZZERIA are strong (Docket Entry 203 at 4, Question 8.A); I.O.B. Realty's marks PATSY'S and PATSY'S PIZZERIA are

to cause confusion with I.O.B. Realty's rights in PATSY'S and PATSY'S PIZZERIA was

September 30, 1999. (*Id*. at 8, Question 8.J.)  The earliest date that Plaintiffs' '866 Registration

was likely to cause confusion with I.O.B. Realty's rights in PATSY'S and PATSY'S PIZZERIA

was April 13, 2001.  (*Id*. at 8, Question 8.K.)

Having made these factual findings regarding Defendants' counterclaim, the jury then

made the following findings regarding Plaintiffs' defenses to Defendants' counterclaim.  By clear

and convincing evidence, I.O.B. Realty fraudulently obtained the '574 Registration.  (*Id*. at 9,

Question 9.)  By clear and convincing evidence, I.O.B. Realty abandoned its rights in the marks

PATSY'S and PATSY'S PIZZERIA.  (*Id*., Question 10.)  The Staten Island Defendants and the

Syosset Defendants used the marks PATSY'S and PATSY'S PIZZERIA beyond the scope of

their license agreement with I.O.B. Realty.  (*Id*., Questions 11 & 12.)

Having found that there was a basis to reach the question of infringement, the jury then

made the following factual findings regarding Plaintiffs' infringement claims of the '836 and

'866 Registrations under the Lanham Act.  The marks used in relation to the Staten Island

Location were likely to cause confusion with Plaintiffs' '836 and '866 Registrations.  (*Id*. at 17 &

---

similar to Plaintiffs' '836 and '866 Registrations (*id*., Questions 8.B.i & 8.B.ii); pursuant to my
instruction, as a matter of law, I.O.B. Realty's marks PATSY'S and PATSY'S PIZZERIA are in
competitive proximity with Plaintiffs' '836 and '866 Registrations (*id*. at 5, Questions 8.C.i &
8.C.ii); again pursuant to my instruction, I.O.B. Realty and/or its licensees will enter a market
related or identical to the market for Plaintiffs' '836 and '866 Registrations (*id*., Questions 8.D.i
& 8.D.ii); consumers are actually confused between I.O.B. Realty and its licensees' use of the
marks PATSY'S and PATSY'S PIZZERIA and Plaintiffs' use of the '836 and '866 Registrations
(*id*. at 6, Questions 8.E.i & 8.E.ii); Plaintiffs did not adopt Registrations '836 or '866 in bad faith
(*id*, Questions 8.F.i & 8.F.ii); the services offered by Plaintiffs in association with the '836 or
'866 Registrations are not of an inferior quality to the services offered by I.O.B. Realty and its
predecessors (*id*., Question 8.G); and customers of the services offered by Plaintiffs and I.O.B.
Realty are unsophisticated (*id*. at 7, Questions 8.H.i & 8.H.ii).

18, Questions 26 & 30.) The Staten Island Defendants' violation of the Lanham Act was not

willful. (*Id*., Questions 27 & 31.) The marks used in relation to the Syosset Location were likely

to cause confusion with Plaintiffs' '836 and '866 Registrations. (*Id*., Questions 28 & 32.) The

Syosset Defendants' violation of the Lanham Act was willful. (*Id.*, Questions 29 & 33.)[15]

While the jury found that the Staten Island and Syosset Defendants had infringed upon

the '836 and '866 Registrations, it also found that the Staten Island Location did not sell any

packaged food products bearing the mark PATSY'S. (*Id*. at 19, Question 34.) Thus, the jury was

instructed not to reach the question of infringement of the '063 Registration for packaged foods.

The jury nonetheless found that the Staten Island Defendants were not likely to cause confusion

with the '063 Registration; in other words, the Staten Island Defendants did not infringe the '063

Registration. (*See id*, Question 35.)

The jury next considered infringement of Plaintiffs' rights under the common law and

made the following findings of fact. The marks used in relation to the Staten Island Location

---

[15] The jury's determinations of infringement were based upon the following findings of fact under the *Polaroid* factors: the '836 and '866 Registrations are strong (Docket Entry 203 at 10, Questions 13.A & 13.B); the marks used in relation to the Staten Island and Syosset Locations are similar to the '836 and '866 Registrations (*id*. at 11, Questions 14.A, 14.B, 15.A & 15.B); the marks used in relation to the Staten Island and Syosset Locations are in competitive proximity with the '836 and '866 Registrations (*id*. at 12, Questions 16.A, 16.B, 17.A. & 17.B); it is not likely that Plaintiffs will use the '836 and '866 Registrations to enter markets that are related to those of the Staten Island or Syosset Locations (*id*. at 13, Questions 18.A, 18.B, 19.A & 19.B); consumers are actually confused between the marks used in relation to the Staten Island and Syosset Locations and Plaintiffs' use of the '836 and '866 Registrations (*id*. at 14, Questions 20.A, 20.B, 21.A & 21.B); the Staten Island Defendants did not adopt their marks in bad faith (*id*. at 15, Question 22.A); the Syosset Defendants did adopt their marks in bad faith (*id*. at 15, Question 22.B); the services offered in relation to the Staten Island and Syosset Locations are of inferior quality to those offered by Plaintiffs (*id*. at 15 & 16, Questions 23.A, 23.B, 24.A & 24.B); and customers of Plaintiffs and the Staten Island and Syosset Locations are unsophisticated (*id*. at 16, Questions 25.A, 25.C & 25.D).

were likely to cause confusion with Plaintiffs' stylized mark PATSY'S PR and non-stylized mark

PATSY'S for restaurant services. (*Id.* at 20 & 21, Questions 37 & 41.) The Staten Island

Defendants' violation of the Plaintiffs' common law rights was not willful. (*Id.*, Questions 38 &

42.) The marks used in relation to the Syosset Location were likely to cause confusion with

Plaintiffs' stylized mark PATSY'S PR and non-stylized mark PATSY'S for restaurant services.

(*Id.*, Questions 39 & 43.) The Syosset Defendants' violation of the Plaintiffs' common law

rights was willful. (*Id.*, Questions 40 & 44.)[16]

The jury then made the following factual findings on Plaintiffs' unfair competition claim

and N.Y. GEN. BUS. LAW § 360-l (McKinney 1997) ("GBL § 360-l") claim. Plaintiffs' marks

PATSY'S or PATSY'S PR are inherently distinctive or have achieved a secondary meaning. (*Id.*

at 22, Question 45.) The Staten Island Defendants violated New York's unfair competition law.[17]

(*Id.*, Question 46.) The Syosset Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a), and New York's unfair competition law. (*Id.*, Question 47.) Finally, the Staten Island

and Syosset Defendants violated GBL § 360-l. (*Id.* at 23, Questions 48.A & 48.B.)

## VI.  **Post-Verdict Proceedings**

After receiving the jury's verdict, the Court instructed the parties that it would wait to

enter judgment pending resolution of the parties' post-verdict motions. (*See* 4/10/08 Tr. at

1048:3-5.) In the interim, and based on the jury's verdict, the Court enjoined Defendants by

---

[16] These determinations were based upon the same findings of fact under the *Polaroid* factors as described above for infringement under the Lanham Act.

[17] Plaintiffs did not assert Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as a basis of their unfair competition claim against the Staten Island Defendants. Rather, Plaintiffs only asserted federal unfair competition against the Syosset Defendants.

requiring them to place a sign in the Syosset Location's door stating, in red-and-white letters:

"WE ARE NOT AFFILIATED WITH PATSY'S ITALIAN RESTAURANT LOCATED AT 236 WEST 56TH STREET, NEW YORK, NY." (*See* Minute Entry dated 4/17/2008; *see also* Docket Entry dated 5/2/2008 (slightly modifying order).) Defendants report that they have complied with the Court's Order. (*See* Docket Entry 210.) The Court also addressed the bifurcated issue of damages, and instructed the parties to engage in limited discovery to determine whether Plaintiffs would elect to seek monetary damages. (*See* Minute Entry dated 4/17/2008.) Having engaged in such limited discovery, Plaintiffs choose not to seek monetary damages, but instead continue to seek equitable relief and attorneys' fees. (*See* Docket Entry 220.)[18]

## ANALYSIS

Plaintiffs seek: (1) to have Defendants' '574 Registration cancelled; (2) to permanently enjoin the Syosset Location from using the mark PATSY'S; and (3) an award of attorneys' fees. (*See* Docket Entry 207.) Defendants oppose Plaintiffs' motions. (*See* Docket Entry 212.) In

---

[18] At a post-trial conference, Defendants also sought for the Court to take judicial notice of a newspaper article describing the fact that Patsy's Italian Restaurant would be opening a new location in Atlantic City, New Jersey. It is generally proper to take judicial notice of articles and Web sites published on the Internet. *See Wang v. Pataki*, 396 F. Supp. 2d 446, 458 n.2 (S.D.N.Y. 2005) (citing *Hotel Employees & Rest. Employees Union, Local 100 v. N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir. 2002)); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002); *see also* FED. R. EVID. 201(b)(2), (f). The Court thus takes judicial notice of the Atlantic City location of Patsy's Italian Restaurant. *See* Chris Shott, *Sal Scognamillo Takes Patsy's Beyond Midtown*, N.Y. OBSERVER, Apr. 15, 2008, *available at* http://www.observer.com/print/67900/full; *see also* Atlantic City Hilton, http://www.hiltonac. com/dining/patsys.shtml; Candace Jackson, *Betting on a Comeback*, WALL ST. J., Aug. 2, 2008, at W3 ("Patsy's, an outpost of the New York City Italian restaurant, recently opened on the Boardwalk in the Hilton . . . ."), *available at* http://online.wsj.com/article/ SB121762470519105741.html.

turn, Defendants seek: (1) to preclude Plaintiffs' claims under the equitable defenses of laches, unclean hands and bad faith; (2) to have Plaintiffs' '836 and '866 Registrations cancelled; (3) to construe certain of the jury's findings as favorable to Defendants and/or to grant a new trial; and (4) to enjoin Plaintiffs from engaging in various activities. (*See* Docket Entry 208; Docket Entry 209.) Plaintiffs oppose Defendants' motions. (*See* Docket Entry 214.)

For the foregoing reasons, the parties motions are granted in part and denied in part.

## I. Defendants' Motion for a Final Order on the Issues Presented to the Jury, or in the Alternative, a New Trial Is Granted in Part and Denied in Part

Defendants move that the Court issue a final order, or in the alternative, grant a new trial pursuant to Rules 49(a)(3) and 59(a) of the Federal Rules of Civil Procedure. Defendants have asked the Court to harmonize certain factual findings by the jury in a manner that necessitates invalidating the '836 and '866 Registrations, and to narrowly interpret the Staten Island and Syosset Defendants' liability. (*See* Docket Entry 208 at 3.) For the following reasons, the Court grants in part Defendants motion to: (1) narrowly construe the jury's finding of abandonment; and (2) negate Plaintiffs' federal trademark infringement claim. Defendants' remaining motions are denied.

### A. Standard for Harmonizing the Jury's Findings of Fact and Granting a New Trial

The rule for determining "Issues Not Submitted to the Jury" via a special verdict is set forth in Rule 49(a)(3) of the Federal Rules of Civil Procedure. Rule 49(a)(3) provides that:

A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is

considered to have made a finding consistent with its judgment on the special
verdict.

FED. R. CIV. P. 49(a)(3).  Pursuant to its power to make findings of fact on matters not submitted

to the jury, the Court "has a duty to reconcile the jury's answers on a special verdict form with

any reasonable theory consistent with the evidence, and to attempt to harmonize the answers if

possible under a fair reading of those answers."  *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306,

1311 (2d Cir. 1993) (citing *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119 (1963); *Pierce

v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1370 (9th Cir. 1987)).  "In evaluating a claim that a jury's

answers to special interrogatories are inconsistent, a reviewing court must 'adopt a view of the

case, if there is one, that resolves any seeming inconsistency.'"  *Brooks v. Brattleboro Mem'l

Hosp.*, 958 F.2d 525, 529 (2d Cir. 1992) (quoting *Auwood v. Harry Brandt Booking Office, Inc.*,

850 F.2d 884, 890 (2d Cir. 1988)).  If "the jury's answers cannot be harmonized rationally, the

judgment must be vacated and a new trial ordered."  *Crockett v. Long Island R.R.*, 65 F.3d 274,

278 (2d Cir. 1995) (quoting *Brooks*, 958 F.2d at 530-31).

    The rule for granting a new trial on all or some issues after a jury trial is set forth in Rule

59(a)(1)(A) of the Federal Rules of Civil Procedure.  The power to grant a new trial under Rule

59(a)(1)(A) is strongly circumscribed, and the Court should only grant "such a motion when the

jury's verdict is 'egregious.'"  *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d

Cir. 1998) (quoting *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992)).  Thus,

"[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that

the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."

*Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998) (quoting *Lightfoot v. Union Carbide

*Corp.*, 110 F.3d 898, 911 (2d Cir. 1997)).  "In deciding a motion for a new trial, the court may weigh the evidence and is not bound to view it in the light most favorable to the non-moving party." *Meiselman v. Byrom*, 207 F. Supp. 2d 40, 42 (E.D.N.Y. 2002) (citing *DLC Mgmt.*, 163 F.3d at 133; *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998)).  However, "[a] jury's credibility assessments are entitled to deference . . . and . . . 'where the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial.'" *Landau*, 155 F.3d at 104-05 (citing *Tennant v. Peoria & Pakin Union Ry. Co.*, 321 U.S. 29, 35 (1944); quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)).  Most importantly, "if the moving party's argument is simply a disagreement with the court's decisions or conclusions, that party is not entitled to relief under Rule 59." *Meiselman*, 207 F. Supp. 2d at 42 (citing *Ullman v. Starbucks Corp.*, 152 F. Supp. 2d 322, 326 (S.D.N.Y. 2001)).

As Plaintiffs argue, Defendants failed to make a pre-verdict motion for JMOL on the issues that they now raise.  (*See* Docket Entry 214 at 3-6; *see also* 4/7/08 Tr. at 757:11-759:9, 763:11-24.)  As such, Defendants are foreclosed from now making a post-verdict motion for JMOL.  *See McCardle v. Haddad*, 131 F.3d 43, 50-51 (2d Cir. 1997) ("There is no provision for a JMOL motion to be made for the first time after trial.") (citing *Holmes v. United States*, 85 F.3d 956, 962 (2d Cir. 1996)).  Unlike a motion brought under either Rule 49(a)(3) or 59(a)(1)(A), a motion for JMOL permits the court to grant judgment "if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party." *Piesco v.*

*Koch*, 12 F.3d 332, 343 (2d Cir. 1993) (citing *Fugazy*, 983 F.2d at 361).  To the extent that

Defendants now request that the Court makes such an evaluation, this relief is denied.

> **B.     Defendants' Motion to Narrowly Interpret the Jury's Findings
> as to the Scope of Defendants' Rights, or in the Alternative Grant
> a New Trial, Is Denied**

Defendants argue that the jury's findings regarding the scope of their rights should be

read narrowly or, in the alternative, a new trial should be granted.  The jury found that: (1) I.O.B.

Realty and its predecessors' continuous use of the service marks PATSY'S and PATSY'S

PIZZERIA was not for restaurant services (Docket Entry 203 at 2-3, Questions 4.B & 5.B); and

(2) the Staten Island and Syosset Defendants used the marks PATSY'S and PATSY'S PIZZERIA

beyond the scope of their license agreement with I.O.B. Realty (*Id*. at 9, Questions 11 & 12).

The purpose of these special verdict questions was to permit the jury to define the scope of

Defendants' use of the marks PATSY'S and PATSY'S PIZZERIA so that it could then

determine whether Defendants infringed upon Plaintiffs' rights by exceeding their proper scope

of use.  For the reasons given below, the Court is persuaded that the jury's verdicts on these

issues were neither egregious nor a miscarriage of justice, and therefore Defendants' motions are

accordingly denied.

> **1.      I.O.B. Realty Has Not Continuously Used the Marks PATSY'S
> and PATSY'S PIZZERIA for Restaurant Services**

Because the jury was not instructed how to define "restaurant services" as opposed to

"operating a pizzeria," Defendants argue that "operating a pizzeria" should be defined narrowly

as only "any place that serves pizza."  (Docket Entry 208 at 5-7.)  Defendants further argue that

the jury's finding that the Staten Island and Syosset Defendants exceeded the scope of I.O.B.

Realty's rights should be limited to the fact that the Staten Island Defendants opened a bakery. (*Id*.) While these are creative arguments, they are wholly inconsistent with the jury's findings and are therefore rejected.

Defendants have not shown an adequate basis for the Court to harmonize the jury's factual findings or to order a new trial. Defendants first argue that such relief is warranted because the Court did not define restaurant services as opposed to pizzeria services. However, the fact that the Court did not define how these services differ is immaterial because trademark rights derive from use, not from any legal classification at the PTO or otherwise. *See In re Trade-Mark Cases*, 100 U.S. 82, 94 (1879) ("At common law the exclusive right to [trademark protection] grows out of its use, and not its mere adoption. . . . It is simply founded on priority of appropriation."); *Punchgini*, 482 F.3d at 146 ("[O]ne of the fundamental premises underlying the registration provisions in the Lanham Act is that trademark rights flow from priority and that priority is acquired through use.") (citing 15 U.S.C. § 1057(c)). At most, therefore, the classification of restaurant services as opposed to pizzeria services is an issue of mixed fact and law. Nonetheless, the jury was perfectly capable of making such a determination, and Defendants did not object to presenting this issue to the jury. Further, Defendants have not shown that the Court erred by instructing the jury that trademark rights derive from continuous use. (*See* Docket Entry 202 at 20-21 (instructing jurors that "a party only maintains rights in a mark through 'continuous use.' Continuous use is defined as deliberate and continuous, not sporadic, casual or transitory. The law also considers whether a party intends to continue exploiting a mark commercially.").) Given these instructions, the jury was perfectly capable of

defining, as an issue of fact, the scope of Defendants' rights in the marks PATSY'S and

PATSY'S PIZZERIA, and whether those rights included restaurant and/or pizzeria services.

It is also worth noting that Defendants bore the burden of proving that I.O.B. Realty and

its predecessors continuously engaged in restaurant services *as well as* pizzeria services.  The

jury found that Defendants had only met their burden as to the latter.  As instructed, the jury

made this determination on the basis of Defendants' proof of continuous use.  Reading the jury's

verdict as a whole, it is clear that the jury concluded that I.O.B. Realty's continuous use of

PATSY'S and PATSY'S PIZZERIA did not include restaurant services.  Defendants introduced

evidence that the East Harlem Location served traditional restaurant fare between the 1930s and

1950s.  (*See, e.g.*, 4/1/08 Tr. at 209:17-210:19; 4/3/08 Tr. at 641:19-642:16.)  Defendants also

introduced evidence that I.O.B. Realty has served such fare beginning in the 1990s.  (*See* Defs.'

Exs. W & X, DD, PPP.)  However, the jury could have reasonably concluded that Defendants

failed to meet their burden of showing *continuous use* of their marks from the 1940s to the

1990s.  For instance, the jury could have relied upon I.O.B. Realty's contract with Carmela

Lancieri, which provides that I.O.B. Realty "will continue to operate the *pizzeria* in the normal,

usual and customary manner . . . ."  (Defs. Ex. F.)  Therefore, the jury's finding that I.O.B.

Realty's rights are limited to pizzeria services does not require harmonization with the jury's

other findings, and the result is neither egregious nor a miscarriage of justice.

At the same time, the jury's verdict begs the following question: if I.O.B. Realty is the

senior user of the marks PATSY'S and PATSY'S PIZZERIA for pizzeria services, do Plaintiffs

then have the right to use the mark PATSY'S or PATSY'S ITALIAN RESTAURANT for

restaurant services?  In answering this question, the Court relies upon the Court of Appeals for

the Second Circuit's decision in the Sauce Litigation:

> Where, as here, the senior user has tolerated for decades the junior user's competition in the same market with a name similar to that of the senior user, the justification for preserving for the senior user use of a dominant component of its name in a related field vanishes entirely.  In such circumstances, protection for use of the common feature of the two names in the related field belongs to the first entrant into that field.  When a senior user delays in enforcing its rights, *a junior user may acquire a valid trademark in a related field, enforceable against even the senior user*. . . .

*Patsy's Brand*, 317 F.3d at 217 (citation omitted, italics added).  Based on the parties'

stipulations and the unrefuted evidence at trial, Plaintiffs have continuously provided restaurant

services since 1944.  Due to their continuous and long-standing use, I find that Plaintiffs have

established the right to use the marks PATSY'S and PATSY'S ITALIAN RESTAURANT for

restaurant services.  *See id*. at 216 ("For several decades, the Defendants have accepted the

existence of Patsy's Italian Restaurant operating in New York City with a name similar to that of

Patsy's Pizzeria.  Having done so, they cannot now prevent those associated with Patsy's Italian

Restaurant from . . . build[ing] on the goodwill associated with the name of that restaurant . . .

.").

However, I.O.B. Realty's right to use the marks PATSY'S and PATSY'S PIZZERIA for

pizzeria services, and Plaintiffs' right to use the marks PATSY'S and PATSY'S ITALIAN

RESTAURANT, are non-exclusive and concomitant as between themselves.  This is the

quintessential problem with this case, which is addressed in greater detail below.  *See infra*

Section III.

### 2. Staten Island and Syosset Defendants Exceeded the Scope of I.O.B. Realty's Rights in PATSY'S and PATSY'S PIZZERIA

The jury's finding that the Staten Island and Syosset Defendants used the marks PATSY'S and PATSY'S PIZZERIA beyond the scope of their license agreement with I.O.B. Realty is also consistent with the jury's other findings. Taking the jury's verdict as a whole, it is reasonable that the jury concluded that the Staten Island and Syosset Defendants exceeded the scope of their license agreement by providing restaurant services. Defendants acknowledge that the Long Island Location had a bakery and that the Staten Island Location bore the sign "Trattoria Impazzire." However, there was ample other evidence presented at trial that Plaintiffs met their burden in proving that the Staten Island and Syosset Locations provided restaurant and other services *as well as* "serving pizza." (*See, e.g.*, 4/2/08 Tr. at 439:10-25, 457:22-458:1, Pls.' Exs. 3-9, 131, 136.) Further, these findings are consistent with the jury's finding that the Syosset Location intentionally infringed upon Plaintiffs' rights. In other words, it is reasonable that the jury found that the Syosset Defendants sought to sow consumer confusion with Plaintiffs' marks by providing restaurant services. Therefore, the jury's finding that the Staten Island and Syosset Defendants exceeded the scope of I.O.B. Realty's rights does not require harmonization with the jury's other findings, and the result is neither egregious nor a miscarriage of justice.[19]

---

[19] In arguing against Defendants' motions regarding the scope of I.O.B. Realty's rights, Plaintiffs contend that I.O.B. Realty's rights to the marks PATSY'S and PATSY'S PIZZERIA did not extend beyond Manhattan into areas such as Staten Island and Syosset, Long Island. (*See* Docket Entry 214 at 20.) This argument is rendered moot because Defendants' motions are denied on separate grounds as described above. However, Plaintiffs repeat the same argument when arguing whether to cancel the parties' registrations. (*See* Docket Entry 207 at 6-10.) Accordingly, I will address this argument below when dealing with equitable relief. *See infra* Section III.B.4.

### C.     <u>Defendants' Motion to Grant a New Trial on the Issue of Fraud Is Denied</u>

Defendants next argue that the jury's findings on the issue of fraud warrant a new trial. If proved by clear and convincing evidence, fraud committed at the PTO or TTAB provides sufficient grounds to cancel a party's trademark registration. *See* Lanham Act § 33, 15 U.S.C. § 1115(b)(1); *Orient Exp. Trading Co., Ltd. v. Federated Dept. Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988). The jury found that Defendants had not presented clear and convincing evidence that Plaintiffs fraudulently obtained Registrations '836 or '866. (Docket Entry 203 at 3, Questions 7.A & 7.B.) However, the jury found that Plaintiffs had proven by clear and convincing evidence that I.O.B. Realty fraudulently obtained its '574 Registration. (*Id*. at 9, Question 9.) Defendants argue that these findings are "against the weight of the evidence" and that a new trial is warranted. (*See* Docket Entry 208 at 7-8.) I agree with Plaintiffs that, not only have Defendants asserted the wrong standard to evaluate the jury's findings, but Defendants have not shown that a new trial is warranted.

Defendants appear to rely upon the fact that Plaintiffs moved for JMOL on Defendants' fraud counterclaim, and therefore argue that "[t]his matter was previously considered by the Court." (*Id*. at 8.) However, it was Plaintiffs, not Defendants, who made a motion for JMOL on the issue of fraud prior to charging the jury. (*See* 4/7/08 Tr. at 767:18-769:24; 775:21-777:12.) Even if the Court had considered current arguments in the broadest sense, Defendants failed to make a specific motion for JMOL on this issue. Defendants are thus foreclosed from making a renewed post-verdict motion for JMOL. *See* Fed R. Civ. P. 50(b); *see also Pittman by Pittman v. Grayson*, 149 F.3d 111, 119 (2d Cir. 1998) (holding that a "general objection that fails to preserve specific grounds on which to move for judgment as a matter of law under Rule 50(b)").

As Plaintiffs argue, the proper grounds for the Court to address Defendants' post-verdict motion on the issue of fraud is under Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure. While Defendants may disagree with the jury's findings on the issue of fraudulent registration, the Court is not persuaded that the result is either egregious or a miscarriage of justice.

### 1. Defendants' Fraud Counterclaim Against Plaintiffs

Defendants argue that the jury's finding that Plaintiffs did not fraudulently obtain their '836 and '866 Registrations is "a serious error." (Docket Entry 208 at 7.) The Court disagrees. Defendants' argument substantially relies upon the TTAB's own assessment of the procedural morass at the PTO. As described in greater detail below, *see infra* Section II.C, the TTAB placed the majority of the blame for the confusion upon Plaintiffs' failure to notify the PTO that Defendants had appealed the district court's decision in the Sauce Litigation. (*See* TTAB Decision at 20-21; *see also* 4/3/08 Tr. at 699:10-701:4.) Plaintiffs respond that the jury could have reasonably concluded that this evidence does not show clear and convincing evidence of Plaintiffs' fraud at the PTO and TTAB. (*See* Docket Entry 214 at 8-9.) In particular, it is reasonable that the jury concluded that whatever mistakes were made at the PTO in issuing the '836 and '866 Registrations and in cancelling Defendants' '110 and '574 Registrations, these actions were not the result of Plaintiffs' *intentional* misrepresentations. This finding is supported by the ambiguity of the TTAB's own assessment, which merely found that Plaintiffs' actions were "factually incorrect -- or at best misleading" rather than an intentional misrepresentation. (TTAB Decision at 20.) Further, the TTAB found that the "morass" was also caused by "clerical error" and Defendants' failure to keep in contact with the PTO and submit certain affidavits required to maintain their registrations. (*See* TTAB Decision at 15, 27; 4/3/08 at 701:8-702:24.)

Based on the evidence presented at trial, the jury could have concluded that Defendants did not meet their burden in showing Plaintiffs' fraud clearly and convincingly. This finding was based in large part upon the jury's assessment of witnesses' testimony (*see, e.g.*, 4/1/08 Tr. at 173:9-175:4; 4/3/08 at 614:6-617:19), to which the Court should not set aside lightly. *See Landau*, 155 F.3d at 104-05. Further, as described below, *see infra* Section III.B, I find that I.O.B. Realty's prior use of the marks PATSY'S and PATSY'S PIZZERIA for pizzeria services provides alternative grounds for cancelling Plaintiffs' '836 and '866 Registrations. It is therefore neither egregious nor a miscarriage of justice that the jury concluded that Defendants did not meet their burden of proving that Plaintiffs fraudulently obtained their registrations.

## 2. Plaintiffs' Fraud Defense Against Defendants' Counterclaim

As for the jury's finding that I.O.B. Realty *did* commit fraud in obtaining the '574 Registration, Defendants again argue that this finding is a "miscarriage of justice." (Docket Entry 208 at 10.) The Court disagrees. As Plaintiffs argue, it is reasonable that the jury concluded that I.O.B. Realty made a material misrepresentation by failing to notify the PTO about Plaintiffs' use of the mark PATSY'S for restaurant services and their registrations for pasta sauce and other food products. (*See* Docket Entry 214 at 9-10.) Defendants seem to respond that I.O.B. Realty did not actually have a duty to notify the PTO of Plaintiffs' use of the mark PATSY'S. Specifically, Defendants argue that I.O.B. Realty reasonably believed Plaintiffs did not have the right to use their marks, and thus their statements to the PTO and TTAB were not a material misrepresentation. (*See* Docket Entry 217 (citing 6 McCarthy § 31:21; *King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F. Supp. 1138, 1166 (S.D. Tex. 1982)); *see also* Docket Entry 212 at 13-14.) The jury obviously believed otherwise. The jury's verdict shows that it

found that this information was material, and that I.O.B. Realty's principals intentionally failed to disclose that Plaintiffs had concomitant rights in the mark PATSY'S for restaurant services. This finding is supported by the evidence and testimony presented at trial. (*See* 4/1/08 Tr. at 302:14-17, 318:12-17.) It is not for the Court to secondguess the jury's evaluations of credibility on a motion for a new trial. In addition, the jury's finding of abandonment through naked licensing, as described below, provides an alternative basis to cancel the '574 Registration. Thus, even if the jury failed to properly weigh the evidence under a clear and convincing standard, the result is neither egregious nor a miscarriage of justice. As such, a new trial on the issue of fraud is not warranted and Defendants' motion is denied.

> **D.    Defendants' Motion to Narrowly Interpret the Jury's Findings as to the Defendants' Abandonment of Trademark Rights, or in the Alternative Grant a New Trial, Is Granted in Part**

Defendants next argue that the jury's finding that I.O.B. Realty abandoned its marks should be limited only to the bakery services offered by the Staten Island Location and the use of the words "Trattoria Impazzire" at the Syosset Location. (Docket Entry 208 at 14.) In the alternative, Defendants seek a new trial. (*Id*.) Plaintiffs respond *inter alia* that the jury's finding of abandonment is supported by the evidence of I.O.B. Realty's failure to exercise sufficient quality control over their licensees. (Docket Entry 214 at 17-18.) Plaintiffs also respond that the jury's findings mean that I.O.B. Realty abandoned *all* of their rights in the marks PATSY'S and PATSY'S PIZZERIA. (Docket Entry 207 at 3-6.) The Court agrees with Plaintiffs that the jury's finding of abandonment is consistent with the evidence presented that I.O.B. Realty engaged in naked licensing. At the same time, however, the Court does not agree with Plaintiffs

that I.O.B. Realty's naked licensing operates as a total abandonment of all of their rights in the marks PATSY'S and PATSY'S PIZZERIA.

As the Court of Appeals for the Second Circuit recently noted, "[t]he abandonment doctrine derives from the well-established principle that trademark rights are acquired and maintained through use of a particular mark." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir. 2007). Abandonment may thus occur through an extended period of intentional non-use. *See* 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition ("McCarthy") § 17:9 (4th ed. 2008). Once a mark has been intentionally abandoned, it "reverts back to the public domain whereupon it may be appropriated by anyone who adopts the mark for his or her own use." *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1355 (E.D.N.Y. 1994) (citing *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 627 F.2d 628, 630 (2d Cir. 1980)).

Abandonment may also occur due to "naked licensing," which in effect operates as constructive abandonment because the mark may lose its significance to consumers as the source of particular goods or services. *See Gen. Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986) (citing *Carl Zeiss Siftung v. V.E.B. Carl Zeiss, Jena*, 293 F. Supp. 892, 917-18 (S.D.N.Y. 1968), *modified on other grounds*, 433 F.2d 686 (2d Cir. 1970), *cert. denied*, 403 U.S. 905 (1971); *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959)); *see also* Restatement (Third) of Unfair Competition § 33, cmt. b (1995) (noting that "courts have traditionally treated an erosion of the designation's capacity for accurate identification resulting from uncontrolled licensing as a loss of trademark significance, thus subjecting the owner of the mark to a claim of abandonment"). When a party asserts

abandonment through naked licensing, "[t]he critical question in determining whether a licensing program is controlled sufficiently by the licensor to protect his mark is whether the licensees' operations are policed adequately to guarantee the quality of the products sold under the mark." *Gibson Chem. & Oil*, 786 F.2d at 110.

As such, intentional abandonment and abandonment through naked licensing have the potential to affect trademark rights differently. This distinction is made clear by the Lanham Act, which defines abandonment as follows:

A mark shall be deemed to be "abandoned" if either of the following occurs:

(1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. . . .

Lanham Act § 45, 15 U.S.C. § 1127 ("abandoned"). In other words, abandonment may occur through: (1) intentional non-use; (2) actions or omissions that cause the mark to become generic; or (3) actions or omissions that cause the mark to lose its significance. *See Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 110 (2d Cir. 2000). The first two types of abandonment would likely cause a loss of all trademark rights. *See Punchgini, Inc.*, 482 F.3d at 146-49 (analyzing abandonment through intentional non-use of a mark); *Hermes Int'l*, 219 F.3d at 110 (analyzing abandonment through failure to failure to police mark such that it becomes generic). The third type of abandonment is potentially limited to the particular loss of the mark's

significance. For instance, in *Dawn Donut Co.*, the Court of the Appeals for the Second Circuit held that "unless the district court finds some evidence of misuse of the mark . . . at the wholesale level, the cancellation of [the] registration *should be limited* to the" situations in which the trademark holder failed to exercise sufficient control. 267 F.2d at 369. Further, one treatise explains as follows:

> Uncontrolled or "naked" licensing may result in the trademark ceasing to function as a symbol of quality and controlled source. This effect has often been characterized as an "abandonment" of the trademark. Of course, such "abandonment" must be distinguished from abandonment from nonuse of a mark, which occurs only if some intent to abandon can be inferred. Abandonment because of uncontrolled licensing is purely an "involuntary" forfeiture of trademark rights, for the mark owner probably has no subjective intent to abandon the mark. Uncontrolled licensing may well cause a designation to lose its meaning as a trademark. This results in a loss of trademark rights, whether called "abandonment" or not.

> On the other hand, uncontrolled licensing in some cases may be of such a limited nature that it has little impact of weakening the mark and thus *does not result in a loss of all rights*.

3 McCarthy § 18:48 (emphasis added, footnotes omitted). Such a distinction is critical in understanding the jury's finding of I.O.B. Realty's abandonment and its proper remedy.

The jury found, by clear and convincing evidence, that I.O.B. Realty abandoned its rights to the marks PATSY'S and PATSY'S PIZZERIA. (*See* Docket Entry 203 at 9, Question 10.) As Defendants argue, the key to this finding is to harmonize it with the jury's other finding that I.O.B. Realty and its predecessors continuously used the marks PATSY'S and PATSY'S PIZZERIA for pizzeria services in connection with Patsy's Pizzeria. (*Id*. at 2, Questions 4.A & 5.A.) As noted, either non-continuous use or naked licensing provides grounds for a finding that I.O.B. Realty abandoned its rights. However, the jury was only provided instructions as to naked

licensing.  (*See* Docket Entry 202 at 30-31.)  It is therefore clear that the jury did not find, as Plaintiffs continue to suggest throughout their papers, that the East Harlem Location intentionally ceased operation for any significant period of time.  In other words, there has simply been no finding that I.O.B. Realty and their predecessors intentionally abandoned their rights to the marks PATSY'S and PATSY'S PIZZERIA such that the marks entered into the public domain.  Instead, any abandonment through naked licensing was limited, and thus "does not result in a loss of all rights."  *See* 3 McCarthy § 18:48.

It is for the Court to determine the scope of I.O.B. Realty's loss of rights in the marks PATSY'S and PATSY'S PIZZERIA.  First, this issue was not presented to the jury and neither party demanded submission of the issue to the jury via a special verdict question.  *See* Fed. R. Civ. P. 49(a)(3).  Second, and as described in greater detail below, *see infra* Section III.A, the Lanham Act provides the Court with concurrent jurisdiction to correct or cancel trademark registrations.  *See* Lanham Act § 37, 15 U.S.C. § 1119.  This is quintessentially equitable relief for the Court to grant.  *See Park 'N Fly*, 469 U.S. at 203 (holding that a court has equitable power under Lanham Act § 37, although this power is circumscribed by the Lanham Act's incontestability provisions); *Dawn Donut Co.*, 267 F.2d at 369 ( holding that "a limited cancellation is within the power of the court" pursuant to Lanham Act § 37).

The Court thus finds that I.O.B. Realty's naked licensing was confined to their failure to engage in sufficient quality control of their licensees with the Staten Island and Syosset Locations.  This lack of quality control includes only the Staten Island and Syosset Locations, and not I.O.B. Realty's other licenses.  The Court is persuaded that this limited finding is appropriate for a number of reasons.  First, the evidence and testimony that the Staten Island and

Syosset Locations were insufficiently supervised by I.O.B. Realty (*see, e.g.*, 4/2/08 Tr. at 440:1-441:25; 4/3/08 Tr. at 552:2-7, 554:9-25 Pls.' Exs. 3-9), was far more persuasive than the evidence that the same was true of I.O.B. Realty's other licensed locations. (*See* 4/1/08 Tr. at 261:16-262:1, 266:2-267:23, 269:23-270:5; 4/2/08 Tr. at 418:19-420:9, 470:13-473:19, 494:3-25; Defs.' Exs. I-N.) Second, the Court is persuaded that this issue is beyond the scope of this litigation because the licensee of I.O.B. Realty's other locations was not a named party in this action. (*See* 4/2/08 Tr. at 406:17-408:24.) To that extent, permitting Plaintiffs' naked licensing claim to extend to I.O.B. Realty's other licensees, which have been in existence since 1996, would effectively permit Plaintiffs a backdoor around Defendants' laches argument.

In addition, the Court finds that I.O.B. Realty's naked licensing was limited in scope to only the Staten Island and Syosset Locations, and notes that the Staten Island Location was only in business for fourteen months. Further, partly due to events during the course of this case, the Court is persuaded that I.O.B. Realty has taken substantive steps to remedy its past naked licensing. (*See* 4/3/08 Tr. at 658:17-659:17; *see also* 4/1/08 Tr. at 262:2-265:3, 278:21-279:1, 208:11-19; 4/2/08 Tr. at 447:4-449:4, 449:11-450:14, 495:1-495:22; 4/3/08 Tr. at 644:15-647:4, 681:21-682:13; Defs.' Exs. P-V.) As such, I.O.B. Realty has not engaged in conduct that necessitates a finding of total abandonment of *all* rights in the marks PATSY'S and PATSY'S PIZZERIA. Most crucially, Plaintiffs have failed to submit any evidence that the marks PATSY'S and PATSY'S PIZZERIA as used by the original East Harlem location have lost their significance as an indicator of the source of Defendants' pizzeria services. *See* Lanham Act § 45, 15 U.S.C. § 1127. The Court therefore grants, in part, Defendants' motion to limit the jury's finding of abandonment to only the incidents of naked licensing as described above.

The Court is also persuaded that, to hold otherwise, would turn the marks PATSY'S and

PATSY'S PIZZERIA as used for pizzeria services into the public domain, when these marks

have been continuously associated with the East Harlem Location for over seventy-five years.

This would cause undue hardship to not only Defendants, but also to consumers. Such a result

would therefore be egregious and is not supported by the facts presented at trial.

### E. Defendants' Motions to Invalidate the Jury's Findings of Infringement, or in the Alternative Grant a New Trial, Are Granted in Part and Denied in Part

The jury found that Plaintiffs prevailed on all of their claims, namely: (1) trademark

infringement under the Lanham Act; (2) trademark infringement under New York common law;

(3) unfair competition under the Lanham Act and New York common law; and (4) injury to

business reputation under GBL § 360-l. Defendants argue that these findings should be

invalidated or, in the alternative, the Court should grant a new trial. Each claim is addressed in

turn.

### 1. Trademark Infringement Under the Lanham Act

To the extent that Defendants argue that the jury's findings necessitate invalidating

Plaintiffs' '836 and '866 Registrations and consequently negating Plaintiffs' infringement claim

under Section 32(a)(1) of the Lanham Act, 15 U.S.C. § 1114(1)(a) (requiring a "registered mark"

to recover for infringement,[20] I agree. However, the Court does not agree with Defendants'

---

[20] The Lanham Act also provides for protection of unregistered marks. *See* Lanham Act § 43(a), 15 U.S.C. § 1125(a). However, Plaintiffs' claim under this provision is dealt with separately.

reasoning, and the issue of invalidating the parties' registrations is addressed below. *See infra*

Section III.B.[21]

## 2.     Trademark Infringement Under New York Common Law

Defendants also argue that the jury's finding that the Staten Island and Syosset

Defendants infringed Plaintiffs' common law rights should be limited to only the operation of a

---

[21] The Court notes that it charged the jury on the ultimate question of whether there was a likelihood of confusion between the parties' marks and also the individual *Polaroid* factors. (*See* Docket Entry 203 at 4-7, 10-17.) Although this approach was somewhat atypical of trademark cases, the Court believed that it was appropriate due to the convoluted nature of this case. Given that the jury was required to conduct two separate likelihood of confusion analyses on both the validity of Plaintiffs' '836 and '866 Registrations and also the issue if infringement, it was necessary to have to jury make findings on each individual *Polaroid* factor to assure the Court that the jury had not confused the analyses. Having reviewed the special verdict form, the Court finds that the jury properly understood the purpose, weighing and analysis under each *Polaroid* factor and that the jury's findings are consistent, logical and supported by the evidence presented at trial. Further, the Court also found that it was proper to charge the jury with the individual *Polaroid* factors given that this Circuit holds that the individual factors are issues of fact. *See Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005); *Plus Prods. v. Plus Disc. Foods, Inc.*, 722 F.2d 999,1004-05 (2d Cir. 1983).

    Furthermore, charging the jury with making the ultimate decision of whether a likelihood of confusion exists raises the practical difficulty of this Circuit's "two-level test" to determine likelihood of confusion. A strict application of the two-level test in this case would have required several rounds of special verdict forms and determinations by the Court. This procedure would be as follows: the jury determines the individual *Polaroid* factors relating to validity of the '836 and '866 Registrations; the Court then makes its legal evaluation of the jury's findings; the jury then makes determinations on the individual *Polaroid* factors relating to *infringement* of the '836 and '866 Registrations; the Court then makes its legal evaluation of the jury's findings; the jury then determines whether the infringement was intentional, etc. Instead, the Court found that the jury was equally capable of weighing the *Polaroid* factors and making the ultimate conclusion as to the likelihood of confusion.

    Even if the Court had treated the ultimate determination of likelihood of confusion as an issue of pure law and made this determination itself, the Court would have reached an identical result given the jury's findings on the individual factors. For example, the jury's findings of actual confusion alone would have all but required findings that a likelihood of confusion exists. *See, e.g.*, *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 141 (2d Cir. 1999) ("Evidence that confusion has actually occurred is of course convincing evidence that confusion is likely to occur.").

bakery and use of the words "Trattoria Impazzire," respectively. (*See* Docket Entry 208 at 18-19.) For the same reasons as above, this argument is rejected as inconsistent with the jury's findings. Instead, it is clear that the jury found that the Staten Island and Syosset Defendants infringed upon Plaintiffs' common law rights by offering restaurant services beyond the scope of their license with I.O.B. Realty. (*See* 4/2/08 Tr. at 439:10-25, 457:22-458:1, Pls.' Exs. 3-9, 131, 136.) Defendants' motion to narrowly construe the jury's finding of common law trademark infringement is therefore denied.

Further, the jury's verdict of common law trademark infringement is neither a seriously erroneous result nor a miscarriage of justice. Defendants' motion for a new trial on this issue is accordingly denied.

### 3. Unfair Competition Under the Lanham Act and New York Common Law

Defendants next argue that the jury's finding of unfair competition under the Lanham Act and New York common law should be negated, limited, or in the alternative, that the Court should grant a new trial. (*See* Docket Entry 208 at 20-21.) The jury found that the Staten Island Defendants violated New York unfair competition law, and that the Syosset Defendants violated New York and federal unfair competition law. (*See* Docket Entry 203 at 22, Questions 46 & 47.) Defendants contend that the jury's finding of unfair competition under New York common law should be negated because the jury also found that the Staten Island Defendant had not acted in bad faith. (*See* Docket Entry 208 at 20.) Because common law and federal unfair competition claims require a parallel analysis, *see Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1283-84 (S.D.N.Y. 1990), the Court did not require the jury to make two separate findings

under New York common law and the Lanham Act. Defendants are nonetheless correct that a "*state law* claim of unfair competition is not viable without a showing of bad faith." *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995)) (emphasis in original). However, Plaintiffs "may recover for unfair competition in violation of *federal law* without a showing of bad faith." *Id*. (citations omitted, italics in original). Thus, even if Defendants are correct that the Plaintiffs' unfair competition claim under New York common law should be negated, Plaintiffs' claim under the Lanham Act against the Syosset Defendants would still stand. Because Plaintiffs do not seek relief under New York unfair competition law that is not otherwise available under the Lanham Act, and Plaintiffs do not seek relief against the Staten Island Defendants, Defendants' motion is denied as moot.

Defendants further move to limit the Staten Island and Syosset Defendants' liability to only the operation of a bakery and use of the words "Trattoria Impazzire." As explained above, it is clear that the jury concluded that the Staten Island and Syosset Defendants sought to capture some good will from Plaintiffs' restaurant. For the reasons given, this finding is supported by the evidence presented at trial. Thus, the jury's finding of unfair competition is neither inconsistent nor a miscarriage of justice.

Accordingly, Defendants' motion to set aside or limit the jury's findings or, in the alternative, to grant a new trial, is denied.

### 4. GBL § 360-l

Defendants also argue that the jury's finding of the Staten Island and Syosset Defendants' violation of GBL § 360-l should be considered narrowly or, in the alternative, that a new trial on

this issue should be granted. (*See* Docket Entry 208 at 21-23.) GBL § 360-l provides for recovery where a plaintiff owns a distinctive mark and there is a likelihood of dilution to that mark. *See Montblanc-Simplo v. Aurora Due S.r.L.*, 363 F. Supp. 2d 467, 484 (E.D.N.Y. 2005). As the jury was instructed, dilution may occur through either "tarnishment" or "blurring," and liability does not depend upon proof of either a likelihood of confusion or even competition between the parties. (*See* Docket Entry 202 at 49-51; *see also Montblanc-Simplo* 363 F. Supp. 2d at 484 (setting forth standard under GBL § 360-l).)

Defendants nonetheless claim that the jury's finding of a violation of GBL § 360-l should be limited. In particular, Defendants claim that the only relevant evidence introduced at trial was: (1) a single incident where a witness testified that he was incorrectly told that the Staten Island Location was affiliated with Plaintiffs' establishment; and (2) the Syosset Location's use of the words "Trattoria Impazzire." (Docket Entry 208 at 21-22.) As Plaintiffs respond, however, there was significantly more evidence and testimony presented at trial from which the jury could conclude that the Staten Island and Syosset Locations tarnished Plaintiffs' marks. (*See* 4/2/08 Tr. at 395:12-25, 403:10-404:1, 416:10-417:4, 460:21- 463:24, 470:13-473:19; 4/3/08 Tr. at 551:15-23, 563:9-20, 571:19-25; Pls.' Exs. 3, 4, 6-9; Defs.' Exs FF, GG.) Thus, the jury's finding of a violation of GBL § 360 is neither inconsistent nor a miscarriage of justice. Defendants' motion to narrowly interpret the jury's finding or, in the alternative, to grant a new trial is denied.

It should be noted, however, that a violation of GBL § 360-l only gives rise to injunctive relief. *See Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 848 (S.D.N.Y. 2000) (citing GBL §

360-1). Because the Staten Island Location has already closed, violation of GBL § 360-l by the Staten Island Defendants is rendered moot.

### F. Conclusion

For the foregoing reasons, the Court grants Defendants' following motions: (1) to limit the jury's finding of abandonment, to the extent that this finding is limited to only I.O.B. Realty's instances of naked licensing; and (2) to negate Plaintiffs' infringement claims under the Lanham Act, to the extent that the Court invalidates Plaintiffs' '836 and '866 Registrations as described below. Defendants' remaining motions to limit the jury's findings or order a new trial are denied.

The Court thus finds that Plaintiffs have established the following claims: (1) trademark infringement under New York common law against the Staten Island and Syosset Defendants; (2) unfair competition under Section 43(a) of the Lanham Act against the Syosset Defendants; (3) violation of GBL § 360-l against the Staten Island and Syosset Defendants; and (4) I.O.B. Realty fraudulently obtained the '574 Registration.

## II. Defendants' Equitable Defenses Are Denied

Before reaching the issue of injunctive relief, the Court now considers Defendants' equitable defenses. Equitable defenses are for the Court to decide within its sound discretion. *See Price v. Fox Entm't Group, Inc.*, No. 05-CV-5259(SAS), 2007 WL 1498321, at *1 (S.D.N.Y. May 22, 2007) (collecting cases); *see also* 6 MCCARTHY § 31:1 ("The affirmative defense of laches is an equitable issue on which there is no right to a trial by jury.") (footnote omitted). A court should consider such equitable defenses based on the entirety of the record, especially the evidence presented at trial and the jury's findings of fact. *See Dairy Queen, Inc. v. Wood*, 369

U.S. 469, 479-80 (1962) (holding that where legal and equitable claims share common issues of fact, the legal issues are to be decided first by jury); *LeBlanc-Sternberg*, 67 F.3d at 426 ("If the claim for damages 'is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'") (quoting *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974)).  Defendants thus argue that Plaintiffs' claims should be barred by laches, unclean hands and bad faith.  (Docket Entry 209 at 2-5, 6-13.)  Plaintiffs respond that Defendants' equitable defenses are foreclosed by the jury's factual findings.  (Docket Entry 213 at 2-3.)  Plaintiffs also argue that, in the alternative, Defendants' equitable defenses are insufficient as a matter of law.  (*Id.* at 3-14.)  For the following reasons, Defendants' motion is denied.

A.      **The Jury's Findings Foreclose the Syosset Defendants' Equitable Defenses**

Plaintiffs argue that the jury's findings that the Syosset Defendants acted in bad faith and engaged in willful infringement foreclose the Syosset Defendants' equitable defenses.  A defendant is foreclosed from asserting laches as a defense when it was found to have acted in bad faith or to have willfully infringed a plaintiff's mark.  *See Hermes Int'l*, 219 F.3d at 107 (holding that "laches is not a defense against injunctive relief when the defendant intended the infringement") (quoting *Harlequin Enters. Ltd. v. Gulf & W. Corp.*, 644 F.2d 946, 950 (2d Cir. 1981)); *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 362 (S.D.N.Y. 1998) (holding that "it is well known that a laches defense is unavailable where a defendant intentionally infringes on a plaintiff's mark").  Much like laches, the defenses of unclean hands and bad faith involve a balancing of equities.  *See Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980) (holding that laches defense requires "a balancing of equities . . ., which would be the

case with any principle of equity"). Thus, a finding of a defendant's bad faith would likely also foreclose its unclean hands and bad faith defenses. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (noting the "guiding doctrine . . . is the equitable maxim that 'he who comes into equity must come with clean hands'"); 6 MCCARTHY § 31:52 ("Plaintiff's alleged unclean hands cannot be considered in a vacuum, apart from the nature of defendant's conduct which gave rise to the litigation. In unfair competition cases where defendant raises the alleged misrepresentations of plaintiff as a defense, the respective interests of both parties must be weighed . . . .").

Given the jury's findings, the Syosset Defendants are foreclosed from arguing their equitable defenses. (Docket Entry 216 at 5.) Indeed, it is impossible for the balance of equities to tip in the Syosset Defendants' favor when they acted in bad faith and with an intent to infringe upon Plaintiffs' rights. Therefore, the Syosset Defendants' equitable defenses are foreclosed by virtue of the jury's findings.

The remaining issue is whether injunctive relief against I.O.B. Realty is precluded by virtue of its equitable defenses.[22]

**B.     Defendants' Laches Defense Is Denied**

Defendants argue that Plaintiffs' claims are barred under the doctrine of laches. This Circuit has "long held in the context of trademark actions that 'where a person entitled to

---

[22] Because the Staten Island Location closed in 2006 and Plaintiffs now only seek injunctive relief and attorneys' fees, the Staten Island Defendants' equitable defenses are rendered moot. Further, Defendants have not asserted that the Staten Island Defendants have equitable defenses that are distinct from those asserted by I.O.B. Realty. Thus, even if the Staten Island Defendants' defenses were not rendered moot, they would be denied on the same grounds that the Court denies I.O.B. Realty's equitable defenses. *See infra* Section II.B-C.

exclusive use of a trademark is guilty of unreasonable delay in asserting his rights against an infringer, or acquiesces in the latter's use,  a court of equity has the discretionary power to deny injunctive relief or an accounting.'" *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002) (quoting *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 703 (2d Cir. 1970)) (ellipses and internal quotation marks omitted).  The principle of laches is applicable where: (1) the plaintiff had knowledge of the defendant's use of its marks; (2) the plaintiff inexcusably delayed in taking action with respect to the defendant's use; and (3) the defendant suffered prejudice as a result.  *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996); *Lehman*, 625 F.2d at 1040.  Based on the evidence presented at trial, it is undeniable that Plaintiffs were aware of the six Patsy's Pizzeria locations that I.O.B. Realty licensed to open in Manhattan between 1996 and 2002.  (*See* 3/31/08 Tr. at 80:17-19; 4/1/08 Tr. at 243:12-25; 4/2/08 Tr. at 422:19-423:11 Defs.' Ex. BB, EE.) Defendants thus argue that Plaintiffs should be barred from injunctive relief because they knew of I.O.B. Realty's licensing and expansion for at least six years prior to bringing suit against the Staten Island and Syosset Defendants.  (Docket Entry 209 at 6-8.)

Plaintiffs first respond that the Court already dismissed Defendants' laches defense upon denying Defendants' motion for summary judgment.  (*See* Docket Entry 213 at 3-4.)  However, Judge Irizarry's previous decision was pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  *See Banas*, 508 F. Supp. 2d at 216-17, 221.  It is appropriate for the Court to now reconsider the defense after conducting a trial and receiving testimony and evidence.  Even if, as Plaintiffs argue, there "was an absence of any further evidence at trial" regarding the laches defense (Docket Entry 213 at 4), this does not foreclose the Court from reconsidering the issue.

*See Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 163-64 (E.D.N.Y. 2002) ("Because the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.") (quoting *Nabisco v. Warner Lambert Co.*, 32 F. Supp. 2d 690, 694 (S.D.N.Y. 1999) (internal quotations and ellipses omitted). Accordingly, the Court reaches the merits of Defendants' laches defense.

Plaintiffs also respond that laches does not apply to I.O.B. Realty because I.O.B. Realty was not named in Plaintiffs' original complaints. (Docket Entry 213 at 4-6.) Plaintiffs thus argue that they did not unreasonably delay bringing suit against the Staten Island and Syosset Defendants as distinct entities from I.O.B. Realty. As such, Plaintiffs seem to suggest that the laches doctrine *per se* excludes I.O.B. Realty's rights. This suggestion is unsound. To hold otherwise would deny I.O.B. Realty from vindicating its rights, despite having built up an interest in licensing the use of their marks PATSY'S and PATSY'S PIZZERIA, simply because they were not originally named defendants in this case. *See Dwinell-Wright Co. v. White House Milk Co.*, 132 F.2d 822, 825-26 (2d Cir. 1943) (holding that laches exists to prevent a plaintiff from "destroy[ing] a huge business built up with its connivance and consent"); *see also* FED. R. CIV. P. 24(a)(2) (permitting a party to intervene where it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"). One of the inherent rights under a trademark is to enter into agreements to permit others to use such marks. *See* 1 MCCARTHY § 3:10; 3 MCCARTHY §§ 18:40, 18:42. To deny I.O.B. Realty the right *per se*

to assert laches would seriously undermine not only the laches doctrine but also the right of intervening parties in trademark actions to vindicate their licensing agreements.

I.O.B. Realty thus has the right to assert laches in this case. Plaintiffs respond, however, that the Staten Island and Syosset Locations are different than I.O.B. Realty's previously licensed entities due to their location and their scope of services. (Docket Entry 213 at 8.) As this Circuit held:

> While a plaintiff may acquiesce in some uses of the mark and in any resulting likelihood of consumer confusion, that acquiescence does not extend to a use that has not yet materialized and is not foreseeable. By using the mark in a different manner or in a new geographic area, a defendant may exceed the scope of the plaintiff's consent and be exposed to liability for that extra-consensual use.

*Pro-Fit Orthopedic & Sports Physical Therapy*, 314 F.3d at 69. As such, the progressive encroachment doctrine provides an excuse for delay or acquiescence in bringing a trademark claim. *Id*. at 70 ("The primary rationale [of the progressive encroachment doctrine] is that a plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that defendant was using the potentially offending mark, but that plaintiff had a *provable infringement claim* against defendant.") (emphasis added). Although geographic expansion does not provide an excuse for Plaintiffs' delay, the Staten Island and Syosset Locations are such a significant departure from I.O.B. Realty's previously licensed locations that Plaintiffs' delay in bringing suit is excused.

Based on the evidence presented at trial, the jury found that both a likelihood of confusion as well as actual confusion existed between Plaintiffs' restaurant and the Staten Island and Syosset Locations. The jury also found that the Staten Island and Syosset Locations used the marks PATSY'S and PATSY'S PIZZERIA beyond the scope of, and in a different manner than,

both the East Harlem Location and also the previously licensed locations throughout Manhattan. A plaintiff's delay in bringing suit is excused where a "defendant, after beginning its use of the mark, redirected its business so that it more squarely competed with plaintiff." *Id*. at 70. Such redirection occurred here because the evidence and the jury findings show that the Staten Island and Syosset Locations did not embody the same style of eatery as the original East Harlem Location. There is ample evidence to show that the Staten Island and Syosset locations were materially different from I.O.B. Realty's previously licensed locations. (*See* 4/2/08 Tr. at 406:19-407:22, 408:18-409:11, 416:10-417:4.) Most importantly, the Staten Island and Syosset Locations bore different signs than either the original Patsy's Pizzeria or the franchise locations throughout Manhattan. The Staten Island Location bore a sign that read only "PATSY'S," and included the words "RESTAURANT," " BAKERY" and "CAFÉ." (*See* Pls.' Ex. 4.) Further, the Syosset Location bore a sign that read "TRATTORIA IMPAZZIRE." (*See* Pls.' Ex. 3.) In this respect, Plaintiffs could have reasonably concluded -- as they apparently did in bringing this action -- that the Staten Island and Syosset Locations had uniquely failed to sufficiently distinguish their associations between either Patsy's Italian Restaurant or Patsy's Pizzeria. The jury's findings of infringement makes clear that these locations created a new and provable harm.

Defendants' reliance on *Juicy ZCouture, Inc. v. L'Oreal USA, Inc.*, No. 04-CV-7203(DLC), 2006 WL 1012939 (S.D.N.Y. Apr. 19, 2006), is inapposite. There, the court found that laches was applicable because the plaintiff had "failed to explain . . . why the harm done to [its] JUICY mark by [the defendant's] use of Juicy Wear *was different from any harm done* by the use of Juicy for its other products." *Id*. *33 (emphasis added). As noted, Plaintiffs have shown why the Staten Island and Syosset Locations were sufficiently different than the East

48

Harlem Location and I.O.B. Realty's previously licensed locations to justify the delay in bringing an action. Therefore, Plaintiffs' delay in bringing suit is excused because it was not until the Staten Island and Syosset Locations opened that Plaintiffs reasonably concluded that they had provable infringement claim against Defendants. *See Pro-Fit Orthopedic & Sports Physical Therapy*, 314 F.3d at 70.

Further, even if Plaintiffs' delay was unexcused, I find that the public interest dictates that Defendants' laches defense should not prevent the Court from imposing injunctive relief to prevent consumer confusion. "In weighing the effect of plaintiff's delay in suing, a court must consider the right of the public in being protected against the continuing use of clearly confusing marks. If plaintiff's sloth in suing results in the denial of injunctive relief, and the marks are clearly confusing, the relevant customer group will not be served by the result." 6 McCarthy § 31:10. For the reasons given below, I find that there is good cause to limit the parties' simultaneous use of the mark PATSY'S. To not remedy the obvious consumer confusion due to Plaintiffs' purported delay in bringing this claim would be an inequitable result.

For these reasons, Defendants' laches defense is denied.

## C. Defendants' Unclean Hands and Bad Faith Defenses Are Denied

Defendants argue that Plaintiffs' claims should be barred under the doctrines of unclean hands and bad faith.[23] It is a long-standing proposition that unclean hands provides a defense for trademark infringement. *See Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d. Cir.

---

[23] Defendants raised separate defenses of unclean hands and bad faith, yet fail to adequately distinguish the two defenses. Further, Defendants fail to cite any cases in support of their bad faith defense. (*See* Docket Entry 209 at 11-13.) The Court thus analyzes the defenses together under the unclean hands doctrine, which seems to embody both defenses.

1983) (citing *Maatschappij Tot Exploitatie Van Rademaker's Koninklijke Cacao &*
*Chocoladefadrieken v. Kosloff*, 45 F.2d 94, 96 (2d Cir. 1930)).  Indeed, the oft-quoted maxim
that one who comes into equity must come with clean hands is "far more than a mere banality"
but rather a "self-imposed ordinance that closes the doors of a court of equity to one tainted with
inequitableness or bad faith relative to the matter in which he seeks relief, however improper may
have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach.*
*Co.*, 324 U.S. 806, 814 (1945).  "[W]hile equity does not demand that its suitors shall have led
blameless lives, as to other matters, it does require that they shall have acted fairly and without
fraud or deceit as to the controversy in issue." *Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*,
149 F.3d 85, 90 (2d Cir. 1998) (quoting *Precision Instrument Mfg.*, 324 U.S. at 814-15).

However, the doctrine of unclean hands requires a balancing of equities and "[t]he
relative extent of each party's wrong upon the other and upon the public should be taken into
account, and an equitable balance struck." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F.
Supp. 2d 126, 133 (S.D.N.Y. 1999) (quoting *Republic Molding Corp. v. B.W. Photo Utilities*,
319 F.2d 347, 350 (9th Cir. 1963)).  Where both parties have acted inequitably, relief should still
be granted against a defendant because "[i]t is better to remedy one wrong than to leave two
wrongs at large."  6 MCCARTHY § 31:53.  Further, because trademark law also involves
protecting the public's interests, courts typically only bar recovery under a theory of unclean
hands when a plaintiff's conduct was "egregious," *see Citizens Fin. Group, Inc. v. Citizens Nat'l*
*Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004), *cert. denied*, 544 U.S. 1018 (2005), or
"clear, unequivocal and convincing," *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F.

Supp. 568, 590 (S.D.N.Y. 1987) (quoting *Nike, Inc. v. Rubber Mfrs. Ass'n, Inc.*, 509 F. Supp. 919, 926 (S.D.N.Y. 1981)).

Defendants argue that Plaintiffs acted in bad faith because: (1) Plaintiffs engaged in "unconscionable behavior" before the TTAB by having I.O.B. Realty's trademark registrations cancelled; and (2) Plaintiffs "acted in bad faith by bringing this action while knowing that the Defendants were the senior users of" the mark PATSY'S. (Docket Entry 209 at 13.)

Addressing Defendants second argument first, the issue of prior use was initially raised by Defendants in their counterclaim. Defendants thus bore the burden of proving this fact. As such, the Court agrees with Plaintiffs that it was not bad faith to contest I.O.B. Realty's prior use. (*See* Docket Entry 213 at 11-12.) This is true especially because the jury, in fact, found that the Staten Island and Syosset Defendants exceeded the scope of their licenses and infringed upon Plaintiffs' rights. Thus, Plaintiffs' did not bring this action in bad faith and Defendants' argument is rejected.

Turning to Defendants' other argument, Defendants claim that Plaintiffs engaged in "unconscionable behavior" before the TTAB by having I.O.B. Realty's trademark registrations cancelled. (*See* Docket Entry 209 at 13.) Plaintiffs respond that the jury's findings on the parties' fraud claims precludes Defendants' unclean hands defense on this ground. (Docket Entry 213 at 9.) Plaintiffs further argue that their conduct was not "egregious." (*Id.*) The Court agrees with Plaintiffs that their conduct was not so egregious to justify barring their claims. However, the Court disagrees with Plaintiffs' suggestion that they are entirely blameless for the confusion wrought at the PTO and TTAB. (*See id.* at 9-11.)

In short, there is plenty of blame to go around for the "procedural morass" at the TTAB and the PTO, and perhaps most of it lies with Plaintiffs. On June 28, 2007, the TTAB issued a decision on the parties' motion for final orders of the cancellation proceeding regarding I.O.B. Realty's '574 and '110 Registrations. (*See generally* TTAB Decision.) In assessing the proceeding's "tortured procedural history," the TTAB initially noted that the PTO "erred in handling the matter" by prematurely cancelling I.O.B. Realty's '574 Registration. (*See* TTAB Decision at 15; *see also id*. 25 (holding that the PTO "should not have cancelled both of IOB's registrations . . . before the parties had an opportunity to brief the matter").) At the same time, the TTAB stated that "substantial responsibility for the confusion must also be borne by the parties." (*Id*. at 15.) In particular, the TTAB first noted Defendants were at fault for failing to keep in contact with the PTO. (*Id*. at 18-20.) However, the TTAB then noted that Plaintiffs bear "a *larger share of the blame* for the disarray" of the cancellation proceeding for failing to notify the PTO of the pending appeal of the Sauce Litigation. *Id*. at 20 (emphasis added). The TTAB explained that:

> [I]f IOB was remiss for failing to update its service address, Patsy's[24] bears a larger share of the blame for the disarray of the case. Patsy's filed its motion to resume and for judgment just days after the district court [in the Sauce Litigation] issued its final order. Patsy's apparently realized that the [PTO] Board might be concerned about whether an appeal had been filed, because it took the trouble to tell the Board that IOB had <u>not</u> appealed at the time the motion was filed. Nonetheless, when an appeal was actually filed (and was pending when the Board granted its motion), Patsy's took no action to inform the Board that its motion was factually incorrect -- or at best misleading -- on this point.
>
> While it is true that Patsy's argued that an appeal would be legally irrelevant to the enforceability of the district court's judgment, its argument indicates that it at least had reason to (correctly) believe the <u>Board</u> might think otherwise. But as

---

[24] "Patsy's" refers to Plaintiffs.

Patsy's argument indicates, that decision was for the <u>Board</u>, not Patsy's to make. Indeed, by affirmatively telling the Board that no appeal had been filed, then remaining silent when one had been, Patsy's allowed the Board to assume that the facts recited in its October 18, 2001, motion to resume were correct. At the time, this matter appeared to be a routine case in which the losing party in district court did not even bother to respond to the prevailing party's motion for judgment. But as Patsy's was well-aware, that was far from the truth, and by the time the Board issued its . . . order, the parties were vigorously litigating the matter before the Second Circuit.

(*Id*. at 20-21 (emphasis in original).) The TTAB also noted that the same counsel represented Plaintiffs before both the PTO as well as the Court of Appeals for the Second Circuit, and thus were "clearly aware of the situation." (*Id*. at 21 n.18.) In other words, at least *some* if not *most* of the blame for the procedural morass at the PTO and TTAB lies with Plaintiffs.

Plaintiffs nonetheless argue that "Defendants have impermissibly tried to shift the blame of their inaction in connection with the TTAB proceedings to Plaintiffs and their counsel." (Docket Entry 213 at 11.) The Court relies upon the TTAB's own assessment to refute Plaintiffs' argument. Further, at best, Plaintiffs' argument is that their silence was not misleading. However, it is a well-settled principle that inequitable conduct may arise where a party was silent and had a duty to speak. *See Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) ("The law has long been that where a party has a legal duty to speak, silence can constitute an affirmative 'misrepresentation.'") (citations omitted). As the TTAB noted, Plaintiffs were required to correct the statements made to the PTO. (TTAB Decision at 22, n.20 (citing Patent and Trademark Rule 10.85(a)(5)).) As a result of Plaintiffs' silence, the PTO issued the '836 and '866 Registrations, which Plaintiffs relied upon in bringing the foregoing action. The TTAB, in turn, admitted that the '836 and '866 Registrations would not have been issued had Plaintiffs properly notified the PTO about the proceedings in the Sauce Litigation.

(*See* TTAB Decision at 21 ("Had the Board been informed that an appeal had been taken from the district court's order, suspension of the TTAB proceedings would have been continued.").) Though I find that Plaintiffs' actions and non-actions have resulted in the foregoing litigation becomming unnecessarily protracted, which is to some degree inequitable, I also agree with the jury's finding that these acts do not constitute fraud and hold that Plaintiffs behavior was not "unconscionable."

That said, Defendants have also acted inequitably. This assessment is based upon the jury's findings that I.O.B. Realty fraudulently obtained their registration, and that the Syosset Defendants intentionally infringed upon Plaintiffs' rights. Therefore, *even if* the Court found that Plaintiffs' conduct was egregious, it is clear that barring recovery would merely leave two wrongs at large. Defendants' motion to bar Plaintiffs' claims under a theory of unclean hands and bad faith is thus denied. However, the fact that *both* parties helped cause the considerable confusion over their concurrent trademarks points the way toward the proper injunctive relief, as described below.

## III. The Evidence and the Jury's Findings Dictate Cancelling Plaintiffs' '836 and '866 Registrations and Defendants' '574 Registration

There is a proper basis to grant Plaintiffs' motion for injunctive relief against I.O.B. Realty and the Syosset Defendants. *See supra* Section I. Plaintiffs argue that I.O.B. Realty's '574 Registration should be cancelled because: (1) I.O.B. Realty fraudulently obtained the registration; and (2) I.O.B. Realty abandoned its rights to the marks PATSY'S and PATSY'S PIZZERIA. (*See* Docket Entry 207 at 12-14.)

Based on the jury's findings, there is also a basis to cancel Plaintiffs' '836 and '866 Registrations. Specifically, Defendants argue that Plaintiffs' '836 and '866 Registrations should be cancelled because I.O.B. Realty is the senior user of the marks PATSY'S and PATSY'S PIZZERIA and there is a likelihood of confusion between I.O.B. Realty's marks and Plaintiffs' '836 and '866 Registrations. (Docket Entry 209 at 13-14.)

Mr. Zyller, one of the Syosset Defendants, testified that Patsy's Italian Restaurant and Patsy's Pizzeria are "two completely different animals. They are a high end Italian restaurant. We are a pizzeria with Italian items on our menu which are closer to traditional pizzeria menus." (4/2/08 Tr. at 454:18-21.) The parties have nonetheless failed to make such a distinction crystal clear to consumers in the federal registrations of their marks. As such, I agree that the parties' trademark registrations should be cancelled. Further, due to the ongoing consumer confusion, I find that additional injunctive relief is warranted.

### A.  Standard

Service marks are used "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services . . . ." Lanham Act § 45, 15 U.S.C.A. § 1127 ("Service Mark"). Although trademark and service mark rights derive from use, the Lanham Act provides a national system of registration that provides certain factual presumptions and additional relief. Lanham Act § 33, 15 U.S.C. § 1115; *see also Punchgini, Inc.*, 482 F.3d at 146 (holding that "trademark rights are acquired and maintained through use of a particular mark. . . . This is true even of marks that have been registered with the Patent and Trademark Office") (citations omitted). By express Congressional authority, courts have broad authority to correct trademark registrations. The Lanham Act provides that

"[i]n any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." Lanham Act § 37, 15 U.S.C. § 1119. "The net effect of § 37 is to give to the courts concurrent power with the Patent and Trademark Office to conduct cancellation proceedings. Thus, a registration may be collaterally attacked in any civil action where validity of the mark is in issue." 5 MᴄCᴀʀᴛʜʏ § 30:109 (footnotes omitted). This authority extends even where, as with Plaintiffs' defense to Defendants' counterclaim, a party raises cancellation as a defense rather than as a separate cause of action. *See Bascom Launder Corp. v. Telecoin Corp.*, 204 F.2d 331, 335-36 (2d Cir. 1953), *cert. denied*, 345 U.S. 994 (1953) (remanding antitrust case where court should have ordered trademark registration cancelled pursuant to valid defense). It is undisputed that the '574, '836 and '866 Registrations are at issue in this case. The Court may therefore issue a declaratory judgment that the registrations be cancelled. *See* Fᴇᴅ. R. Cɪᴠ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").

When warranted, the Court may also issue a permanent injunction to limit the parties' use of certain trademarks. *See* Lanham Act § 34(a), 15 U.S.C. § 1116(a) (vesting courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . ."). To obtain a permanent injunction in a trademark action, a party "must succeed on the merits and 'show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)

(quoting *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989)).[25]  A

Court has discretion in granting injunctive relief under the Lanham Act, provided that it is not

based upon "clearly erroneous finding[s] of fact or incorrectly applied . . . law." *Nikon Inc. v.

Ikon Corp.*, 987 F.2d 91, 94 (2d Cir. 1993).  However, "[i]njunctive relief should be narrowly

tailored to fit the specific legal violations." *U.S. v. Schulz*, 517 F.3d 606, 607 (2d Cir. 2008)

(quoting *Soc'y for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1251 (2d Cir.

1984)).

### B.     Cancelling Plaintiffs' '836 and '866 Registrations

Defendants argue that Plaintiffs' '836 and '866 Registrations should be cancelled.  (*See*

Docket Entry 209 at 14.)  The Lanham Act provides that no trademark registration shall be issued

if it "[c]onsists of or comprises a mark which so resembles . . . a mark or trade name previously

used in the United States by another and not abandoned, as to be likely, when used on or in

connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive

. . . ."  Lanham Act § 2, 15 U.S.C. § 1052(d); *see also* Lanham Act § 3, 15 U.S.C. 1053 (stating

that the same procedures and effect apply to service marks).  As explained above, I.O.B. Realty

---

[25] As Plaintiffs note, the Supreme Court recently adopted a slightly more stringent standard for issuing a permanent injunction in patent cases.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (holding that a plaintiff seeking a permanent injunction in a patent action must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction").  However, the Court of Appeals for the Second Circuit has not held that this standard also applies to trademark actions.  The Court thus relies upon the most recent articulation of the standard for imposing injunctive relief in trademark cases.  *See L. & J.G. Stickley, Inc. v. Cosser*, 255 Fed.Appx. 541, 543 (2d Cir. 2007) (summary order) (quoting *Morse*, 440 F.3d at 56).  *Cf. N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008) (declining to decide whether *eBay* applies to trademark infringement cases).

has established that it is the senior user of the marks PATSY'S and PATSY'S PIZZERIA for pizzeria services. Further, the jury concluded that there is a likelihood of confusion between I.O.B. Realty's marks and Plaintiffs '836 and '866 Registrations. The Court thus finds that there is a proper basis to cancel Plaintiffs' '836 and '866 Registrations. *See Otto Roth & Co., Inc. v. Universal Foods Corp.*, 640 F.2d 1317, 1320 (C.C.P.A. 1981) ("One who opposes registration to an applicant under section 2(d) is attempting to protect his individual rights, as the owner of some means of identifying the source of his goods, by preventing registration of a mark so similar to that which he asserts identifies source that concurrent use of the two is likely to cause confusion and thus foil the function of his means of identification."). In the main, the PTO should have never issued these registrations to Plaintiffs in the first instance because they are confusingly similar to I.O.B. Realty's marks PATSY'S and PATSY'S PIZZERIA for pizzeria services, whether or not I.O.B. Realty was entitled to federal registrations for those marks.

Plaintiffs argue, however, that cancelling the '836 and '866 Registrations is not warranted.[26] For the following reasons, the Court disagrees.

### 1. Defendants Are Facially Entitled to Injunctive Relief

Plaintiffs first argue that, because Defendants' counterclaim's prayer for relief merely sought a declaratory judgment, Defendants are not entitled to injunctive relief. (Docket Entry

---

[26] At the outset, I again reject Plaintiffs' renewed argument that due to the final judgment issued in the Sauce Litigation Defendants should be barred from arguing that Plaintiffs' registrations should be cancelled. My reasons for the rejection of that argument can be found in *Banas*, 2008 WL 926401. Most importantly, whatever binding effect the final judgment in the Sauce Litigation has on *Defendants*, it does not affect *this Court's* ability pursuant to 15 U.S.C. § 1119 "to determine the right to registration, *order the cancellation of registrations*, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." (Emphasis added).

213 at 14.)  This argument is legally unsound.  *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (holding that "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial") (citations omitted).  Due to the extremely complicated nature of this case, both Plaintiffs and Defendants were permitted to develop their legal theories prior to trial.  Throughout this process, Plaintiffs were on notice that Defendants would be seeking injunctive relief against Plaintiffs, even though their prayer for relief did not explicitly state as much.

Further, Plaintiffs' argument is wholly disingenuous.  If the Court were so inclined to now limit Defendants to only their original pleadings, then it certainly would apply the same rigorous standard to Plaintiffs' pleadings as well.  Most notably, Plaintiffs' amended answer failed to set forth fraud as an affirmative defense, which under Plaintiffs' logic would mean that it is now barred.  (*See* Docket Entry 75.)  Instead, both Defendants *and* Plaintiffs were permitted to reasonably develop their claims and arguments in preparation for trial.  Thus, Defendants are facially entitled to seek post-trial injunctive relief despite failing to request such relief in their initial pleading.

### 2.      I.O.B. Realty Did Not Abandoned All of its Rights

Plaintiffs also argue that I.O.B. Realty abandoned all rights to the marks PATSY'S and PATSY'S PIZZERIA.  The Lanham Act provides that trademark registrations should not be issued when the mark so resembles "a mark or trade name previously used in the United States by another and *not abandoned*."  *See* Lanham Act § 2(d), 15 U.S.C. § 1052(d) (emphasis added).  Plaintiffs thus argue that, because I.O.B. Realty abandoned its rights to PATSY'S and PATSY'S PIZZERIA, that their '836 and '866 Registrations are valid.  In other words, Plaintiffs argue that

I.O.B. Realty's marks entered the public domain and that Plaintiffs, as well as anyone else, were free to use them. As described above, *see supra* I.D, the Court disagrees. Instead, the Court finds that I.O.B. Realty's abandonment was limited to its failure to sufficiently monitor the Staten Island and Long Island Locations. In pertinent part, the Court finds that I.O.B. Realty's actions have not caused the marks PATSY'S and PATSY'S PIZZERIA to lose their significance and identification with I.O.B. Realty's pizzeria services. Thus, the jury's finding of I.O.B. Realty's abandonment through naked licensing does not preclude I.O.B. Realty from asserting its marks PATSY'S and PATSY'S PIZZERIA to seek cancellation of Plaintiffs' '836 and '866 Registrations. Further, the proper remedy for I.O.B. Realty's abandonment through naked licensing rests in limiting its rights to only pizzeria services and in cancelling the '574 Registration. This is consistent with the jury's verdict, and the Court is persuaded that this is an equitable result.

### 3. Plaintiffs' Argument about the Lack of Confusion Prior to Plaintiffs' Applications Does Not Bar Cancelling Their Registrations

Plaintiffs next argue that, because the jury found that the earliest dates that Plaintiffs''836 and '866 Registrations were likely to cause confusion with I..O.B. Realty's marks were the dates that Plaintiffs filed their applications for Registration with the PTO (September 30, 1999 and April 13, 2001, respectively), Section 2(d) of the Lanham Act (15 U.S.C. § 1052(d)) does not apply. (*See* Docket Entry 207 at 4; Docket Entry 218 at 8-9; Docket Entry 203 at 8, Questions 8.J & 8.K; Pls.' Exs. 1 & 2.)

Plaintiffs seem to base their argument on Section 2(d)(1) of the Lanham Act, which provides that, in issuing *concurrent registrations*, the PTO should determine the likelihood of

confusion based upon "the earliest of the filing dates of the applications pending or of any registration issued under [the Lanham Act]." 15 U.S.C. § 1052(d)(1). However, this provision is inapplicable because the parties have not sought concurrent registrations. Instead, Section 2(d) of the Lanham Act plainly requires that the PTO shall not register a mark that "[c]onsists of or comprises a mark which so resembles a . . . mark or trade name *previously used* in the United States by another." 15 U.S.C. § 1052(d) (emphasis added). The jury found that I.O.B. Realty had met its burden in proving that on the date that Plaintiffs filed their trademark applications, there was a likelihood of confusion with I.O.B. Realty's marks PATSY'S and PATSY'S PIZZERIA. Further, *even if* the Court were to take the narrow view as Plaintiffs suggest, it is generally proper to consider evidence of likelihood of confusion occurring *after* the date that a party submits its application for trademark registration. *See R. J. Reynolds Tobacco Co. v. Am. Brands, Inc.*, 493 F.2d 1235, 1238 (C.C.P.A. 1974).

The jury's finding that likely confusion arose between the '836 and '866 Registrations and I.O.B. Realty's marks on September 30, 1999 and April 13, 2001, respectively, provides the Court with a proper basis to cancel Plaintiffs' '836 and '866 registrations. Plaintiffs' argument is accordingly rejected.

### 4.  I.O.B. Realty's Rights Are Not Geographically Limited

Plaintiffs next argue that, because I.O.B. Realty's prior use of the marks PATSY'S and PATSY'S PIZZERIA was limited to the East Harlem Location, the Court should not cancel Plaintiffs' registrations. (*See* Docket Entry 207 at 6-10.) "In the absence of federal registration, both parties have the right to expand into unoccupied territory and establish exclusive rights by being first in that territory. In effect, it is a race between the parties to establish customer

recognition in unoccupied territory, possibly subject to the concept of a zone of 'natural expansion.'" (*Id*. at 6 (quoting 5 MCCARTHY § 26:13).)  Plaintiffs thus contend that they "won that race and achieved customer recognition in Midtown Manhattan and all across the United States prior to I.O.B. [Realty] and its predecessors." (*Id*.)  However, Plaintiffs' argument is flawed for a number of reasons.

As an initial matter, Plaintiffs' argument fails because "[g]eographical separation of the parties is not relevant in an opposition" under Section 2(d) of the Lanham Act.  3 MCCARTHY § 20:15.  "The owner of a territorially unrestricted federal registration has a presumptive exclusive right to use which extends throughout the United States. Therefore, it is not proper to limit consideration of likelihood of confusion to the territories presented occupied by the parties in an opposition." *Id*. (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565 (Fed. Cir. 1983); *Peopleware Sys., Inc. v. Peopleware, Inc.*, 226 U.S.P.Q. 320 (T.T.A.B. 1985); *In re Appetito Provisions Co.*, 3 U.S.P.Q.2d 1553, at *1 n.4 (T.T.A.B. 1987).  Thus, even if I.O.B. Realty's "rights are confined to East Harlem" (Docket Entry 207 at 8), as Plaintiffs claim, this would still provide a sufficient basis to cancel Plaintiffs' '836 and '866 Registrations.

Further, the Court finds that I.O.B. Realty's rights are not, in fact, limited to only East Harlem.  Plaintiffs premise their contention upon the fact that Plaintiffs' restaurant at West 56th Street and I.O.B. Realty's pizzeria at 118th Street and First Avenue are in wholly different markets.  To claim that two restaurants, each located in Manhattan, merely at different ends of Central Park, are in different markets is utterly nonsensical and not supported by the law.  *See Patsy's Brand*, 317 F.3d at 216-17 (treating New York City as a single market in determining whether Patsy's Brand, Inc. owns a valid mark for pasta sauces).  Further, Plaintiffs claim that

I.O.B. Realty has not used or advertised their marks outside of East Harlem.  This claim is

refuted by the jury's findings and the evidence at trial.  (*See, e.g.*, 4/1/08 Tr. at 215:9-216:23;

4/3/08 Tr. at 651:15-655:22; Defs.' Exs. SS-UU, YY, OOOO-ZZZZ.)  Lastly, the jury found that

it is *not* likely that Plaintiffs will use their marks for restaurant services to enter markets that are

related to those of the Staten Island or Syosset Locations.  (Docket Entry 203 at 13, Questions

18.A, 18.B, 19.A & 19.B.)  Thus, even if the Court were to adopt Plaintiffs' narrow view of

Defendants' rights, I.O.B. Realty has established that *it*, and not Plaintiffs, was the first to expand

its rights beyond the Manhattan market.  I.O.B. Realty has thus established that its rights are not

limited to the Manhattan market.[27]  Plaintiffs' argument is accordingly rejected.

### 5.    Plaintiffs' Argument that I.O.B. Realty's Rights to Only Pizzeria Services Is Not a Bar to Cancelling Plaintiffs' Registrations

Finally, Plaintiffs argue that, because the jury found that I.O.B. Realty's rights are for

pizzeria services and not restaurant services, that this bars cancelling the '836 and '866

Registrations.  (*See* Docket Entry 207 at 10-12.)  For the reasons stated above, the Court agrees

that I.O.B. Realty's rights are for pizzeria services and not restaurant services.  *See supra* Section

I.B.1.  However, the Court does not agree that this finding bars cancelling Plaintiffs' '836 and

---

[27] Having received evidence that Plaintiffs are now expanding by opening a new location in Atlantic City, New Jersey, the Court anticipates that the parties will seek to use the foregoing litigation to preclude the other from further expansion.  However, this issue is wholly beyond the scope of this litigation.  Instead, this Opinion and Order concerns the parties' concurrent use of similar marks for restaurant and pizzeria services in New York City, and Syosset, Long Island. To the extent that this Opinion and Order would affect *future* expansion, the parties are merely required to conform their use of marks as described herein to avoid consumer confusion.  In other words, the Court makes no rulings or findings of fact as to whether Plaintiffs or I.O.B. Realty are wholly precluded from their continued expansion.  That said, it is the Court's sincere hope that, rather than continuing to waste additional funds on protracted litigation, this Opinion and Order will permit the parties to *each* expand in due course.

'866 Registrations under Section 2(d) of the Lanham Act. It is an axiomatic principle of trademark law that injunctive relief is appropriate where two parties' marks are deemed to be confusingly similar, even where the services provided by the parties are not identical. *See, e.g.*, *Safeway Stores, Inc. v. Safeway Props., Inc.*, 307 F.2d 495 (2d Cir. 1962) (affirming preliminary injunction where plaintiff and defendant shared a similar mark for retail grocery and real estate services respectively). The jury found that there is a likelihood of confusion, as well as actual confusion, between Plaintiffs' '836 and '866 Registrations and I.O.B. Realty's use of the mark PATSY'S and PATSY'S PIZZERIA for pizzeria services. The key is that the jury found that the marks used in relation to the parties' services are confusingly similar. As such, the fact that the '866 Registration specifically recites that it is for "restaurant services not including pizza" and that the parties' services are not identical is of no consequence.

Thus, the Court finds that there is a proper basis to order cancellation of Plaintiffs' '836 and '866 Registrations pursuant to Section 2(d) of the Lanham Act.

## C. Cancelling I.O.B. Realty's '574 Registration

Plaintiffs argue that I.O.B. Realty's '574 Registration should be cancelled because I.O.B. Realty fraudulently obtained the registration and abandoned its rights to the mark through naked licensing. (*See* Docket Entry 207 at 12-13.) Section 33(b)(1) of the Lanham Act provides a defense against a registered mark where a "registration . . . was obtained fraudulently." 15 U.S.C. § 1115(b)(1). In such an instance, it is proper to order cancellation of that party's registration. *See Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986); *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 313-14 (S.D.N.Y. 2000). Similarly, Section 33(b)(2) of the Lanham Act provides a defense where a "mark has been abandoned by the

registrant." 15 U.S.C. § 1115(b)(2). Again, this is a proper basis to order cancellation of a party's registration. *See Dawn Donut, Co.*, 267 F.2d at 367; 3 MCCARTHY § 18:48.

In response, Defendants raise the same arguments that were rejected above. *See supra* Section I. Thus, the Court finds that I.O.B. Realty's fraudulent statements to the PTO and TTAB, and its limited abandonment through naked licensing with the Staten Island and Syosset Defendants, warrants cancelling the '574 Registration.[28]

### D. Further Injunctive Relief Against the Syosset Location

Plaintiffs argue that the Court should enjoin the Syosset Location from using the mark PATSY'S. (*See* Docket Entry 207 at 15-23.) Presumably, Plaintiffs would have the Court enjoin the Syosset Location from using the mark PATSY'S PIZZERIA as well. (*See* Docket Entry 218 at 12-15.) The Court has already entered two preliminary injunctions against the Syosset Defendants: First, that they are enjoined from using the words "Trattoria Impazzire" in relation to the Staten Island Location; and Second, that they place a sign in the door of the Syosset Location reading: "WE ARE NOT AFFILIATED WITH PATSY'S ITALIAN RESTAURANT LOCATED AT 236 WEST 56TH STREET, NEW YORK, NY." The Court is persuaded that these steps will sufficiently "balance the equities to reach an *appropriate* result protective of the interests of both parties." *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 747 (2d Cir. 1994) (quoting *Soltex Polymer Corp. v. Fortex Indus., Inc.*, 832 F.2d 1325, 1330 (2d Cir.1987) (emphasis in original, ellipses and internal quotation marks omitted). The Court therefore permanently enjoins the Syosset Defendants from using the words "Trattoria Impazzire" in any

---

[28] To the extent that the PTO has already cancelled the '574 Registration, and Judge Irizarry ordered that the registration should be restored on different grounds, that order is now superceded.

advertising, signs, menus, or anything associated with the Syosset Location.  Further, the Court orders that the above-mentioned sign remain in the door of the Syosset Location for not less than three years after entry of judgment.

Despite the jury's finding of willful infringement by the Syosset Defendants, the Court finds that Plaintiffs' proposed injunctive relief is punitive and not narrowly tailored to avoid consumer confusion nor to protect Plaintiffs' rights.  The Court has considered Plaintiffs' arguments to the contrary, and does not consider them to be of merit.

### E.    Defendants' Motions for Further Injunctive Relief Are Denied

Defendants argue that they are entitled to additional injunctive relief.  (*See* Docket Entry 209 at 15-19.)  The Court has considered Defendants' arguments and does not find that the proposed relief is warranted or narrowly tailored.  In pertinent part, the Court is not persuaded that it should enjoin Plaintiffs from investigating or bringing claims against any new locations opened by I.O.B. Realty or its licensees.  Further, Plaintiffs' new location in Atlantic City, New Jersey, is beyond the scope of this litigation, and Defendants have failed to show that there is any consumer confusion warranting such injunctive relief.  Defendants' motion is accordingly denied.

Defendants also move for a preliminary injunction to maintain the status quo pending appeal to the Court of Appeals for the Second Circuit.  (*See* Docket Entry 209 at 5.)  Defendants' motion is denied.  Should either party file a notice of appeal, they are free to move for a stay of judgment from the Court of Appeals.

**F. The Evidence of Public Confusion Warrants Enjoining All Parties from Using the Mark PATSY'S Alone for Their Respective Services**

As described above, and based on the jury's findings of fact, Plaintiffs have established the right to use the marks PATSY'S and PATSY'S ITALIAN RESTAURANT for restaurant services, and I.O.B. Realty has established the right to use the marks PATSY'S and PATSY'S PIZZERIA for pizzeria services. I.O.B. Realty is the senior user of the mark PATSY'S, but it and its predecessors' long-standing tolerance of Plaintiffs' use of identical and similar marks renders the parties' rights as concurrent. By the term "right," the Court simply means that the parties have established the prima facie validity of their respective marks through long-standing use.

The critical issue that has plagued these parties, and has plagued this litigation, is that the parties' concurrent rights to use these marks for similar services has caused an exceeding degree of consumer confusion. (*See, e.g.*, 3/31/08 Tr. at 84:9-85:2, 85:19-90:14, 90:7-19, 107:17-108:14; 4/1/08 Tr. at 241:10-243:4; 4/3/08 Tr. at 611:8-612:19; Pls.' Ex. 51, 73, 78; Defs.' Exs. FF, GG.) Whatever date that confusion first occurred, it has been exacerbated by the parties' expansion into new territories and new products. In crafting injunctive relief in a trademark action, the Court has a duty to not only the parties, but also to the public. *See James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976) ("A third party, the consuming public, is present and its interests are paramount. . . . When equitable considerations impel the continuation of otherwise confusing trademark uses, courts will fashion appropriate relief . . . .") (citations omitted). "Someone must suffer the remedy, and the law demands it not be the public." *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325, 1337 (11th Cir.

1996).  Therefore, the Court imposes the following injunctive relief that is intended to permit the parties to continue their long-standing use of their marks, but to do so in a way that no longer confuses the consuming public.

In prophetic words, chef Sal Scognamillo, one of Plaintiffs' principals, testified that: "I always try and make it a point . . . whether it's an article or a television show or a magazine or a newspaper to say Patsy's Italian Restaurant 236 West 56th."  (3/31/08 Tr. at 90:20-22; *see also id.* at 106:10-13 ("One of the things I said before was if you hear it on the radio, you don't notice those differences [between the parties' stylized marks].  If a friend tells you to go to Patsy's you don't notice those little curlicues.").)  The Court holds that the most effective way for the parties to distinguish their marks is to enjoin both Plaintiffs and Defendants from using the mark PATSY'S alone, and without other identifying words, to identify their respective services.  Consequently, the Court orders that Plaintiffs are required to refer to their restaurant services using the mark PATSY'S ITALIAN RESTAURANT, and Defendants are required to refer to their pizzeria services using the mark PATSY'S PIZZERIA.  This injunction applies to any advertising, signs, menus or anything similarly associated with their establishments.[29]

The Court of Appeals for the Second Circuit held that "[w]e recognize that 'trademark laws exist to protect the public from confusion.' . . .  The failure of I.O.B. [Realty] and its predecessors to police its restaurant marks against Patsy's Italian Restaurant has perhaps created a certain degree of now unavoidable confusion in the New York City market for restaurant services."  *Patsy's Brand*, 317 F.3d at 217 (quoting *Hermes Int'l*, 219 F.3d at 107-08).  This was

---

[29]  Plaintiffs remain free, of course, to use their mark PATSY's to refer to their pasta sauces and other packaged food items pursuant to their registered marks for those products.

the reality more than five years ago when the parties went before the Court of Appeals in the Sauce Litigation, and this is still the reality today. Therefore, the Court finds that the foregoing injunction properly takes heed of the Court of Appeals' admonition "that henceforth they would be well advised to minimize the risk of confusion by identifying their restaurants by the complete names: 'Patsy's Italian Restaurant' and 'Patsy's Pizzeria.'" *Id.* at 221. This injunction is equitable and necessary given the parties' continued failure to distinguish their services without the Court's intervention.

**IV.  Plaintiffs' Motion for Attorneys' Fees Is Denied**

Finally, Plaintiffs move for attorneys' fees pursuant to Section 35(a) of the Lanham Act. 15 U.S.C. § 1117(a). The Court found that there is no basis for Plaintiffs to recover for federal trademark infringement under Section 32(a)(1) of the Lanham Act. 15 U.S.C. § 1114(a)(1); *see supra* Sections I.E.1, III.B. However, the Court also found that Plaintiffs have prevailed in their claim under Section 43(a) of the Lanham Act against the Syosset Defendants. *See* 15 U.S.C. § 1125(a). In "exceptional cases," the Lanham Act authorizes the Court to "award reasonable attorney fees to the prevailing party" in a Section 43(a) claim. *See* Lanham Act § 35, 15 U.S.C. § 1117(a). "[E]xceptional cases" may include "instances of 'fraud or bad faith' . . . or 'willful infringement.'" *Patsy's Brand*, 317 F.3d at 221 (citations omitted). Such an award is within the discretion of the Court. *See Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 166 F.3d 438, 439 (2d Cir. 1999) (per curiam) (citing *Twin Peaks Prods., Inc. v. Publ'ns. Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993).

Despite the fact that the jury found that the Syosset Defendants acted in bad faith and willfully infringed upon Plaintiffs' rights, the Court does not find this case is so "exceptional" as

to justify an award of attorneys' fees. Plaintiffs only succeeded in a more limited claim against the Syosset Defendants under Section 43(a) of the Lanham Act. The bulk of this case related to infringement of registered trademarks, to which the Court finds that Plaintiffs do not prevail. To that end, the Court agrees with Defendants that Plaintiffs are not the prevailing party because Defendants have succeeded in their counterclaim. The Court thus exercises its discretion and denies Plaintiffs' motion for attorneys' fees.

## CONCLUSION

As the Court of Appeals for the Second Circuit explained, Patsy's Pizzeria and Patsy's Italian Restaurant "have coexisted with similar names for decades." *Patsy's Brand*, 317 F.3d at 221. This requires that the parties not only tolerate each others' existence, but also do so in a manner that protects the public. In the end, the public is best served if these two New York City institutions continue to operate, flourish and expand. Nothing in this order prevents that from occurring. However, what must also occur is for the parties to define their marks distinctly as PATSY'S ITALIAN RESTAURANT and PATSY'S PIZZERIA; to define the distinct sets of services that they provide, Neopolitan-style fine Italian dining and coal-oven-style pizzeria and related services, respectively; and, most importantly, to stop encroaching on the others' usages and to stop impermissibly seeking to push the other party out of the market.

Both Plaintiffs and Defendants are equally to blame for the current situation: Plaintiffs for registering marks with the PTO when their use of PATSY'S was confusingly similar to I.O.B. Realty's prior use; I.O.B. Realty for failing to respect that its predecessors tolerated Plaintiffs' existence for decades; and the Staten Island and Syosset Defendants for impermissibly and confusingly using I.O.B. Realty's marks in a manner that infringed upon Plaintiffs' rights.

Moving forward, this Opinion and Order thus leaves the parties free to seek new concurrent trademark registrations for the marks PATSY'S ITALIAN RESTAURANT and PATSY'S PIZZERIA pursuant to Section 2(d) of the Lanham Act. *See* 15 U.S.C. § 1052(d). In doing so, the parties are strongly advised that they should fully acknowledge each other's existence and rights to the PTO, and that they should define as precisely and as narrowly as possible their own rights for services. For example, it is suggested that Plaintiffs should define their services as "fine Neopolitan-style restaurant services," and that I.O.B. Realty should define its services as "coal-oven-style pizzeria services and related pizzeria-style food services." It will then be left to the examiners at the PTO to determine whether to grant concurrent service mark registrations to both Plaintiffs and I.O.B. Realty. In that respect, this result rectifies "the premature and careless manner in which the PTO" dealt with the parties in wrongly issuing registrations to Plaintiffs and then cancelling I.O.B. Realty's registrations in the first instance. *Banas*, 508 F. Supp. 2d at 210.

The Court ends by reproving the parties for what was been, in the end, wholly unnecessary and protracted litigation. As this Opinion and Order makes clear, both parties are to blame for what has transpired to date. The parties have expended an untold amount of money to litigate this action. They instead would have been well-advised to invest that money in their businesses. The Court is highly aware that Patsy's Italian Restaurant and Patsy's Pizzeria have each developed their goodwill through the sweat and labor of generations of restauranteurs. Patsy's Italian Restaurant and Patsy's Pizzeria are as much labors of love as they are businesses. However, it is the Court's sincere suggestion that the parties do not allow that love to blind them

to the simple reality that there is plenty of room, and plenty of appetites in this world for Patsy's Italian Restaurant and Patsy's Pizzeria to exist and expand simultaneously and amicably.

In conclusion, the Court orders as follows: (1) the PTO is ordered to cancel Plaintiffs' registration number 3,009,836 for the stylized mark PATSY'S PR for restaurant services; (2) the PTO is ordered to cancel Plaintiffs' registration number 3,009,866 for the unstylized mark PATSY'S for restaurant services not including pizza; (3) the PTO is ordered not to restore I.O.B. Realty, Inc's registration number 2,213,574 for the mark PATSY'S PIZZERIA for restaurant services; (4) Plaintiffs are enjoined from using the mark PATSY'S alone in any advertising, signs, menus or anything similarly associated with their establishments; and (5) Defendants are enjoined from using the mark PATSY'S alone in any advertising, signs, menus or anything similarly associated with their establishments. Additional injunctive relief is granted to Plaintiffs against the Syosset Defendants as described in Section III.D. The parties remaining motions are denied.

**SO ORDERED.**

**Dated:**      **Brooklyn, New York**
                **September 9, 2008**

*Ramon E. Reyes, Jr.*
**RAMON E. REYES, JR.**
**United States Magistrate Judge**